

ase.net

Search for Cases by: Select Search Method... ⌄

Judicial Links | eFiling | Help | Contact Us | Print                                    Logon

## 2231-CC00636 - JIM ARNOTT ET AL V ADVANCED CORRECTIONAL (E-CASE)

| Case Header | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution |

Sort Date Entries: ⦿ Descending ◯ Ascending          Display Options: All Entries ⌄

| | |
|---|---|
| 07/26/2022 | **Corporation Served**<br>Document ID - 22-SMCC-1342; Served To - ADVANCED CORRECTIONAL HEALTHCARE INC; Server - SO ST LOUIS COUNTY-CLAYTON; Served Date - 22-JUL-22; Served Time - 09:00:00; Service Type - Sheriff Department; Reason Description - Served; Service Text - By leaving a copy with B Love/jm |
| 07/25/2022 | **Notice of Service** |
| 06/28/2022 | **Petition:**<br>Plts Petition with Remaining Exhibits Attached; Exhibit H; Exhibit I; Exhibit J; Exhibit K; Exhibit L; Exhibit M; Exhibit N; Exhibit O; Exhibit P; Exhibit Q./ar<br><br>    **Filed By:** DAMON SEAN PHILLIPS<br>    **On Behalf Of:** JIM ARNOTT IN THE CAPACITY AS SHERIFF OF GREENE COUNTY MO, GREENE COUNTY MISSOURI<br><br>    **Summons Issued-Circuit**<br>Document ID: 22-SMCC-1342, for ADVANCED CORRECTIONAL HEALTHCARE INC. Summons saved and attached in PDF format for Attorney to retrieve from secure case.net./ar |
| 06/17/2022 | **Filing Info Sheet eFiling**<br>    **Filed By:** DAMON SEAN PHILLIPS<br><br>**Note to Clerk eFiling**<br>    **Filed By:** DAMON SEAN PHILLIPS<br><br>**Pet Filed in Circuit Ct**<br>Plts Petition; Exhibit A; Exhibit B; Exhibit C; Exhibit D; Exhibit E; Exhibit F; Exhibit G./ar<br>    **Filed By:** DAMON SEAN PHILLIPS<br>    **On Behalf Of:** JIM ARNOTT IN THE CAPACITY AS SHERIFF OF GREENE COUNTY MO, GREENE COUNTY MISSOURI<br><br>**Judge Assigned** |

Case.net Version 5.14.54                    Return to Top of Page                    Released 07/15/2022

Electronically Filed - Greene - June 17, 2022 - 03:50 PM

## IN THE CIRCUIT COURT OF GREENE COUNTY, MISSOURI

JIM ARNOTT, IN THE OFFICIAL )
CAPACITY AS SHERIFF OF )
GREENE COUNTY, MISSOURI AND )
GREENE COUNTY, MISSOURI )
   Plaintiff(s), )
    )
vs.   )
    ) Case Number: _____
ADVANCED CORRECTIONAL )
HEALTHCARE, INC. )
    )
   Defendant(s). )

## PETITION

COMES NOW Plaintiff Jim Arnott, in the official capacity as Sheriff of Greene County, Missouri, and Greene County, Missouri, by and through counsel of record, Keck and Phillips, LLC, and for their petition against Defendant Advanced Correctional Healthcare, Inc., states the following:

### The Parties, Jurisdiction, and Venue

1. Greene County, Missouri is a first class county and Jim Arnott is the duly elected Sheriff of Greene County, Missouri.

2. Advanced Correctional Healthcare, Inc. (ACH) is incorporated and had its principal place of business in Illinois, located at 3922 West Baring Trace, Peoria, IL 61615 at all times relevant herein up until 2021, when it relocated its principal place of business to Tennessee, at 720 Cool Springs Blvd., Suite 100, Franklin, TN 37067.

3. ACH can be served via its Registered Agent, CT Corporation System, 120 S. Clayton, MO 63105.

4. This Court has subject matter and personal jurisdiction over the matters referenced herein, and venue is appropriate in Greene County, Missouri, including because ACH made

1

representations to Plaintiff in Greene County, Missouri, and ACH provided inmate medical services at the jail of Greene County ("GCJ"), and ACH consented to jurisdiction and venue (Ex. A, ACH 000050 at § 3.15) and the disputes regard amounts in excess of $25,000.00.

<p align="center">Representations and Agreement</p>

5. ACH deliberately or negligently made representations, through its staff, in-person, and through sales pitches, seminars, the internet, and marketing materials, and continues to make representations, to the effect that if hired to provide inmate medical services at detention facilities, such as the GCJ, and in the event that an inmate asserts claims against the public offices, entities, and staff, affiliated with that detention facility, arising out of or in connection with ACH providing inmate medical services, then ACH will protect, insure, defend, hold harmless, and indemnify the sued public offices, entities, and staff.

6. On or about April of 2017, ACH represented that it would, and agreed to, provide inmate medical services at the GCJ, a true and accurate copy of said representations and agreement which is attached as Exhibit A, and referred to as "the Agreement." Ex. A, ACH 000031-63.

7. ACH deliberately or negligently misrepresented that it had the ability and intent and would provide all of the services described in the Agreement and that it could be relied upon to provide such services.

8. Plaintiff reasonably relied on ACH to provide the services that it represented it would provide; and reasonably relied on ACH to provide the services described in the Agreement.

9. ACH had a duty to provide the services that it represented it would provide, including as encompassed in the Agreement.

2

10.     ACH provided inmate medical services at the GCJ through Dr. Jason Wilkins, M.D. and other medical staff in 2017 and through July 12, 2019. Ex. A; Ex. B; Ex. L, p.4.

<u>Federal Lawsuits by Inmates Hancock, Porter, and Blade</u>

11.     On or about May 29, 2018 Michael D. Hancock (Hancock) filed suit in the United States District Court for the Western District of Missouri, Case Number 18-3170, and subsequently filed an first Amended Complaint on or about July 15, 2019, where Hancock sued Sheriff Arnott, and Sheriff Arnott's employees Denny, Coonrod, Johnson, and Howell, in their official capacity, Greene County, Missouri, ACH, and ACH medical staff Dr. Jason Wilkins and nurse Eric Partenheimer. Ex. D; Ex. O.

12.     On or about June 6, 2018 Anthony Porter (Porter) filed suit in the United States District Court for the Western District of Missouri, Case Number 18-4114, and subsequently filed amended pleadings, ending in a second Amended Complaint filed on or about July 19, 2019, where Porter sued Sheriff Arnott in his official capacity, Greene County, Missouri, ACH, and ACH medical staff Dr. Jason Wilkins and nurse Solita Massie. Ex. E; Ex. P.

13.     On or about July 2, 2018 Courtney Blade (Blade) filed suit in the United States District Court for the Western District of Missouri, Case Number 18-3212, and subsequently filed amended pleadings, ending in a second Amended Complaint filed on or about July 15, 2019, where Blade sued Sheriff Arnott in his official capacity, Greene County, Missouri, ACH, and ACH medical staff Dr. Jason Wilkins. Ex. F; Ex. Q.

14.     All the allegations and claims in each of the cases filed by Hancock, Porter, and Blade (the Lawsuits) were directed equally at all of the defendants without any separation of counts or delineation of any kind between the defendants. Exs.D-F; Exs. O-Q.

3

15.     All the claims in the Lawsuits arose from and related to medical diagnosis and treatment that ACH made through its medical staff at the GCJ. Exs. D-F, O-Q.

16.     Hancock's lawsuit in essence claimed that while under the care of Dr. Wilkins and other ACH medical staff at the GCJ that he suffered from a serious medical need for treatment related to a hernia, degenerative arthritis, and severe back pain, and was denied necessary treatment while an inmate. Ex. D; Ex. O.

17.     Porter's lawsuit in claimed that while under the care of Dr. Wilkins and other ACH medical staff at the GCJ he suffered from a serious medical need for treatment related to an oral cyst and was denied necessary treatment while an inmate. Ex. E; Ex. P.

18.     Blade's lawsuit in essence claimed that while under the care of Dr. Wilkins and other ACH medical staff at the GCJ he suffered from a serious medical need for treatment related to an eye condition and was denied necessary treatment while an inmate. Ex. E; Ex. 27.

19.     Hancock, Porter, and Blade each claimed in the Lawsuits that their preferred treatment was medically necessary and not provided while they were inmates under the care of Dr. Wilkins and other ACH medical staff at the GCJ. Exs. D-F, O-Q.

20.     The Lawsuits were consolidated, *sua sponte*, because "the cases involve common questions of fact and law and, furthermore…arise out of acts occurring in the Greene County Justice Center." *Michael D. Hancock v. Jim Arnott, et al.*, 18-03170, Doc. 6.

<u>ACH Determined Appropriate Inmate Medical Care of Hancock, Porter, and Blade</u>

21.     ACH, through Dr. Wilkins and other medical staff that it provided, determined the appropriate medical care for Hancock, Porter, and Blade while they were inmates at the GCJ.

22.     To the extent that Hancock, Porter, or Blade were not provided their preferred medical care as alleged in the Lawsuits, this was because ACH, through its medical staff,

4

determined that those inmates did not need to be provided with their preferred care while they were inmates at the GCJ.

23.    The ability of Hancock, Porter, and Blade to obtain their preferred medical care as alleged in the Lawsuits depended on ACH, through staff that it provided, determining the medical necessity of that care.

24.    Under the Scope of Services, General Nature portion of the Agreement, ACH had a duty to "provide all inmate medical treatment and treatment recommendations that it believes to be medically necessary and within its professional capabilities to provide, and the Sheriff, including his respective employees…shall rely on [ACH[ to provide such medical treatment and treatment recommendations." Ex. A, ACH 000035.

25.    The Agreement included, but was not limited to, that ACH must provide a Medical Doctor who would "serve as the GCJ's medical director and as such, will be responsible for all medical decisions regarding inmates at the facility…" Ex. A, ACH 000036.

26.    The Agreement included, but was not limited to, that ACH must provide nursing services at the GCJ. Ex. A, ACH 000036.

27.    The Agreement included, but was not limited to, that the "Contractor will employ a medical records clerk who will, at a minimum, manage and maintain the medical records on each inmate who had received healthcare services at the GCJ…" Ex. A, ACH 000038.

28.    The Agreement included, but was not limited to, that ACH would "…assist the Sheriff in drafting and implementing GCJ-specific medical policies, procedures, and protocols on the National Commission on Correctional Health Care (NCCHC) and American Correctional Association (ACA) standards and the GCJ's capabilities. Such policies, procedures, and protocols will at all times be the property of the Sheriff, and the Contractor shall be responsible for following

5

all applicable medical and non-medical policies of the Sheriff…[and][t]he Contractor shall be responsible for maintaining the GCJ's NCCHC accreditation…" Ex. A, ACH 000035.

29.     The Agreement included, but was not limited to, that ACH "will provide the Sheriff with a comprehensive strategic plan, peer review of the medical staff provided by the Contractor,…utilization management, and a risk management program specific to the GCJ's operations. In addition the Contractor will attend regularly scheduled Continuing Quality Improvement (CQI) with the Sheriff and/or his personnel during which all healthcare reports concerning the overall operation of the healthcare services program and the general health of the inmates at the facility will be reviewed and discussed." Ex. A, ACH 000037.

30.     The Agreement included, but was not limited to, that "[t]he Parties acknowledge that the Sheriff must rely on the Contractor's medical judgment in determining when treatment for an inmate is medically necessary and reasonable."  Ex. A, ACH 000045.

31.     The Agreement included, but was not limited to, that "the Sheriff shall rely on the Contractor to provide all expert opinions regarding the medical condition and medically necessary treatment of all inmates at the GCJ, including that the Contractor shall be solely responsible for determining whether or not an inmate is medically fit for confinement." Ex. A, ACH 000035.

ACH's Duties to Procure Insurance Coverage, Defend, Indemnify, and Hold Harmless

32.     ACH represented, and continues to represent, that it protects public offices, entities, and staff affiliated with detention facilities when inmates allege injury arising out of or in connection with ACH providing inmate medical services at those facilities.

33.     The Agreement required that ACH would procure insurance coverage for, defend, hold harmless, and indemnify Plaintiff and their staff as to all injury claims arising by reason of

any act of ACH or its personnel related to the services provided under the Agreement, regardless of any negligence, fault, or lack thereof of ACH. Ex. A, § 2.1, 2.3, ACH 000046.

34.     The terms "insurance," and "defend," and "indemnify," and "hold harmless," are not synonyms.

35.     ACH had a duty to provide insurance coverage for Plaintiff and their staff, name them as an additional insured, and to provide proof of coverage. Ex. A, § 2.1, 2.3-2.8, ACH 000046-47.

36.     ACH agreed, represented, and warranted that it would procure insurance coverage:

> Without limiting the Contractor's indemnification obligations, the Contractor shall procure and maintain, at its sole cost and for the duration of this Agreement, insurance coverage as provided herein, against all claims for injuries against persons or damages to property which may arise from or in connection with the Contractor providing the services contemplated in this Agreement. The Contractor will ***name the Sheriff and the County***, including their respective employees, agents, attorneys, successors, and assigns, as additional insured under the commercial automobile, commercial general, and professional liability portions of insurance, as well as ***provide the County and Sheriff with a Certificate of Insurance*** **SPECIFIC TO CORRECTIONAL FACILTIES AND PUBLIC ENTITIES** evidencing the terms of the insurance coverage and policy limits. **Each such policy MUST INCLUDE LANGUAGE TO THE EFFECT THAT THE LISTING AS ADDITIONAL INSUREDS SHALL NOT BE CONSTRUED AS WAIVING THEIR RESPECTIVE RIGHTS OR DEFENSES WITH REGARD TO APPLICABLE SOVEREIGN, GOVERNMENTAL OR OFFICIAL IMMUNITIES AND ANY OTHER PROTECTIONS OR DEFENSES AS PROVIDED BY FEDERAL AND STATE CONSTITUTIONS, STATUTES, AND LAWS, AND THE PROCURMENT AND MAINTENANCE OF INSURANCE SHALL NOT BE CONSTRUED AS WAIVING SUCH PROTECTIONS OR DEFENSES.** The Contractor ***expressly warrants that such insurance will cover the Sheriff and the County***, including their respective officers, employee, agents, attorneys, successors, and assigns, as well as cover the Contractor and the individuals, entities, employees, independent contractors, successors, agents, and assigns through the Contractor shall act to provide the services detailed herein, and ***in the event that there is no such coverage, the Contractor shall defend, indemnify, and hold harmless the Sheriff and the County, and their respective officers, employees, agents, attorneys, successors, and assigns***.

7

The Contractor shall not provide the services required by this Agreement until it has obtained all insurance required by this Agreement, where the Contractor must submit proof of said insurance which has been approved by the Sheriff. All policies shall be from companies authorized to issue insurance in the State of Missouri and shall be in the designated amounts (where specified), and from companies satisfactory to the Sheriff, and which must carry an A-6 or better rating as listed in the A.M. Best or equivalent rating guide. The Contractor's inability to perform the services required by this Agreement due to failure to procure approved insurance shall not excuse performance, and will constitute a breach of this Agreement. Any notice cancellation of insurance shall be given in writing to eh Sheriff in the manner in which notices are required by this Agreement. The Contractor shall assume all responsibility for deductible amounts from such insurance and shall indemnity and hold the Sheriff and the County harmless therefrom. In addition, the Contractor shall reimburse the Sheriff of the County for any damage done to their respective property which occurred during performance of the Agreement.

Ex. A, § 2.3, ACH 000046-47 (bold all-caps emphasis included; bold underlined italic emphasis added).

37.     The Agreement included, but was not limited to, that "[t]he Contractor shall maintain such comprehensive general liability insurance as shall protect the Contractor from claims for damages from personal injury including accidental death, as well as from claims for property damages, which may arise from the Contractor providing services under this Agreement. The insurance carried by the Contractor shall name the Sheriff and the County, and their respective officers, employees, agents, attorneys, successors, and assigns, as additional insureds in amounts sufficient to cover the sovereign immunity limits for Greene County and said insurance shall not be less than $1,000,000.00 per occurrence and $3,000,000.00 in aggregate, covering both bodily injury and property damage, including accidental death. Ex. A, § 2.4, ACH 000047.

38.     The Agreement included, but was not limited to, that ACH represented it would maintain Professional Liability Insurance covering errors and omissions of not less than $1,000,000.00 per occurrence and $3,000,000.00 annual aggregate. Ex. A, § 2.7, ACH 00047.

8

39.     The Agreement included, but was not limited to, that ACH represented "[t]he Contractor shall furnish the Sheriff and the County with Certificate(s) of insurance which name the Sheriff and the County, and their respective officers, employees, agents, attorneys, successors, and assigns as additional insureds in the amounts sufficient to cover sovereign immunity limits for Missouri public entities as calculated by the Missouri Department of Insurance, financial institutions, professional registration, and published annually in the Missouri Register, pursuant to Section 537.610, RSMo. or as amended, and at least in the amounts specified in the this Agreement, whichever is higher. Each Party shall require a thirty (30) day mandatory cancellation notice. Ex. A, § 2.8, ACH 000047.

40.     The Agreement required that, in the event that ACH failed to provide insurance coverage to Plaintiff and their staff, that ACH would defend, indemnify, and hold harmless Plaintiff and their staff. Ex. A, § 2.3, ACH 000047.

41.     As between Plaintiff and ACH, by agreeing to hold Plaintiff harmless, ACH accepted liability as to any claims losses, damages, including reasonable attorneys' fees and other costs of litigation, and expenses, arising by reason of any act, negligent or otherwise, of ACH or its personnel, in relation to providing the services of the Agreement. Ex. A.

42.     As between Plaintiff and ACH, by agreeing to indemnify Plaintiff, ACH promised to make payment to Plaintiff for claims losses, damages, including reasonable attorneys' fees and other costs of litigation, and expenses, arising by reason of any act, negligent or otherwise, of ACH or its personnel, in relation to providing the services of the Agreement and the medical detailed therein. Ex. A.

<u>September 7 and November 5, 2018 Letters</u>

9

43.     Plaintiff notified ACH of the Lawsuits and that they had been consolidated in a certified letter dated September 7, 2018 demanding that ACH defend, hold harmless, and indemnify Plaintiff, either directly or through its insurers, as ACH had represented that it would do, and as required by the Agreement. Exs. C, G, I.

44.     Good faith required that ACH promptly consider all of the allegations in the Lawsuits, and ACH's representations, and ACH's obligations under the Agreement.

45.     Nearly _two months_ after sending the September 7, 2018 letter, Plaintiff sent another a letter dated November 5, 2018 to ACH, reporting that summonses in the Lawsuit had been issued and again demanding a defense. Ex. H.

46.     ACH did not answer Plaintiff's September 7 or November 5, 2018 letters until November 20, 2018. Ex. I.

47.     ACH retained "Western Litigation" to respond to Plaintiff's September 7 and November 5, 2018 letters on its behalf. Ex. I.

48.     Western Litigation responded on behalf of ACH to the September 7 and November 5, 2018 letters. Ex. I.

49.     Western Litigation was authorized by ACH to act on its behalf in a letter dated November 20, 2018 responding to Plaintiff's September 7 and November 5, 2018 letters. Ex. I.

50.     ACH adopted the positions taken by Western Litigation in a letter dated November 20, 2018 responding to Plaintiff's September 7 and November 5, 2018 letters. Ex. I.

51.     ACH and/or its insurers retained or authorized Western Litigation to manage the Hancock, Porter, and Blade claims and Lawsuits. Ex. I.

52.     ACH was prohibited from assigning the services it was required to provide under the Agreement without the express prior written approval of the Sheriff. Ex. A, § 5.6, ACH 000052.

10

53.     ACH and it's insurers, through Western Litigation, took the position that there was no possibility of insurance coverage for Plaintiff as to the allegations in the Lawsuits. Ex. I.

54.     ACH and its insurers, through Western Litigation, took the position that it would forward Plaintiff's demand to another insurer, but did not expect there to be coverage. Ex. I.

55.     ACH either did not obtain insurance for Plaintiff and their staff or else failed to forward Plaintiff's demands to the appropriate insurer(s). Ex. I.

56.     ACH either did not name Plaintiff and their staff as an additional insured or else failed to forward Plaintiff's demands to the appropriate insurer(s). Ex. I.

57.     Neither ACH, nor Western Litigation, retained or offered to provide legal counsel to defend Plaintiff or their staff in the Lawsuits. Ex. I, p.2.

58.     ACH either directly or through Western Litigation, retained legal counsel to defend ACH and ACH's staff in the Lawsuits. Ex. I, p.2.

59.     ACH took the position it did not have a duty to defend or indemnify Plaintiff and expressly stated: "…***Advanced Correctional Healthcare*** respectfully declines your tender of defense and request for indemnification…" Ex. I, p. 2 (emphasis added).

60.     ACH did not consider, or deliberately disregarded, the nature of the allegations in the Lawsuits when determining not to defend, hold harmless, or indemnify Plaintiff or their staff. Ex. I.

61.     ACH did not consider, or deliberately disregarded, the representations it had made in soliciting business, and in the Agreement, when determining not to insure, name Plaintiff as an additional insured, provide proof of coverage, forward Plaintiff's demands to the appropriate insurer, defend, hold harmless, or indemnify Plaintiff or their staff and did not perform those obligations. Ex. I.

62.    ACH took the position that the allegations and claims in the Lawsuits did not arise from or in connection with any of its services described in the Agreement. Ex. I.

63.    ACH tried to distance itself from the allegations and claims in the Lawsuits by suggesting that they regarded only financial matters and outside care providers, and: "[a]fter reviewing the complaints it is clear that all three inmates in these Complaints are alleging they were advised they could not have outside medical care unless they paid for the medical care." Ex. I, p.1.

64.    The claims alleged in the Lawsuits plainly arose out of and related to inmate medical care provided by ACH at the GCJ, because ACH determined whether outside medical care was needed. *See e.g.* Ex. A, ACH 000035; Exs.D-F; Exs. O-Q.

65.    ACH took the position that, "Without going through each and every allegation noted in these Complaints, at this juncture it is clear that there are specific separate allegations against the County and Sheriff with regard to the policy requiring payment of medical services and authorization of deduction of funds for payment of medical care form the prisoner accounts." Ex. I, p. 1.

66.    The claims in the Lawsuits were directed equally at all the defendants, without separate allegations or delineation of different counts or legal theories. Exs.D-F; Exs. O-Q.

67.    ACH asserted that the allegations and claims in the Lawsuits did not arise from or in connection with the services that ACH was required to provide under the Agreement because "…neither ACH nor any of the employed staff in these matters had any involvement in the creation of rules and regulations related to the payment for outside medical providers and/or outside medical services for non-urgent, non-emergent care." Ex. I, p. 1-2.

68.    ACH was required to, and did, assist in drafting and implementing policies, procedures, protocols, and plans specific to the GCJ. Ex. A, ACH 000035, 37, 45.

69.    ACH asserted that the allegations in the Lawsuits did not arise from or in connection with the services that ACH was required to provide under the Agreement because ACH and its staff did not have "… any role in determining who pays for medical treatment." Ex. I, p. 1-2.

70.    ACH was required to make determinations as to the necessity for inmate medical care as part of the services they provided to Plaintiff. Ex. A; Ex. I.

71.    ACH was required to assess inmate medical conditions, make treatment recommendations, and provide necessary medical treatment without additional payment when such treatment was within the professional capabilities of ACH staff. Ex. A, Scope of Services-General Nature, ACH 000035.

72.    Contrary to ACH's argument that its personnel played no role in making decisions that impacted payment for medical treatment, the Agreement required that ACH must assess whether an inmate's preferred treatment was elective or non-elective. Ex. A, Elective Care, ACH 000037; Ex. I.

73.    Contrary to ACH's argument that ACH staff played no role in determining payment for inmate medical treatment, the Agreement required that if an inmate required medical treatment which was outside of the professional capabilities of ACH staff, then it must notify Plaintiff and arrange for the required care. Ex. A, Scope of Care, ACH 000036.

74.    The Agreement included, but was not limited to, that ACH "shall provide medical services through competent medical personnel at the GCJ, and …shall refer and coordinate any medical services that is specialized treatment and beyond the Contractor's professional capabilities

13

to outside care providers….[and] shall provide all inmate medical treatment and treatment recommendations that it believes to be medically necessary and within its professional capabilities to provide, and the Sheriff, including his respective employees, agents, attorneys, successors, and assigns, shall rely on the Contractor to provide such medical treatment and treatment recommendations." Ex. A, ACH 000035.

75.     The Agreement included, but was not limited to, that ACH "shall conduct the medical screening portion of all inmate intakes. The Contractor shall also examine each inmate that appears to suffer from any medical issue that could render such inmate not fit for confinement and determine whether such inmate is medically fit for confinement, and promptly notify and advise GCJ staff of that determination. The Contractor shall also coordinate to provide or arrange for all medically necessary treatment that must be provided off-site from the GCJ." Ex. A, ACH 000036.

76.     The Agreement included, but was not limited to, that ACH "shall plan to provide, and provide, pharmaceuticals including prescription medications, prescribed over-the-counter medications, and psychotropic medications, which are medically necessary and appropriate and age for the uniqueness of a correctional environment, to all inmates held at the GCJ, where the Contractor believes to a reasonable degree of medical certainty within the applicable standard of care that medication is necessary to treat a life threatening condition, and also where an inmate is exhibiting symptoms of a disorder that impairs functioning or mental health, so that medication is necessary. Ex. A, ACH 000036.

77.     The Agreement included, but was not limited to, that "[i]f in the Contractor's opinion an inmate requires medical treatment that is beyond the Contractor's professional abilities, such as for example, complicated surgical intervention, the Contractor shall take such steps as it

14

believes are medically necessary to provide treatment, including referral to an appropriate off-site or outside emergency medical provider. In case of such need, the Contractor shall immediately notify GCJ staff, which will make arrangements for the transportation of the inmate to the preferred provider." EX. A, ACH 000036.

78. The Agreement included, but was not limited to, that "the Contractor will not be responsible for providing elective care to inmates. 'Elective care' is care which, if not provided, would not, in the opinion of the Contractor, cause the inmate's health to deteriorate, or cause harm to the inmate's well-being. Decisions concerning elective care should be consistent with applicable American Medical Association (AMA) standards. The Parties expressly acknowledge that the Sheriff must rely on the Contractor to provide all expert medical opinions, including that the Contractor shall be solely responsible for determining whether or not care is elective or medically necessary (non-elective)." Ex. A, ACH 000037.

79. The Agreement included, but was not limited to, that "When medically necessary services are beyond the professional ability of the Contractor to provide on-site at the GCJ, the Contractor will arrange for those services off-site. Off-site services may include medically necessary specialist consultation, testing, and treatment, such as, but not limited to, laboratory, radiological, electrocardiogram (EKG) testing, surgical intervention, and dialysis." Ex. A, ACH 000038-39.

80. The Agreement included, but was not limited to, that "The Contractor shall determine whether what would otherwise be a personal need item is medically necessary under the specific circumstances applicable to an individual inmate, and the Contractor shall timely notify the Sheriff of any such determination, and the Contractor shall either administer the medically necessary treatment or make the necessary referral and arrangements for such treatment to be

15

provided….For illustration purposes only, the Contractor shall be responsible for determining whether it is medically necessary for any inmate to be placed on a special diet, such as a liquid diet, and for timely advising the Sheriff of that medical necessity, and if medically necessary, for administering or procuring the necessary care…" Ex. A, ACH 000039.

81.     The Agreement included, but was not limited to, that "[t]he Contractor will be the sole prescribing authority for inmates held at the GCJ, and will determine whether all inmate medications are medically necessary to a reasonable degree of medical certainty, consistent with eh applicable standard of care." Ex. A, ACH 000037.

82.     The Agreement included, but was not limited to, that "…as the sole prescribing authority in the GCJ, and as part of a holistic approach to inmate medical concerns, the Contractor shall coordinate with mental health staff professionals employed at the GCJ, and shall participate in treatment team meetings with mental health staff, and meaning an open communication with mental health staff regarding those inmates that claim or appear to be suffering from mental health issues, so that the Contractor will be in a position to determine to a reasonable degree of medical certainty whether medication must be prescribed to trat a life threatening condition, or because an inmate is exhibiting symptoms of a disorder that impairs functioning or mental health, so that medication is medically necessary, and the Contractor shall make all such determinations." Ex. A, ACH 000037-38.

83.     The Agreement included, but was not limited to, that ACH "…shall…provide dental triage screenings in accordance with criteria established by a licensed dentist for the purpose of identifying inmates in need of serious dental services. When medically necessary, the Contractor will coordinate off-site dental care…" Ex. A, ACH 000038.

16

84.     In asserting that it had no obligation to insure, defend, hold harmless, or indemnify Plaintiff with respect to the Lawsuits, ACH tried to distance itself from the allegations and claims in the Lawsuits by mischaracterizing the law, stating, "… as you are aware, Missouri law does not require anyone but the prisoner to pay for medical care." Ex. I, p. 1-2.

85.     ACH represented before and during the Agreement, and continues to represent, that it is highly experienced in the area of inmate medical care.

86.     The Agreement expressly included ACH's representation that "[t]he Contractor is in the business of supplying medical services to jails and other correctional facilities…" Ex. A, ACH 000044.

87.     The Agreement expressly included ACH's representation that "[b]y executing this Agreement, Contractor warrants that Contractor (i) has thoroughly investigated and considered the scope of service to be performed, (ii) has carefully considered how the services should be performed, and (iii) fully understands the facilities, difficulties, and restrictions attending performance of the services under this Agreement." Ex. A, ACH 000045.

88.     The Agreement expressly included that: "[b]y executing this Agreement, the Contractor warrants that the Contractor has experience in providing medical services to jails and correctional facilities, and will utilize qualified and competent medical professionals to perform its obligations under this Agreement." Ex. A, ACH 000039.

89.     At all times relevant, provision of inmate medical care has been governed primarily by well-established federal law that inmates must be provided with required treatment for serious medical needs regardless of their ability to prepay for it, and Missouri law is consistent in that regard, and describes that required care "shall" be provided, while also providing that ultimate

17

financial liability for all medical care is on the inmate. *Cf.* Ex. I and *e.g. Dulany v. Carnahan*, 132 F.3d 1234 (8th Cir. 1997); § 221.120, RSMo.

90.     ACH took the position that it did not have to insure, defend, hold harmless, or indemnify Plaintiff in relation to the Lawsuits because ACH was not obligated to "to indemnify or hold harmless the Sheriff or the County from their own negligence." Ex. I, p. 1.

91.     ACH's position that it was not obligated to "indemnify or hold harmless the Sheriff or the County from their own negligence," completely disregards ACH's additional, and different, duties to insure and defend.

92.     ACH's position that it was not obligated to "indemnify or hold harmless the Sheriff or the County from their own negligence," also disregards the plain-meaning of the full text of the provision it quoted from the Agreement, which even in isolation from the rest of the Agreement states in full:

> ***To the fullest extent permitted by law***, the Contractor shall **hold harmless <u>and indemnify</u>** the Sheriff and the County, including their respective employees, agents, attorneys, successors, and assigns, ***<u>against any claims</u>***, losses, damages, including reasonable attorneys' fees and other costs of litigation, and expenses, ***<u>arising by reason of</u> <u>any act, negligent or otherwise, of the Contractor</u> or its personnel***, including the individuals, entities, employees, independent contractors, subcontractors (meaning anyone, including but not limited to consultants having a contract with the Contractor or a subcontract for part of the services), successors, agents, and assigns through which the Contractor shall act in relation to providing the services detailed herein, including anyone directly or indirectly employed by the Contractor or by any subcontractor, or of anyone for whose acts the Contractor or its subcontractor may be liable, ***<u>in connection with providing these services, and related to the medical services detailed herein</u>***. This provision does not, however, require the Contractor to indemnify or hold harmless the Sheriff or the County from their own negligence.

Exhibit A, § 2.1, ACH 00046. (emphasis added).

93.     ACH's position that it was not obligated to "indemnify or hold harmless the Sheriff or the County from their own negligence," also disregards the plain-meaning of the

18

Agreement as a whole, and ACH's failure to provide insurance coverage required that ACH "defend, indemnify, and hold harmless the Sheriff and the County, and their respective officers, employees, agents, attorneys, successors, and assigns." Ex. A, § 2.3, ACH 000046.

94.     The Agreement required that ACH would insure, defend, hold harmless, and indemnify Plaintiff and their staff "against *all* claims for injuries against persons…which may arise from or in connection with [ACH] providing the services contemplated in this Agreement." Ex. A, § 2.3, ACH 000046 (emphasis added).

95.     ACH's position that it did not have any duty to Plaintiff because it did not have to "indemnify or hold harmless the Sheriff or County from their own negligence" also disregards the allegations in the Lawsuits, and depends on interpreting the Lawsuits as if they assert nothing but claims of negligence on the part of Plaintiff, to the exclusion of any other "claims for injuries" arising out of or related to the services that ACH was required to provide.

96.     ACH's position that it was not obligated to insure, defend, hold harmless, or indemnify Plaintiff in the Lawsuits was counter to the representations that it made, and continues to make, in soliciting public offices and entities, such as Plaintiff, into utilizing its services.

97.     ACH's position that it was not obligated to insure, defend, hold harmless, or indemnify Plaintiff in the Lawsuits disregarded the Agreement as a whole.

<u>December 3, 2018 and October 21, 2019 Letters</u>

98.     On December 3, 2018 Plaintiff again demanded that ACH meet its obligations with respect to the Lawsuits. Ex, J.

99.     On October 21, 2019 Plaintiff again demanded that ACH meet its obligations with respect to the Lawsuits. Ex. K.

19

100.    Good faith required that ACH promptly consider all of the allegations in the Lawsuits, and ACH's representations, and ACH's obligations under the Agreement, and to respond to the December 31, 2018 and October 21, 2019 letters, but it did not.

<u>Summary Judgment and the June 18, 2021 Letter</u>

101.    Summary judgment was granted on March 30, 2021 in favor of all the defendants in the Lawsuits. Ex. L, pgs 1, 27.

102.    Summary judgment in the Lawsuits was predicated on the undisputed fact that "ACH provided inmate medical services at Greene County through Jason Wilkins, M.D., a license physician, and other medical professionals." Ex. C, p. 4.

103.    Summary judgment in the Lawsuits was predicated on the undisputed fact that "ACH also assisted in drafting and implementing specific medical policies and maintaining the appropriate standards and accreditation for such policies." Ex. C, p. 4.

104.    Summary judgment was granted in favor of all the defendants in the Lawsuits based on the sufficiency of medical care that ACH provided to Hancock, Porter, and Blade. *See e.g.* Ex. C, p. 5-14.

105.    In granting summary judgment in the Lawsuits, that court specifically held that "[w]hile this Court finds that Hancock had a serious medical need with regard to his hernia, the evidence does not support that the treatment he received was inadequate. Here, Dr. Wilkins remained free to exercise he independent medical judgment that the hernia repair surgery did not need to be immediately scheduled. While Hancock was a candidate for the elective repair, there is no evidence of medical malpractice, let alone indifference, and it appears Defendants responded reasonably to the risk by monitoring his hernia for changes." Ex. C, p. 20-21.

106.    In granting summary judgment in the Lawsuits, that court specifically held that "[e]ven if Porter's cyst rises to the level of a serious medical need, Porter has failed to establish a constitutional violation based on the treatment he received while at Greene County…. Porter was seen multiple times by Dr. Wilkins and ACH medical staff …[and] was provided with medical care and treatment and cannot establish deliberate indifference based on the standard set forth herein." Ex. C, p. 25.

107.    In granting summary judgment in the Lawsuits, that court specifically held that "[r]egardless of the dispute over whether Blade had the funds to pay for the appointment, the issue before the Court is whether Defendants' failure to send Blade to an ophthalmologist constitutes a § 1983 violation. First, there is no evidence to support that Blade's complaints of seeing floaters constituted a serious medical need. Further, even if it does constitute a serious medical need, there is no evidence Defendants failed to provide treatment or that he required different treatment that rises tot eh level of deliberate indifference." Ex. C, p. 24.

108.    It would defy logic to assert that the claims in the Lawsuits did not arise out of or relate to the services that ACH was required to provide in the Agreement.

109.    Hancock, but not Porter or Blade, appealed the grant of summary judgment to the Eighth Circuit Court of Appeals, and said appeal is still pending.

110.    Plaintiff sent a letter dated June 18, 2021 including demands that ACH reconsider its previous denials and that ACH provide a defense in the Hancock appeal. Ex. M.

111.    Good faith required that ACH promptly consider all of the allegations in the Lawsuits, and ACH's representations, and ACH's obligations under the Agreement, and to respond to the June 18, 2021 letter, but it did not.

112.    ACH responded to the July 18, 2021 letter approximately three weeks later, on or about July 7, 2021. Ex. N.

113.    In its July 7, 2021 response, ACH erroneously asserted that the Agreement only required ACH to insure and indemnify Plaintiff for "vicarious liability" claims, and that the Lawsuits "did not attempt to make the Sheriff or County vicariously liable for the actions of ACH." Ex. N.

114.    ACH's theory that it was only required to insure and indemnify Plaintiff from "vicarious liability" claims disregards the plain-meaning of the Agreement.

115.    The Agreement does not say that ACH only has to insure Plaintiff for "vicarious liability" claims. Ex. A.

116.    The Agreement does not excuse ACH from having to provide Plaintiff with a defense based on whether the asserted claims include "vicarious liability" theories. Ex. A.

117.    The Agreement does not excuse ACH from having to hold harmless Plaintiff based on whether the asserted claims include "vicarious liability" theories. Ex. A.

118.    The Agreement does not say that ACH only must indemnify Plaintiff for "vicarious liability" claims. Ex. A.

119.    ACH's duty to insure, defend, hold harmless, and indemnify Plaintiff, is not even restricted to just claims, and also includes "…losses, damages, including reasonable attorneys' fees and other costs of litigation, and expenses…" Ex. A, § 2.1, ACH 00046.

120.    "Vicarious liability" claims are merely a subset of "…claims, losses, damages, including reasonable attorneys' fees and other costs of litigation, and expenses, arising by reason of any act, negligent or otherwise, of the Contractor or its personnel, including the individuals,

22

entities, employees, independent contractors, subcontractors (meaning anyone, including but not limited to consultants having a contract with the Contractor or a subcontract for part of the services), successors, agents, and assigns through which the Contractor shall act in relation to providing the services detailed herein, including anyone directly or indirectly employed by the Contractor or by any subcontractor, or of anyone for whose acts the Contractor or its subcontractor may be liable, in connection with providing these services, and related to the medical services detailed herein." Ex. A, § 2.1, ACH 00046.

121.    "Vicarious liability" claims are merely a subset of "all claims for injuries against persons or damages to property which may arise from or in connection with the Contractor providing the services contemplated in this Agreement." Ex. A, § 2.3, ACH 000046.

122.    ACH's position is essentially that it was only required to insure and indemnify Plaintiff as to legally impossible claims, making these protections illusory, because most inmate claims (in addition to inmate alleged losses, damages, etc.)  against public offices and entities, such as Plaintiff, are brought pursuant to 42 U.S.C. § 1983, and it is well-established law that there is no vicarious liability under § 1983. *See Szabla v. City of Brooklyn Park*, 486 F.3d 385, 397 (8th Cir.2007)(no respondeat superior liability under § 1983, and no liability merely because official employs the individual who allegedly violated the plaintiff's constitutional rights).

123.    Interpreting the Agreement to only protect Plaintiff from "vicarious liability" claims would also make those protections illusory in the context of Missouri law, because most claims (including those based on vicarious liability) against public offices and entities, such as Plaintiff, are barred by sovereign immunity. *See e.g. State ex rel. Blue Springs Sch. Dist. v. Grate*, 576 S.W.3d 262 (Mo. App. 2019).

23

124.     In its June 18, 2021 response, ACH erroneously asserted that the Lawsuits were "a direct challenge to the Missouri statute, RSMo § 221.120…" Ex. N.

125.     ACH's assertion that the Lawsuits were a "direct challenge to the Missouri statute, RSMo § 221.120…" is blatantly incorrect, including because the most recent filed complaints in the Lawsuits, which had been in effect since July 19, 2019, did not even *mention* that statute, let alone directly challenge it. Exs. O-Q.

126.     ACH's assertion that the Lawsuits were a "direct challenge to the Missouri statute, RSMo § 221.120…" also mischaracterizes the applicable law, and in essence repeats ACH's previous characterization that "Missouri law does not require anyone but the prisoner to pay for medical care." *Cf.* Ex. I and Ex. N.

127.     In its June 18, 2021 response, ACH asserted that it did not have any obligation to Plaintiff with respect to the Lawsuits because the Lawsuits were "not [based on] ACH's actions …" Ex. N, p.2.

128.      In its June 18, 2021 response, ACH asserted that it did not have any obligation to Plaintiff with respect to the Lawsuits because the "claims were not that they [Hancock, Porter, and Blade] were mistreated…" Ex. N, p.3.

129.     Hancock, Porter, and Blade, pretty clearly alleged that they were mistreated by ACH through its medical staff at the GCJ. Ex. O-Q.

130.     All of the medical care provided to Hancock, Blade, and Porter in relation to the Lawsuits was provided by or on the recommendation of ACH and its staff.

131.     ACH recognized, and admitted, that the medical care that it provided to Hancock, Blade, and Porter entitled all the defendants, including Plaintiff, to summary judgment in the Lawsuits. Ex. N, p.3.

24

132.    In its June 18, 2021 response, ACH asserted that it did not have any obligation to Plaintiff with respect to the Lawsuits because the Lawsuits were "not [based on] ACH's actions or policies…" Ex. N, p.2.

133.    The services that ACH was required to provide in the Agreement included assisting in drafting and implementing policies, procedures, protocols, and plans specific to the GCJ. Ex. A.

134.    Plaintiff has performed all obligations required under the Agreement.

135.    ACH has failed to insure, name as an insured, provide proof of coverage, defend, hold harmless, or indemnify Plaintiff in relation to the Lawsuits and the Hancock appeal.

136.    Plaintiff has expended substantial amounts of time and resources, attorneys fees, and costs, in excess of $25,000.00 in defending against the Lawsuits and the Hancock appeal.

137.    ACH's breach of duties, including those to insure, name as an additional insured, provide proof of insurance, defend, hold harmless, and indemnify entitle Plaintiff to damages including all attorneys' fees and costs expended in the defense of the Lawsuits, including the as-yet-indeterminate amounts expended in relation to Hancock's pending appeal, and those incurred in the prosecution of this case.

138.    Plaintiff is also entitled attorneys' fees and costs expended in the defense of the Lawsuits, including the as-yet-indeterminate amounts expended in relation to Hancock's pending appeal, and those incurred in the prosecution of this case, pursuant to the Attorneys' Fees provision of the Agreement. Ex. A, § 3.17, ACH 000050.


WHEREFORE Plaintiff(s) pray this honorable Court enter a judgment against Defendant Advanced Correctional HealthCare, Inc., declaring that ACH was and is required to insure, defend,

hold harmless, and indemnify Plaintiff and their staff as to the Lawsuits, and the Hancock appeal, and the damages, attorneys' fees, and costs of each of those proceedings and the current action, and to award same, plus pre- and post-judgment interest, and for all such other and further relief this Court deems just and proper under the premises.

Respectfully submitted,

KECK & PHILLIPS, L.L.C.

By____/s/ *Damon S. Phillips*_____
    Damon S. Phillips #52901
    3140 E. Division
    Springfield, MO 65802
    Telephone: (417) 890-8989
    Facsimile: (417) 890-8990
    Email: damon@kpwlawfirm.com
    *Attorneys for Plaintiffs*

Electronically Filed - Greene - June 17, 2022 - 03:50 PM

EXHIBIT
A



OFFICE OF THE PURCHASING DIRECTOR
933 N. ROBBERSON AVE., SPRINGFIELD, MO 65802

| ROBERT CIRTIN | HAROLD BENGSCH | LINCOLN P. HOUGH |
|---|---|---|
| PRESIDING COMMISSIONER | COMMISSIONER, 1ST DISTRICT | COMMISSIONER, 2ND DISTRICT |

| | | | |
|---|---|---|---|
| **RFP NO:** | **17-10578** | **CONTACT:** | **Chris Mericle** |
| **TITLE:** | **Inmate Medical Services** | **PHONE:** | **(417)868-4019** |
| **ISSUE DATE:** | **03/13/2017** | **E-MAIL:** | **CMericle@greenecountymo.gov** |

**CONTRACT NO: 17-819**

**SUBMITTALS:** Submit BOTH hard copy AND electronic bid documents:
Hard copy due no later than 03/27/2017 at 2:00pm CST
- Greene County Purchasing Department
  933 North Robberson, Top Floor
  Springfield, MO 65802
Electronic copy due after 2:00pm CT on 03/27/2017, but before 2:00pm CT on 03/28/2017
- In PDF for the RFP document
- Emailed to cmericle@greenecountymo.gov

**INSTRUCTIONS:** Print the RFP Number and Due Date on the outside of the package and return this entire document (pages 1-30), with the bid submittal.

**CONTRACT TERM:** It's anticipated the contract shall be awarded on or about 4/03/2017. It shall commence on or about 05/03/2017 for a two year term, with options to renew, at all parties' discretion, up to two (2) additional two year periods, for a total of six years (See "Term" on page 13).

**PRE-BID MEETING:** A pre-bid meeting will be held on 03/21/2017 at 10:00 AM at the Greene County Justice Center lobby.

**DELIVER GOODS/SERVICES FOB (Free on Board)**
**DESTINATION TO THE FOLLOWING ADDRESS:** Greene County Justice Center
1010 N. Boonville Ave.
Springfield, MO 65802

*The bidder hereby declares understanding, agreement and certification of compliance to provide the items and/or services, at the prices quoted, in accordance with all requirements and specifications contained herein and the Terms and Conditions for this proposal. The bidder further agrees that the language of this RFP shall govern in the event of a conflict with his/her bid. The bidder further agrees that upon receipt of an authorized purchase order from the Greene County Purchasing Department or when an Agreement for Contract Services is certified by the Greene County Auditor, a binding contract shall exist between the Bidder and the County of Greene, State of Missouri.*

**SIGNATURE REQUIRED**

| | |
|---|---|
| Advanced Correctional Healthcare, Inc. | *Authorized Signature* |
| Business Name | Authorized Signature |
| 3922 West Baring Trace | Sherri Miller |
| Street Address | Printed Name |
| Peoria, IL 61615 | President and Chief Operations Officer |
| City, State, Zip Code | Title |
| (309) 692-8100 | 3/23/2017 |
| Phone Number | Date |
| 36-4495255 | sherri.miller@advancedch.com |
| Federal Tax ID Number | E-Mail Address |

Greene County Bid #: 17-10578
Greene County Cx. #: 17-819

Page 1 of 30

**RFP ORGANIZATION**

This document, referred to as a Request for Proposal (RFP), is divided into the following parts:

> General Information and Instructions to Bidders
> Bid Specifications
> Scope of Services
> Financial Terms
> Pricing Form
> Agreement for Contract Services
> Contractual Requirements
> Attachments I, II, and III
> Terms and Conditions

**INTRODUCTION AND GENERAL INFORMATION**

**Purpose:** This document constitutes a request for sealed bids from prospective bidders for the purchase of inmate medical services at the Greene County Justice Center at 1000 N. Boonville Ave. in Springfield, MO 65802.

**Award of Contract:** Owner reserves the right, after opening bids, to reject any or all bids, to waive any informality in a bid, to make awards in the interest of the Owner, and to reject all other bids. In no event will an award be made until all necessary investigations are made as to the responsibility and qualifications of the Bidder to whom the award is contemplated. The successful bidder, as contractor, will be required to execute the contract agreement included in these documents.

**Contract Term:** It is anticipated that the contract shall be awarded on or about April 3rd, 2017. It shall commence on or about May 3rd, 2017 for a two year term, with the option to renew, at both parties discretion, up to two additional two year periods for a total of six years (See "Term" on page 13, for further details). In the event the Contractor desires not to renew for subsequent contract periods, the Contractor shall notify the County in writing no later than ninety (90) days prior to the contract expiration date.

**Pricing Information:** Pricing shall remain firm for a minimum of two (2) years. Cost increases may be negotiated at the time of renewal, but will be subject to approval of the Purchasing Director. Increases will be considered only when the Contractor can show that his operating costs have increased. The contractor shall provide written notification of acceptance or rejection of the extension of this contract.

**Proposal Guarantee and Bonds:** Submit a bid security, with the bid form, payable to the Owner, in the amount of 5% of the bid sum. Submit a bid security in the form of certified check, cashier's check, or bid bond issued by a Surety licensed to conduct business in the state in which the project is being constructed. If, within ten (10) days after the notice of acceptance of his/her bid, the bidder refuses to enter into a contract or fails to furnish bonds, as described in these instructions to bidders, for the faithful performance of the contract and payment of obligations arising thereunder, the amount of the bid security shall be forfeited to the owner as liquidated damages, not as a penalty. The Owner reserves the right to retain the security of the next two (2) lowest Bidders until the execution of the Agreement or until thirty (30) days after Bid opening date, whichever is shorter. Other bid securities will be returned. Bids without the above referenced Bid Security will not be considered. If any Bidder refuses to enter into Agreement, the Bid Security will be retained as liquidated damages, but not as a penalty.

**Tobacco-Free Campus:** Effective January 1, 2008 Tobacco use will be strictly prohibited within the entire campus of Greene County and all Greene County vehicles. This includes the prohibition of smoking in privately-owned vehicles parked on County property. This policy applies to all employees, contractors and visitors.

**Notarized Affidavits:** Refer to Attachment I, Notice and Instructions to Bidders/Vendors regarding Sections 285.525 through 285.550 RSMo, effective January 1, 2009 and Section 292.675 RSMo, effective August 28, 2009, attached.

**Out-of-State-Contractors:** Per RSMo Sections 285.230–285.234, Greene County requires out-of-state contractors (transient employers) who do business in Greene County, Missouri to register with the Department of Revenue by submitting a Transient Employer Tax Registration Application (Form 2643T). This form can be located at http://dor.mo.gov/forms/. The transient employer must provide a "financial assurance instrument," such as a cash bond, surety bond, CD, or irrevocable letter of credit issued by a state of federal institution. In addition, the contractor must provide a Missouri Certificate of Authority number issued by the Secretary of State's Office and certify to the Department of Revenue that it has sufficient workers' compensation insurance.

Electronically Filed - Greene - June 17, 2022 - 03:50 PM

If hiring a Missouri resident, the contractor also must provide a Missouri Employment Security Account number issued by the Missouri Department of Labor & Industrial Relations. Once all registration requirements are met, the Department of Revenue will issue a Notice of Registration to the contractor.

Greene County may require a copy of the Notice of Registration prior to executing a contract with an out-of-state contractor. If you have questions about Missouri's transient employer law, please contact the Missouri Department of Revenue at (573)751-3958.

**Business Compliance:** The bidder must be in compliance with the laws regarding conducting business in the State of Missouri. The bidders certifies by signing the signature page of this original document and any amendment signature page(s) that the Bidder and any proposed subcontractors either are presently in compliance with such laws or shall be in compliance with such laws prior to any resulting contract award. The bidder shall provide documentation of compliance upon request by Greene County. The compliance to conduct business in the state shall include but not be limited to:

- Registration of business name (if applicable)
- Certificate of authority to transact business/certificate of good standing (if applicable)
- Taxes (e.g., city/County/state/federal)
- State and local certifications (e.g., professions/occupations/activities)
- License and permits (e.g., city/County license, sales permits)
- Insurance (e.g., worker's compensation/unemployment compensation)

**Project Administration:** Submit all questions about the Contract Documents to the Greene County Purchasing Department, in writing. Replies which modify the Documents will be issued to the Bidders of record as Addenda to the Drawings and Specifications, and will form a part of the Contract. The Owner will not be responsible for oral clarifications. Questions must be received by the Greene County Purchasing Department no later than four (4) working days prior to the Bid opening date. No Addenda will be issued less than two (2) days prior to the Bid opening date.

**Submitting A Bid:** Bids must be priced, properly endorsed by a person authorized to legally bind the Bidder, and returned with all necessary attachments to the Purchasing Department prior to the closing date and time which appears on the front page of the RFP.

The bid number and title must appear on the face of the sealed container. The County shall not be responsible for bids which are lost or misdirected due to improper labeling of container.

**Bid Opening:** Information contained in proposals will not be released prior to the opening, and then only to those who appear at the public bid opening at The Purchasing Department, 933 N. Robberson, Springfield, Missouri. Attendance to the public bid opening is not mandatory.

Pricing information will be read aloud to those attending the public opening. Upon award of contract, bid tabulations will not be provided by telephone, but may be examined by appointment during normal business hours.

**Bidder Contact:** Unauthorized contact with County personnel other than the contact listed for this project while the bid and evaluation are in progress will result in immediate disqualification of the proposal.

**Clarification of Requirements:** Bidders shall carefully examine the Bid document. Questions concerning discrepancies or ambiguities in specifications, instructions, and/or requirements of this document which become apparent to the Bidder upon examination of the document must be submitted to the Purchasing Department.

Failure of bidder to request clarification of terms, conditions, specifications and requirements herein will not waive the responsibility of the respondent to provide goods and/or services in accordance with the intent of this document. Signing this document shall be considered to denote thorough comprehension of the intent of this document.

It is the responsibility of each supplier to check the County website for bid postings. The County is not responsible and accepts no liability in the event a supplier is not sent a bid document. The County is not responsible for and accepts no liability in the event a response is late due to network, internet, or any other technical problem or interruption.

**Amendments to A Bid:** No modification of, or addition to specifications or provisions contained in this document shall be made or construed to have been made unless such modification is incorporated in a written addendum to the Bid.

**Awards of Bid:** Award shall be made to the lowest and most responsive and responsible bidder who conforms to the solicitation, and whose bid is considered to be the most advantageous to the County, price and other factors considered.

Greene County Bid #: 17-10578
Greene County Cx. #: 17-819

ACH 000033

**Exhibit A**

Electronically Filed - Greene - June 17, 2022 - 03:50 PM

Award of bid shall be in accordance with all applicable public procurement and purchasing laws and requests. Any award resulting from this bid will be made by written notification from the purchasing department in the form of an authorized purchase order signed by an authorized agent of the Greene County Purchasing Department.

The County reserves the right, in the best interest of Greene County, Missouri, to reject any and all bids, to waive any minor informality or irregularity in a bid, make multiple vendor award based on the needs of the County, and to select the offer deemed most advantageous to the County.

Sincerely,

Chris Mericle

Chris Mericle
Purchasing Director
Greene County, Missouri

ACH 000034

Case 6:22-cv-03193-MDH   Document 1-1   Filed 07/29/22   Page 31 of 195

Exhibit A

**BID SPECIFICATIONS**

Minimum requirements and specifications are for use in establishing general performance and quality levels, and are not meant to limit or restrict bidding. Bidders may offer any manufacturer's equipment which meets or exceeds the minimum requirements.

The proposer shall clearly state any and all exceptions to the minimum requirements, and the County shall consider such exceptions when evaluating proposals for award. Failure to list such deviations shall denote that respondent has taken no exception and shall furnish equipment which is fully in compliance with the specifications contained herein.

**PROJECT OVERVIEW**

The GCJ contains male and female inmates and has an average daily population (ADP) of 601 inmates. The ADP is made up of approximately 500 Greene County inmates with 100 non-county inmates who are housed at the facility for other entities or state or federal agencies. The GCJ has been accredited by the National Commission on Correctional Health Care (NCCHC).

The Contractor is in the business of providing medical services for jails and correctional facilities and has experience in providing such medical services to the level of care required to maintain NCCHC accreditation. The Contractor has specifically represented that the hours of service detailed in this Agreement will not affect NCCHC accreditation. Further, the Contractor warrants that it will provide a level of service such that accreditation shall continue in full force and effect for the duration of this Agreement.

The medical unit is operated 24 hours per day, 7 days a week. On a weekly basis Registered nursing (RN) services are available up to 124 hours, Licensed Practical Nurse (LPN) up to 376 hours, Certified Medical Technician (CMT) up to 84 hours, and administrative services up to 40 hours. Practitioner (MD or equivalent) will visit up to four hours semiweekly for services rendered.

**SCOPE OF SERVICES**

The winning vendor's responsibility to provide medical services to a particular inmate will commence immediately upon arrival to the Greene County Justice Center.

**General Nature:** The Contractor shall provide medical services through competent medical personnel at the GCJ, and the Contractor shall refer and coordinate any medical services that is specialized treatment and beyond the Contractor's professional capabilities to outside care providers. The Contractor shall not be responsible for the cost of such specialized services that are beyond the Contractor's professional capabilities to administer at the GCJ. The Contractor shall provide all inmate medical treatment and treatment recommendations that it believes to be medically necessary and within its professional capabilities to provide, and the Sheriff, including his respective employees, agents, attorneys, successors, and assigns, shall rely on the Contractor to provide such medical treatment and treatment recommendations.

**Policies, Procedures, and Protocols:** The Contractor will assist the Sheriff in drafting and implementing GCJ-specific medical policies, procedures, and protocols on the National Commission on Correctional Health Care (NCCHC) and American Correctional Association (ACA) standards and the GCJ's capabilities. Such policies, procedures, and protocols will at all time be the property of the SHERIFF, and the Contractor shall be responsible for following all applicable medical and non-medical policies of the SHERIFF, including but not limited to those related to the Prison Rape Elimination Act of 2003 (PREA) for preventing, detecting, monitoring, investigating, and eradicating any form of sexual abuse within the GCJ. The Contractor acknowledges that the SHERIFF may conduct announced or unannounced monitoring to include on-site monitoring. The Contractor shall be responsible for maintaining the GCJ's NCCHC accreditation, but shall not be responsible for paying the annual accreditation fee.

**Duration:** The Contractor's responsibility to provide medical services to inmates at the GCJ shall commence immediately upon the last of all of the following having occurred: i) the commencement date listed in the **Duration** section of this Agreement; ii) the Contractor having satisfied all pre-conditions to commence services detailed in this Agreement, such as but not limited to, obtaining the necessary insurance coverage; iii) all the Parties having signed this Agreement, and the Auditor Certification.

**Expert Opinion:** The Parties expressly acknowledge that the Sheriff shall rely on the Contractor to provide all expert opinions regarding the medical condition and medically necessary treatment of all inmates at the GCJ, including that the Contractor shall be solely responsible for determining whether or not an inmate is medically fit for confinement.

Greene County Bid #: 17-10578
Greene County Cx. #: 17-819

Page 5 of 30

**Medical Screenings:** The Contractor shall conduct the medical screening portion of all inmate intakes. The Contractor shall also examine each inmate that appears to suffer from any medical issue that could render such inmate not fit for confinement and determine whether such inmate is medically fit for confinement, and promptly notify and advise GCJ staff of that determination. The Contractor shall also coordinate to provide or arrange for all medically necessary treatment that must be provided off-site from the GCJ.

**Cavity Searches:** The Contractor shall, through a physician, perform all physical body cavity searches of inmates at the GCJ, and through qualified health care professionals, shall perform all medical examinations necessary to determine the gender status of an inmate, and shall also assist, when reasonably practicable and requested by GCJ staff, in modified strip searches and strip searches of inmates; and the Contractor shall make its staff familiar with all applicable SHERIFF policies regarding such searches.

**DNA Samples:** The Contractor shall collect all DNA samples where such samples must be provided pursuant to Missouri law by virtue of the nature of an offense or as otherwise provided by law, including as evidenced in any MULES printout or Court order. However, this shall not preclude the arresting officer or other appropriate law enforcement officer from collecting such without the assistance of the Contractor.

**Blood Draws:** The Contractor shall collect all blood draws where such must be provided pursuant to Missouri law by virtue of the nature of an offense or as otherwise provided by law, including as evidenced in any MULES printout or Court order. However, this shall not preclude the arresting officer or other appropriate law enforcement officer from collecting such without the assistance of the Contractor.

**Pharmaceuticals:** The medical care that the Contractor must provide includes that the Contractor shall plan to provide, and provide, pharmaceuticals including prescription medications, prescribed over-the-counter medications, and psychotropic medications, which are medically necessary and appropriate and safe for the uniqueness of a correctional environment, to all inmates held at the GCJ, where the Contractor believes to a reasonable degree of medical certainty within the applicable standard of care that medication is necessary to treat a life threatening condition, and also where an inmate is exhibiting symptoms of a disorder that impairs functioning or mental health, so that medication is necessary.

**Scope of Care:** If in the Contractor's opinion an inmate requires medical treatment that is beyond the Contractor's professional abilities, such as for example, complicated surgical intervention, the Contractor shall take such steps as it believes are medically necessary to provide treatment, including referral to an appropriate off-site or outside emergency medical provider. In case of such need, the Contractor shall immediately notify GCJ staff, which will make arrangements for the transportation of the inmate to the preferred provider.

**Compulsory Nature of Care:** If in the Contractor's opinion an inmate has refused medically necessary treatment, the Contractor shall administer such treatment if it is an emergency, or make any medically necessary referral to an emergency treatment provider who has agreed with the Contractor to administer the required treatment, and it shall be the Contractor's responsibility to provide or procure the medically necessary treatment, and the Contractor shall participate and cooperate in any such judicial proceedings as are necessary to obtain a court order directing whether or not necessary medical treatment must be provided. In the event of any Court order directing that medical treatment must be provided to an inmate, the Contractor shall comply with that Court order, either by directly administering such medical treatment, or by making any medically necessary referral to a treatment provider who has agreed with the Contractor to administer the required treatment, and it shall be the Contractor's responsibility to provide or procure the medical treatment necessary to comply with any such Court order. This specifically includes that the practitioner and medical personnel through which the Contractor shall provide the services detailed in this Agreement, are authorized by the Contractor by the terms of this Agreement to assist the SHERIFF in such judicial proceedings, and that the SHERIFF shall be freely able to directly contact and communicate with such individuals regarding such proceedings, before, during, and after those proceedings, without prior notice or other permission from the Contractor.

**Practitioner Services:** The Contractor must provide four hours of semiweekly on-site practitioner services through a Medical Doctor, in which the practitioner will remain on-site until all necessary treatment and duties are completed. The practitioner will serve as the GCJ's medical director and as such, will be responsible for all medical decisions regarding inmates at the facility, including that the practitioner shall be the prescribing authority at the GCJ. The Contractor shall make that practitioner available by telephone to the GCJ's staff 24 hours a day, 7 days a week, including holidays, with at least two back-up practitioners also available. The Sheriff shall not be responsible for any recruitment, hiring, training, continuing education, or other costs of any kind related to the Contractor providing practitioner services.

**Nursing Services:** The Contractor must provide 56 hours of CMT services, 124 hours of RN services, 336 hours of LPN services, and develop a plan for making up hours worked over or under the contracted amount. The Sheriff shall

Greene County Bid #: 17-10578
Greene County Cx. #: 17-819

Page 6 of 30

not be responsible for any recruitment, hiring, training, continuing education, or other costs of any kind related to the Contractor providing practitioner services.

**Management Services:** The Contractor will provide the SHERIFF with a comprehensive strategic plan, peer review of the medical staff provided by the Contractor, a waste reduction program, utilization management, and a risk management program specific to the GCJ's operations. In addition, the Contractor will attend regularly scheduled Continuing Quality Improvement (CQI) with the Sheriff and/or his personnel during which all healthcare reports concerning the overall operation of the healthcare services program and the general health of the inmates at the facility will be reviewed and discussed.

**Emergency Care:** When the Contractor's medical staff is on-site, in addition to providing emergency medical treatment for inmates, the Contractor's medical staff must also provide emergency medical treatment for any and all individuals who become ill or injured while on the premises of the GCJ.

**Elective Care:** The Contractor will not be responsible for providing elective care to inmates. "Elective care" is care which, if not provided, would not, in the opinion of the Contractor, cause the inmate's health to deteriorate, or cause harm to the inmate's well-being. Decisions concerning elective care should be consistent with the applicable American Medical Association (AMA) standards. The Parties expressly acknowledge that the Sheriff must rely on the Contractor to provide all expert medical opinions, including that the Contractor shall be solely responsible for determining whether or not care is elective or medically necessary (non-elective).

**Pharmacy Services:** The Contractor will be the sole prescribing authority for inmates held at the GCJ, and will determine whether all inmate medications are medically necessary to a reasonable degree of medical certainty, consistent with the applicable standard of care. Upon making such determination, the Contractor shall order medication, manage the pharmaceutical inventory, set-up medication, and distribute medication, all during the medical staff's hours on-site. The Contractor will also develop and implement a plan for using an inmate's medically necessary home medications which are brought into the GCJ. While all medically necessary (non-elective) medications must be provided by the Contractor, the Contractor will not be financially responsible for the cost of the Specified Medications detailed herein. The Contractor's plan must include a medication verification procedure, such as, but not restricted to, the use of computer tracking software and bar-coded inmate wrist bands to record the i) date and ii) time iii) each inmate received prescribed medication, iv) the type and dosage, v) the identity of the individual who provided that medication. The Contractor must document: i) the identity of the individual who administered or offered the medication to the inmate, ii) the identity of the inmate to whom the medication was provided or offered, iii) the type and dosage of each medication, iv) the date and time the medication was administered or offered, and v) whether the inmate accepted or refused the medication.

**Specified Medications:** The Contractor shall provide to the extent medically necessary, but shall not pay the cost of, medications specifically used to treat HIV, AIDS, HIV/AIDS related diseases, hepatitis, cystic fibrosis, multiple sclerosis, cancer, and/or active tuberculosis, as well as biological and/or anti-rejection drugs, which will be paid for by the County. Medications related to these treatments will be defined in accordance with medical literature.

**No Extra Payment to the Contractor for Pharmacy Services to Non-County Inmates:** The Contractor considered the need to provide pharmacy services as detailed herein to all inmates held at the GCJ when it determined to enter this Agreement. Accordingly, reimbursement, if any, from non-Parties for medications provided to federal inmates, or inmates from other states, counties, or municipalities, temporarily housed in the GCJ, and forwarded to the Sheriff, shall not be owed to the Contractor.

**Biomedical Waste Disposal:** The Contractor will be responsible for the provision of and cost of biomedical waste disposal services for the medical unit at the GCJ. The Parties anticipate that typical biomedical waste may include, but is not limited to, bandages, dressings, gloves, hypodermic needles, laboratory containers, sharps, and syringes. The Contractor shall be responsible for making sure any such material on or about the GCJ shall be handled, stored, and disposed of in compliance with all laws and regulations. The Contractor shall be fully liable for all damages, costs, and expenses related to the use, storage, and disposal of any such material.

**Co-pay System:** The Contractor shall continue operating the co-pay system implemented by the SHERIFF to document inmate medical requests and services, and the Contractor shall provide such documentation to GCJ staff so they may accurately post co-pay charges to each inmate's account. The Contractor shall not be responsible for otherwise maintaining inmate accounts.

**Mental Health Services:** The Contractor is not required to provide mental health professionals as part of this Agreement. However, as the sole prescribing authority in the GCJ, and as part of a holistic approach to inmate medical concerns, the Contractor shall coordinate with mental health professionals employed at the GCJ, and shall participate in treatment team meetings with mental health staff, and maintain an open communication with mental

Greene County Bid #: 17-10578
Greene County Cx. #: 17-819                              Page 7 of 30

Electronically Filed - Greene - June 17, 2022 - 03:50 PM

health staff regarding those inmates that claim or appear to be suffering from mental health issues, so that the Contractor will be in a position to determine to a reasonable degree of medical certainty whether medication must be prescribed to treat a life threatening condition, or because an inmate is exhibiting symptoms of a disorder that impairs functioning or mental health, so that medication is medically necessary, and the Contractor shall make all such determinations.

**Dental Care:** The Contractor is not required to provide dental care, but shall provide dental hygiene instruction to the inmates, and will also provide dental triage screenings in accordance with criteria established by a licensed dentist for the purpose of identifying inmates in need of serious dental services. When medically necessary, the Contractor will coordinate off-site dental care, but shall not be financially responsible for the cost of such off-site dental care.

**Pregnant Inmates:** The Contractor shall provide medically necessary care, including Emergency Care, to pregnant inmates, but all inmate pregnancies shall be treated as high risk pregnancies, and the Contractor shall coordinate with an off-site gynecologist designated by the Sheriff to provide medical services specifically related to inmate pregnancies, and where the County shall bear the cost of such third-party treatment.

**Inmates Temporarily Housed in Other Facilities:** Due to the limited capacity of the GCJ, the SHERIFF must sometimes temporarily house inmates in other jails. In the event an inmate receiving medically necessary medication at the GCJ must be temporarily held in another jail, then the Contractor shall coordinate the delivery of a sufficient supply of the necessary medication with the inmate at the time the inmate is transported to the other jail, as well as the delivery of that inmate's medical records, as referenced in the Medical Records portion of this Agreement. The Contractor shall not be required pursuant to this Agreement to provide medical services to any GCJ inmates while they are held in other jails, but this shall not excuse the Contractor from providing such if the Contractor is otherwise obligated to do so pursuant to any separate agreement.

**Medical Claims Re-pricing:** The Contractor will be responsible for the re-pricing of medical claims. Once claims are received, the Contractor will calculate the applicable discount (if any) and confirm the integrity of claim prior to payment.

**Medical Records:** Inmate medical records will at all times be the property of the SHERIFF and shall be kept at the GCJ or other facility designated by the SHERIFF. The Contractor will employ a medical records clerk who will, at a minimum, manage and maintain the medical records on each inmate who has received healthcare services at the GCJ, including that such clerk shall assist and provide such records as directed to such SHERIFF employees, agents, attorneys, successors, and assigns, as authorized or directed by the SHERIFF, and the clerk shall comply with all SHERIFF policies regarding such records, as well as serve as a custodian of records. In that capacity, the clerk shall be expected to maintain the knowledge necessary to periodically attest as a custodian of records and to assist the SHERIFF in any and all proceedings in which such records may be needed as evidence, and the Contractor specifically authorizes the clerk to do so without further notice or permission, including that the SHERIFF shall not be required to contact or notify the Contractor in order to obtain medical records of inmates or testimony regarding same. The records system shall require that the records be maintained in the ordinary course of business of the GCJ, and that they be prepared by individuals with knowledge of the events detailed therein, at or near the time the record is created. As a custodian of records, the clerk shall maintain knowledge of the manner in which the medical records are prepared and maintained, and shall attest as a business records custodian as directed by the SHERIFF. This shall not preclude SHERIFF staff from also attesting as custodians of records, insofar as they are legally qualified to do so. Other than as directed by the SHERIFF, the Contractor shall not share such records with any other individual or entity, and shall keep information contained within the medical records confidential. To the extent, if any, that the Health Insurance Portability and Accountability Act of 1996 (HIPAA) may apply to any record maintained by the Contractor, the Contractor must comply with it, as well as with any other applicable law. Medical records will be kept separate from the inmate's confinement records. The Contractor shall make a complete copy of the inmate's medical records available to accompany each inmate who is transferred from the GCJ to another jail or correctional facility or for off-site services; and shall coordinate the delivery of such records.

**On-Site Testing:** The Contractor will provide for inmates on-site laboratory testing to include finger-stick blood sugar checks and urine dipstick checks for pregnancy or infection. As needed, the Contractor will also provide basic physical examinations for potential inmate workers to ensure the inmate is physically capable of performing assigned work duties. Additionally, the Contractor will also provide tuberculosis (TB) skin tests for inmates. The Contractor will be financially responsible for the cost of the inmates' TB serum and related supplies. Separately, the Contractor will provide TB skin tests for GCJ staff, and in this case, the County will be financially responsible for the cost of TB serum and related supplies.

**Off-Site Services:** When medically necessary services are beyond the professional capabilities of the Contractor to provide on-site at the GCJ, the Contractor will arrange for those services off-site. Off-site services may include

Greene County Bid #: 17-10578
Greene County Cx. #: 17-819

ACH 000038
Case 6:22-cv-03193-MDH   Document 1-1   Filed 07/29/22   Page 35 of 195
Exhibit A

Electronically Filed - Greene - June 17, 2022 - 03:50 PM

medically necessary: specialist consultation, testing, and treatment, such as, but not limited to, laboratory, radiological, electrocardiogram (EKG) testing, surgical intervention, and dialysis.

**Inmate Personal Needs:** The Contractor will not be responsible for providing or paying for the personal needs of inmates that are not medically necessary, including daily housekeeping services, meals, beverages, building maintenance services, facility cleaning for ectoparasites, personal hygiene supplies, clothing, and linen supplies. The Contractor shall determine whether what would otherwise be a personal need item is medically necessary under the specific circumstances applicable to an individual inmate, and the Contractor shall timely notify the Sheriff of any such determination, and the Contractor shall either administer the medically necessary treatment or make the necessary referral and arrangements for such treatment to be provided. The Contractor shall not be responsible for paying for what would otherwise be a personal need, even when medically necessary. For illustration purposes only, the Contractor shall be responsible for determining whether it is medically necessary for any inmate to be placed on a special diet, such as a liquid diet, and for timely advising the SHERIFF of that medical necessity, and if medically necessary, for administering or procuring the necessary care, but the Contractor would not pay for that special diet.

**Medical Equipment (durable):** The County will remain financially responsible for durable medical equipment, which includes an exam table, exam stool, emesis basin, CPR AmbuBag, small refrigerator, scales, and O2 tanks.

**Medical Supplies (disposable):** The Contractor will provide disposable medical supplies intended for one-time use, which does not include durable or reusable medical supplies. Disposable medical supplies expected to be in the GCJ's medical unit includes, at a minimum, tongue blades, Band-Aids, gauze pads, medical tape, sterile water, saline, pregnancy tests, blood sugar strips, peak flow mouth pieces, O2 tubing, urine test strips, syringes, gloves, med cups, lancets, ammonia ampules, cotton-tip applicators, and alcohol preps. The Contractor shall also be responsible for providing O2 and refilling the O2 tanks provided by the Sheriff.

**Office Equipment (durable):** The Sheriff will provide the Contractor with the use of office equipment and utilities in the GCJ's medical unit, including a locking file; paper punch; staple remover; stapler; cabinet for storing medical supplies; computer; fax machine; copier/printer; and toner.

**Office Supplies (disposable):** The Sheriff will provide disposable office supplies, including medical charts, paper, pens, staples, and Post-It notes which are required for the provision of inmate healthcare services.

**Medical Professionals:** By executing this Agreement, the Contractor warrants that the Contractor has experience in providing medical services to jails and correctional facilities, and will utilize qualified and competent medical professionals to perform its obligations under this Agreement.

**SPECIAL PROVISIONS** :

Is your business considered a minority, woman, or veteran owned business?

Yes\_\_\_\_\_          No\_x\_\_\_

If it is one of the designated businesses, then which one(s)? _____

If it is one of the designated businesses, then is it certified by the federal, state, or local government as a minority, woman, or veteran owned business?

Yes\_\_\_\_\_          No\_x\_\_\_

If it is certified, then which one(s)? _____

If it is certified, then please attach certification documentation to this paperwork.

**FINANCIAL TERMS**

Payment for services will be made monthly on approved invoices, with payment terms of net 30 days upon receipt of invoice. Contractor agrees to provide supporting documentation to invoicing as requested by County. Pricing shall remain firm for a minimum of one (2) years. Cost increases may be negotiated at the time of renewal, but will be subject to approval of the Purchasing Director. Increases will be considered only when the Contractor can show that his or her operating costs have increased. The Contractor shall provide written notification of acceptance or rejection of the extension of the contract.

Greene County Bid #: 17-10578
Greene County Cx. #: 17-819                    Page 9 of 30

ACH 000039

Exhibit A

| | | 3/27/17 ACH RFR Response Pricing Submission | | | |
|---|---|---|---|---|---|
| | | 17-10578 **Inmate Medical Services** | | | |
| **Bid Item No.** | **Description** | **Est. Hours Worked (Weekly)** | **Hourly Price** | | **Total $ Amount Yearly (weekly amount x 52)** |
| 1. | Administrative Services | 40 | $ | | $ |
| 2. | Certified Medical Technician | 56 | $ | | $ |
| 3. | Licensed Practical Nurse | 336 | $ | | $ |
| 4. | Registered Nurse | 124 | $ | | $ |
| 5. | Practitioner (MD, or equiv.) | 8 | $ | | $ |
| | Subtotal - Hours (1-5) | | | | |
| | **Overhead - Other Annual Non-direct personnel related costs** | | | | |
| 6. | Pharmaceuticals | NA | NA | | $ |
| 7. | Supplies | NA | NA | | $ |
| 8. | Medical waste | NA | NA | | $ |
| 9. | Insurance | NA | NA | | $ |
| 10. | Administration/Oversight | NA | NA | | $ |
| | Subtotal - Overhead (6-10) | | | | |
| | ACH Total Proposal Bid (1-10) | | | | $ |

The pricing quoted above represents the TOTAL BID PRICE for all Contractor's services, labor, materials, tools, equipment, supplies, transportation, and all other items and facilities necessary to complete the work specified; and will be effective until contract execution, or at least 90 days.

Bidder's Name:      Advanced Correctional Healthcare, Inc.

Bid 17-10578

Contract 17-819

Pg 10 of 30

## PRICING FORM

Pursuant to and in accordance with the above stated Request for Proposal, the undersigned hereby declares that they have examined the RFP documents and specifications for the item(s) listed below. The undersigned proposes and agrees, if their bid is accepted to furnish the item(s) submitted below, including delivery to Greene County, Missouri in accordance with the delivery schedule and according to the prices, products/services information submitted.

| Bid Item | Description | Estimated Hours Worked (Weekly) | Hourly Price | Total $ Amount Yearly (Weekly Amount x 52) |
|---|---|---|---|---|
| 1. | Administrative services | 40 | $ | $ |
| 2. | Certified Medical Technician | 56 | $ | $ |
| 3. | Licensed Practical Nurse | 336 | $ | $ |
| 4. | Registered Nurse | 124 | $ | $ |
| 5. | Practitioner (MD, or Equivalent) | 8 | $ | $ |
| 6. | Overhead (Pharmaceuticals, Supplies, Waste, Insurance, Administration, etc.) | N/A | N/A | $          /          % |
| | Total Bid Price | - | - | $ |

The pricing quoted above represents the **TOTAL BID PRICE** for all Contractor's services, labor, materials, tools, equipment, supplies, transportation, and all other items and facilities necessary to complete the work specified; and will be effective until contract execution, or at least 90 days.

Bidder's Name_____

Greene County Bid #: 17-10578
Greene County Cx. #: 17-819

Page 10 of 30

ACH 000041

Electronically Filed - Greene - June 17, 2022 - 03:50 PM

## SCORING METHOD

These criteria are the basis for how the proposals are evaluated. **THE VENDOR WHO SCORES THE HIGHEST ON THESE CRITERIA WILL WIN THE BID.**

| Criteria | Description | Value |
|---|---|---|
| Cost | A comparison of all prices included in the "Pricing Form."<br><br>Hourly rates (items 1-5 in the "Pricing Form") will be tallied to determine a total sum for all hourly services. That total will then be divided by five, and then multiplied times a weighted average that represents that amount of hours projected to be utilized for each hourly rate. Weighted average will then be compared across vendors with points being assigned according to how well the vendors compare to one another. Hourly rates/ overhead make up 70% of the cost criteria or 35% of the total value of all criteria listed in this table.<br><br>The other 30% of this criteria and 15% of the overall bid score is based off of the overhead (item 6 in the "Pricing Form"). This will be stated both as a percentage of the total cost and a sum of the total cost on the "Pricing Form." | 50% of the total criteria. Ranking of the vendors on this criteria will be established by tallying this value (see "Description" for further details); and will total no more than .50, on a scale from .00 to .50. |
| Experience | A value assigned to the application-specific years of experience for a given vendor and the quality of that experience.<br><br>Quantitative and qualitative variables will be evaluated to determine a total score. Half of this value (50% of this criteria and 15% of the overall score of the bid) will come from total years of experience in the application-specific field, and the other half (50% of this criteria and 15% of the overall score) will be evaluated based on the quality of that repertoire.<br><br>This will be inclusive of the culmination of all COUNTY jail medical experience for a single company (not the individuals in the company, but the number of years the company as a whole has been servicing COUNTY jail medical applications). Qualitatively, this criteria will be judged by whether the vendor can maintain the Jail's NCCHC accreditation. If the vendor is able to maintain that certification then 50% of this criteria, and 15% of the overall bid will be assigned. | 30% of the total criteria. Ranking of the vendors on this criteria will be established by tallying this value (see "Description" for further details); and will total no more than .30, on a scale from .00 to .30. |
| References | Quality both of companies referenced and of relation to COUNTY jail medical experience. Requirement is for three (preferably four) references to be provided (of like organizations, preferably governmental entities), and that those references have used the vendor for COUNTY jail medical applications. Half of this value (50% of this criteria and 10% of the overall score) will come from the quality of companies referenced, and the other half (50% of this criteria and 10% of the overall score) will be evaluated based on the relevance of the references. | 20% of the total criteria. Ranking of the vendors on this criteria will be established by tallying this value (see "Description" for further details); and will total no more than .20, on a scale from .00 to .20. |
| Total | Sum of all criteria. | On a scale from .00 to 1.00. |

Bidder's Business Name: Advanced Correctional Healthcare, Inc.

**CONTRACTOR REFERENCE INFORMATION**

Bidder shall submit as a part of the bid proposal package a minimum of four (4) business references with the name of the business, address, contact person, and telephone number.

Name:  Jefferson County Jail

Address:  809 Richard Arrington Jr. Blvd. N.

Tel No.:  205.327.8202

Fax No  205.327.8253

Email:  agved@jlocal.org

Contact:  Jail Administrator David H. Agee

Name:  Christian County Detention Center

Address:  410 W. 7th Street

Tel No.:  270.887.4152

Fax No  270.887.4450

Email:  brad.boyd@ccjail.org

Contact:  Jailer Brad Boyd

Name:  Summit County Jail

Address:  40 East Glenwood Avenue

Tel No.:  303.643.7964

Fax No  303.643.8207

Email:

Contact:  Jail Administrator Gary Bowen

Name:  Daviess County Detention Center

Address:  3337 Highway 144

Tel No.:  270.685.8466

Fax No  270.685.8449

Email:  dosborne@daviesscojail.org

Contact:  Jailer David Osborne

**BID SUBMISSION CHECKLIST**

For this bid submission, you are required to include:

- ✓ Completed & signed bid document
- ✓ Bid bond
- ✓ Attachment I (E-Verify)
- ✓ Attachment II (E-Verify)

If awarded the contract, you will also be required to submit:

- ✓ Insurance certificate
- ✓ W-9 Tax Form

Out-of-state contractors (transient employers) must also submit:

- ✓ Notice of Registration (from MO Dept of Revenue)

Bidder's Name  Advanced Correctional Healthcare, Inc.

Greene County Bid #: 17-10578
Greene County Cx. #: 17-819

Page 12 of 30

**AGREEMENT FOR CONTRACT SERVICES**

**THIS AGREEMENT** is made this _____ day of _____, 2017 by the **Greene County Sheriff**, ("Sheriff"), the **County**, and _____, the "Contractor".

**WHEREAS**, the Sheriff pursuant to Missouri law must control the county jail and the inmates held in that facility known as the Greene County Justice Center at 1010 N. Booneville Ave, Springfield, Missouri ("GCJ"); and

**WHEREAS**, the Sheriff has authority pursuant to RSMo. 70.220 to enter into this agreement; and

**WHEREAS**, The Contractor is in the business of supplying medical services to jails and other correctional facilities; and

**WHEREAS**, the cost of medical services to inmates at the GCJ may be less if provided by a business, as opposed to being provided by the Sheriff; and

**WHEREAS**, the Parties believe it is mutually beneficial that the Contractor provide medical services to inmates held at the GCJ, as further detailed herein;

**THEREFORE, IT IS AGREED AMONG THE PARTIES AS FOLLOWS:**

**PART I – FUNDAMENTAL TERMS**

**A.** <u>Location of Project:</u> The Greene County Justice Center at 1010 N. Boonville Springfield, MO 65802.

**B.** <u>Description of Services/ Goods to be Provided:</u> Provide goods/ services in accordance with Scope of Services, included herein.

**C.** <u>Term:</u> Unless terminated earlier as set forth in this Agreement, it is anticipated that the contract shall be awarded (will be formally and completely signed off on by all parties of interest, and the Contractor will be formally notified that they have won the bid) on or about 04/03/2017 (the "Award Date"). However, the contract shall commence upon the date of issuance of the "Notice to Proceed" letter ("Commencement Date"), which will instruct the bidder that the County is ready for services to commence. It is anticipated that the duration between the Award Date and the Commencement Date will be approximately 30 days, though that duration could vary based upon the needs of the GCJ and the Contractor. The approximate thirty day timetable is intended to provide the Contractor and County time for the switchover between the two systems of servicing inmates. All materials, personnel, administrative tasks, training (necessary to begin work), medications, supplies; and any other goods or services, shall be established, in place, and at the ready prior to the Commencement Date. The issuance of the "Notice to Proceed" shall govern the exact duration between the Award and Commencement dates. This duration is not to exceed 60 days, without the express written consent of the County and the Sheriff. Billing shall begin as of the "Commencement Date.' From the Commencement Date the contract shall extend for a two year term, with the option to renew at the discretion of the County, Sheriff, and Contractor; up to two (2) additional two year periods, for a total of six years.

**D.** <u>Party Representatives:</u>

**D.1.** The County designates the following person to act on County's behalf: Chris Mericle

**D.2.** The Contractor designates the following person to act on Contractor's behalf: See the contact name on page one of this document.

**E.** <u>Notices:</u> Contractor shall deliver all notices and other writings required to be delivered under this Agreement to the County at the address set forth in the General Provisions. The County shall deliver all notices and other writings required to be delivered to Contractor at the address set forth following Contractor's signature below.

**F.** <u>Integration:</u> This Agreement represents the entire understanding of County and Contractor as to those matters contained herein. No prior oral or written understanding shall be of any force or effect with regard to those

Greene County Bid #: 17-10578
Greene County Cx. #: 17-819                    Page 13 of 30

ACH 000044

**Exhibit A**

matters covered by this Agreement. This Agreement supersedes and cancels any and all previous negotiations, arrangements, agreements, and understandings, if any, between the parties, and none shall be used to interpret this Agreement.

## PART II - GENERAL PROVISIONS

**1. SECTION ONE: SERVICES OF CONTRACTOR**

**1.1. Scope of Services:** In compliance with all terms and conditions of this Agreement, Contractor shall provide the goods and/or services shown in the Scope of Services, which may be referred to herein as the "services" or the "work." If this Agreement is for the provision of goods, supplies, equipment or personal property, the terms "services" and "work" shall include the provision (and, if designated in the Scope of Services, the installation) of such goods, supplies, equipment or personal property.

**1.2. Changes and Additions to Scope of Services:** County shall have the right at any time during the performance of the services, without invalidating this Agreement, to order extra work beyond that specified in the Scope of Services or make changes by altering, adding to, or deducting from said work. No such work shall be undertaken unless a written order is first given by the County and the Sheriff to the Contractor, incorporating therein any adjustment in (i) the budget, and/or (ii) the time to perform this Agreement, which adjustments are subject to the written approval of the Contractor. It is expressly understood by Contractor that the provisions of this Section 1.2 shall not apply to services specifically set forth in the Scope of Services or reasonably contemplated therein. Contractor hereby acknowledges that it accepts the risk that the services to be provided pursuant to the Scope of Services may be more costly or time consuming than Contractor anticipates and that Contractor shall not be entitled to additional compensation therefore.

**1.3. Standard of Performance:** Contractor agrees that all services shall be performed in a competent, professional, and satisfactory manner in accordance with the standards prevalent in the industry, and that all goods, materials, equipment or personal property included within the services herein shall be of good quality, fit for the purpose intended.

**1.4. Performance to Satisfaction of Sheriff:** The Parties acknowledge that the Sheriff must rely on the Contractor's medical judgment in determining when treatment for an inmate is medically necessary and reasonable. However, in the event that the Sheriff discovers that the Contractor has failed to provide such treatment, then the Sheriff shall have the right to take appropriate action, including but not limited to: (i) meeting with the Contractor to review the quality of the services and resolve matters of concern; (ii) withholding payment; and (iii) terminating this Agreement.

**1.5. Financial Terms:** The Contractor shall be compensated in full in accordance with the terms of the Sheriff's and County's budget and as detailed in the amounts provided by in this Agreement. All related costs incurred by the Contractor shall be considered by the Parties to be included within this quoted price unless specifically exempted herein. Other than as provided for in this Agreement, the County and the SHERIFF shall not pay, nor be liable for any additional cost including, but not limited to taxes, insurance, interest, penalties, termination payments, or any additional costs of any kind. Payment for services will be made monthly on approved invoices, with payment terms of net 30 days upon receipt of invoice. Billing invoices shall detail the hourly rates for Administrative staff, Certified Medical Technicians (CMT), Licensed Practical Nurses (LPN), Registered Nurses (RN), and practitioners (Medical Doctor). The Contractor agrees to provide supporting documentation to invoicing as requested by the County or the SHERIFF. Pricing shall remain firm for a minimum of two (2) years.

**1.6. Instructions from County:** In the performance of this Agreement, Contractor shall report to and receive instructions from the County's Representative designated in the Fundamental Terms of this Agreement. Tasks or services other than those specifically described in the Scope of Services shall not be performed without the prior written approval of the County's Representative.

**1.7. Familiarity with Work:** By executing this Agreement, Contractor warrants that Contractor (i) has thoroughly investigated and considered the scope of services to be performed, (ii) has carefully considered how the services should be performed, and (iii) fully understands the facilities, difficulties, and restrictions attending performance of the services under the Agreement. If the services involve work upon any site, Contractor warrants that Contractor has or will investigate the site and is or will be fully acquainted with the conditions there existing, prior to commencement of services hereunder. Should the Contractor discover any conditions, including any latent or unknown conditions, which will materially affect the performance of the services hereunder, Contractor shall immediately inform the County of such fact and shall not proceed except at Contractor's risk until written instructions are received from the County's Representative.

Greene County Bid #: 17-10578
Greene County Cx. #: 17-819           Page 14 of 30

Electronically Filed - Greene - June 17, 2022 - 03:50 PM

**1.8.** **Prohibition Against Subcontracting or Assignment:** Contractor shall not contract with any other entity to perform in whole or in part the services required hereunder without the express written approval of County. In addition, neither the Agreement nor any interest herein may be transferred, assigned, conveyed, hypothecated, or encumbered voluntarily or by operation of law, whether for the benefit of creditors or otherwise, without the prior written approval of County. In the event of any unapproved transfer, including any bankruptcy proceeding, County may void the Agreement at County's option in its sole and absolute discretion. No approved transfer shall release any surety of Contractor of any liability hereunder without the express consent of County.

**1.9.** **Compensation:** Contractor shall be compensated in accordance with the terms of the budget. Included in the budget are all ordinary and overhead expenses incurred by Contractor and its agents and employees, including meetings with County representatives, and incidental costs incurred in performing under this Agreement.

**2.** **SECTION TWO: INSURANCE AND INDEMNIFICATION**

**2.1.** **Hold Harmless / Indemnification:** To the fullest extent permitted by law, the Contractor shall hold harmless and indemnify the Sheriff and the County, including their respective employees, agents, attorneys, successors, and assigns, against any claims, losses, damages, including reasonable attorneys' fees and other costs of litigation, and expenses, arising by reason of any act, negligent or otherwise, of the Contractor or its personnel, including the individuals, entities, employees, independent contractors, subcontractors (meaning anyone, including but not limited to consultants having a contract with the Contractor or a subcontractor for part of the services), successors, agents, and assigns through which the Contractor shall act in relation to providing the services detailed herein, including anyone directly or indirectly employed by the Contractor or by any subcontractor, or of anyone for whose acts the Contractor or its subcontractor may be liable, in connection with providing these services, and related to the medical services detailed herein. This provision does not, however, require the Contractor to indemnify or hold harmless the Sheriff or the County from their own negligence.

**2.2.** **Non-liability of the SHERIFF and the County Employees:** No officers, employees, agents, attorneys, representatives, successors, assigns, or volunteers of the Sheriff shall be personally liable to the Contractor, or any successor in interest, or its personnel, including the individuals, entities, employees, independent contractors, subcontractors (meaning anyone, including but not limited to consultants having a contract with the Contractor or a subcontractor for part of the services), successors, agents, and assigns through which the Contractor shall act in relation to providing the services detailed herein, including anyone directly or indirectly employed by the Contractor or by any subcontractor, or of anyone for whose acts the Contractor or its subcontractor may be liable, in the event of any default or breach by the Sheriff, or for any damages incurred by the Contractor or any amount which may become due to the Contractor or its successor, or for breach of any obligation of the terms of this Agreement.

**2.3.** **Insurance:** Without limiting the Contractor's indemnification obligations, the Contractor shall procure and maintain, at its sole cost and for the duration of this Agreement, insurance coverage as provided herein, against all claims for injuries against persons or damages to property which may arise from or in connection with the Contractor providing the services contemplated in this Agreement. The Contractor will name the Sheriff and the County, including their respective employees, agents, attorneys, successors, and assigns, as additional insureds under its commercial automobile, commercial general, and professional liability portions of insurance, as well as provide the County and Sheriff with a Certificate of Insurance SPECIFIC TO CORRECTIONAL FACILITIES AND PUBLIC ENTITIES evidencing the terms of the insurance coverage and policy limits. Each such policy MUST INCLUDE LANGUAGE TO THE EFFECT THAT THE LISTING AS ADDITIONAL INSUREDS SHALL NOT BE CONSTRUED AS WAIVING THEIR RESPECTIVE RIGHTS OR DEFENSES WITH REGARD TO APPLICABLE SOVEREIGN, GOVERNMENTAL OR OFFICIAL IMMUNITIES AND ANY OTHER PROTECTIONS OR DEFENSES AS PROVIDED BY FEDERAL AND STATE CONSTITUTIONS, STATUTES, AND LAWS, AND THE PROCUREMENT AND MAINTENANCE OF INSURANCE SHALL NOT BE CONSTRUED AS WAIVING SUCH PROTECTIONS OR DEFENSES. The Contractor expressly warrants that such insurance will cover the Sheriff and the County, including their respective officers, employees, agents, attorneys, successors, and assigns, as well as cover the Contractor and the individuals, entities, employees, independent contractors, successors, agents, and assigns through which the Contractor shall act to provide the services detailed herein, and in the event that there is no such coverage, the Contractor shall defend, indemnify, and hold harmless the Sheriff and the County, and their respective officers, employees, agents, attorneys, successors, and assigns.

The Contractor shall not provide the services required by this Agreement until it has obtained all insurance required by this Agreement, where the Contractor must submit proof of said insurance which has been approved by the Sheriff. All policies shall be from companies authorized to issue insurance in the State of Missouri and shall be in the designated amounts (where specified), and from companies satisfactory to the

ACH 000046

Electronically Filed - Greene - June 17, 2022 - 03:50 PM

Sheriff, and which must carry an A-6 or better rating as listed in the A.M. Best or equivalent rating guide. The Contractor's inability to perform the services required by this Agreement due to failure to procure approved insurance shall not excuse performance, and will constitute a breach of this Agreement. Any notice of cancellation of insurance shall be given in writing to the Sheriff in the manner in which notices are required by this Agreement. The Contractor shall assume all responsibility for deductible amounts from such insurance and shall indemnify and hold the Sheriff and the County harmless therefrom. In addition, the Contractor shall reimburse the Sheriff or the County for any damage done to their respective property which occurs during performance of the Agreement.

2.4.    **Comprehensive General Liability Insurance:** The Contractor shall maintain such comprehensive general liability insurance as shall protect the Contractor from claims for damages for personal injury including accidental death, as well as from claims for property damages, which may arise from the Contractor providing services under this Agreement. The insurance carried by the Contractor shall name the Sheriff and the County, and their respective officers, employees, agents, attorneys, successors, and assigns, as additional insureds in amounts sufficient to cover the sovereign immunity limits for Greene County and said insurance shall be not less than $1,000,000.00 per occurrence and $3,000,000.00 in aggregate, covering both bodily injury and property damage, including accidental death.

2.5.    **Workers Compensation and Employer's Liability Insurance:** The Contractor shall maintain Employer's Liability and Worker's Compensation Insurance for all of their employees and statutory employees through whom the Contractor provides the services contemplated in this Agreement, and this specifically requires that the Contractor shall procure Employers' Liability Insurance to provide protection for injuries not otherwise compensable pursuant to workers' compensation. Worker's Compensation coverage shall meet Missouri statutory limits. Employers' Liability limits shall be $500,000.00 each employee, $500,000.00 each accident, and $500,000.00 policy limit.

2.6.    **Commercial Automobile Liability:** The Contractor shall maintain automobile liability insurance in the amount of not less than $1,000,000.00 per claimant and $3,000,000.00 for any one occurrence, covering both bodily injury, including accidental death, and property damage, to protect the Contractor from any and all claims arising from the use of the Contractor's own motor vehicles.

2.7.    **Professional Liability:** (covering errors and omissions): Not less than One million dollars ($1,000,000.00) per occurrence and three million dollars ($3,000,000.00) annual aggregate.

2.8.    **Proof of Carriage of Insurance:** The Contractor shall furnish the Sheriff and the County with Certificate(s) of insurance which name the Sheriff and the County, and their respective officers, employees, agents, attorneys, successors, and assigns as additional insureds in the amounts sufficient to cover sovereign immunity limits for Missouri public entities as calculated by the Missouri Department of Insurance, financial institutions, professional registration, and published annually in the Missouri Register, pursuant to Section 537.610, RSMo. or as amended, and at least in the amounts specified in this Agreement, whichever is higher. Each Party shall require a thirty (30) day mandatory cancellation notice.

3.      SECTION THREE: LEGAL RELATIONS AND RESPONSIBILITIES

3.1.    **No Waiver or Limitation:** In no event shall the language or requirements of this Agreement constitute or be construed as a waiver or limitation on the part of the Sheriff, or their respective officers, employees, agents, attorneys, successors, and assigns, of their respective rights or defenses with regard to applicable sovereign, governmental or official immunities and any other protections or defenses as provided by federal and state constitutions, statutes, and laws, and the procurement and maintenance of insurance by any such, including any Party, shall not be construed as waiving such protections or defenses.

3.2.    **Laws:** This Agreement shall be governed by and construed in accordance with the laws of the State of Missouri, all of which are incorporated by reference herein. The Contractor shall keep itself fully informed of and at all times observe and comply with all applicable existing and future state and federal laws, and at all times shall be responsible for the compliance with those laws in providing the services contemplated in this Agreement. This Agreement shall not be construed in a manner that would violate any applicable law, and shall not be construed as requiring any service or performance that would violate applicable law.

3.3.    **Joint Authorship:** This Agreement shall be construed as having been drafted by all the Parties, and in the event of any ambiguity, such shall not be construed against any Party as the drafter.

Greene County Bid #: 17-10578
Greene County Cx. #: 17-819                     Page 16 of 30

Electronically Filed - Greene - June 17, 2022 - 03:50 PM

**3.4.** __Plain-Meaning:__  The terms of this Agreement shall be construed in accordance with the meaning of the language used and shall not be construed for or against any Party by reason of the authorship of this Agreement or any other rule of construction which might otherwise apply.  The headings of sections and paragraphs of this Agreement are for convenience or reference only, and shall not be construed to limit or extend the meaning of the terms, covenants and conditions of this Agreement.

**3.5.** __Integration:__  This Agreement represents the entire understanding of the Parties as to those matters contained herein.  No prior oral or written understanding shall be of any force or effect with regard to those matters covered by this Agreement.  This Agreement supersedes and cancels any and all previous negotiations, arrangements, agreements, and understandings, if any, and none shall be used to interpret this Agreement.

**3.6.** __Licenses, Permits, Fees and Assessments:__  Contractor shall obtain at its sole cost and expense all licenses, permits, and approvals that may be required by law for the performance of the services required by this Agreement.  Contractor shall have the sole obligation to pay any fees, assessments, and taxes, plus applicable penalties and interest, which may be imposed by law and arise from or are necessary for Contractor's performance of the services required by this Agreement, and shall indemnify, defend, and hold harmless County against any such fees, assessments, taxes, penalties, or interest levied, assessed, or imposed against County thereunder.

**3.7.** __Non-Discrimination Assurance:__  With regard to work under this Agreement, the Contractor agrees as follows::

    **a.** __Civil Rights Statutes:__  The Contractor shall comply with all state and federal statutes relating to nondiscrimination, including but not limited to Title VI and Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §§ 2000d and 2000e, et seq.), as well as any applicable titles of the "Americans with Disabilities Act" (42 U.S.C. § 12101, et seq.).  In addition, if the Contractor is providing services or operating programs on behalf of the department or the Commission, it shall comply with all applicable provisions of Title II of the "Americans with Disabilities Act".

    **b.** __Nondiscrimination:__  The Contractor covenants for itself, its assigns, and all persons claiming under or through it, that there shall be no discrimination against any person on grounds of race, color, religion, creed, sex, disability, national origin, age or ancestry of any individual in the selection and retention of subcontractors, including procurement of materials and leases of equipment in the performance of this Agreement.  The County shall not participate either directly or indirectly in the discrimination prohibited by 49 C.F.R. § 21.5, including employment practices.

    **c.** __Solicitations for Subcontracts, Including Procurements of Material and Equipment:__  These assurances concerning nondiscrimination also apply to subcontractors and suppliers of the Contractor.  These apply to all solicitations either by competitive bidding or negotiation made by the Contractor for work to be performed under a subcontract including procurement of materials or equipment.  Each potential subcontractor or supplier shall be notified by the Contractor of the requirements of this Agreement relative to nondiscrimination on grounds of the race, color, religion, creed, sex disability or national origin, age or ancestry of any individual.

    **d.** __Information and Reports:__  The Contractor shall provide all information and reports required by this Agreement, or orders and instructions issued pursuant thereto, and will permit access to its books, records, accounts, other sources of information, and its facilities as may be determined by the County to be necessary to ascertain compliance with other contracts, orders and instructions.  Where any information required of the Contractor in the exclusive possession of any other who fails or refuses to furnish this information, the Contractor shall so certify to the County as appropriate and shall set forth what efforts it has made to obtain the information.

    **e.** __Sanctions for Noncompliance:__  The Contractor will take such action with respect to the individuals, entities, employees, independent contractors, subcontractors (meaning anyone, including but not limited to consultants having a contract with the Contractor or a subcontractor for part of the services), successors, agents, and assigns through which the Contractor shall act to provide the services detailed herein, as the Sheriff may direct, as a means of enforcing the terms of this Agreement, including sanctions for noncompliance; provided that in the event the Contractor becomes involved or is threatened with litigation as a result of such direction, the Contractor may request the Sheriff to enter into such litigation to protect the interests of the Sheriff or the County.  In the event the Contractor fails to comply in full with the terms of this Agreement, the Sheriff or the County may impose such contract sanctions as either determines to be appropriate, including but not limited to:

        **(i)**  Withholding of payments under this Agreement until the Contractor complies; and/or

        **(ii)**  Cancellation, termination or suspension of this Agreement, in whole or in part, or both.

Greene County Bid #:  17-10578
Greene County Cx. #:  17-819

ACH 000048

Case 6:22-cv-03193-MDH   Document 1-1   Filed 07/29/22   Page 45 of 195
Exhibit A

f. **Incorporation of Provisions:** The Contractor shall include the provisions of paragraph 3.3 of this Agreement in every subcontract, including procurements of materials and leases of equipment, unless exempted by the statutes, County Commission order, or instructions issued by the County. The Contractor will take such action with respect to any subcontract or procurement as the County may direct as a means of enforcing such provisions, including sanctions for noncompliance; provided that in the event the Contractor becomes involved or is threatened with litigation with a subcontractor or supplier as a result of such direction, the Contractor may request the County to enter into such litigation to protect the interests of the County.

3.6. **Section 285.530(2) RSMo. and 292.675 RSMo. Affidavit:** Contractor shall comply with the provisions of Sections 285.525 through 285.550, and 292.675 RSMo, from the commencement until the termination of this Agreement. For any contract over $5,000.00 and for any public works project contract the Contractor shall provide County an acceptable notarized Affidavit stating:

    a. That Contractor is enrolled in and participates in a federal work authorization program with respect to the employees working in connection with the contracted services; and

    b. That Contractor does not knowingly employ any person who is an authorized alien in connection with the contracted services.

    c. That Company has verified the completion of a 10-hour construction safety program with respect to the employees working in connection with the contracted services.

Contractor must provide County with documentation evidencing current enrollment in a federal work authorization program (e.g. electronic signatory page from E-verified program's memo of understanding). Refer to <u>Attachment I</u>, Notice and Instructions to Bidder/Vendors regarding Sections 285.525 through 285.550, RSMo, effective January 1, 2009 and Section 292.675 RSMo, effective August 28, 2009, attached hereto.

3.8 **Independent Contractor:** To the fullest extent possible, neither the Contractor nor any of the individuals, entities, employees, independent contractors, subcontractors (meaning anyone, including but not limited to consultants having a contract with the Contractor or a subcontractor for part of the services), successors, agents, and assigns through which the Contractor shall act to provide the services detailed herein, shall be construed to be an employee of the Sheriff, and the Contractor shall perform all services required herein as an independent contractor and shall remain at all times a wholly independent contractor. Further, the Sheriff shall not in any way or for any purpose be or be construed to as partner of the Contractor in its business or otherwise, or a joint venture, or a member of any joint enterprise with the Contractor. The Contractor shall not at any time or in any manner represent that it or any of the individuals, entities, employees, independent contractors, successors, agents, and assigns through which the Contractor shall act to provide the services detailed herein, are agents or employees of the Sheriff. Neither the Contractor nor the individuals, entities, employees, independent contractors, subcontractors (meaning anyone, including but not limited to consultants having a contract with the Contractor or a subcontractor for part of the services), successors, agents, and assigns through which the Contractor shall act to provide the services detailed herein, shall be at any time, or in any way, entitled to any sick leave, vacation, retirement, or other fringe benefits from the Sheriff. The Sheriff shall be under no obligation to withhold State and Federal tax deductions from the Contractor's compensation. Neither the Contractor nor the individuals, entities, employees, independent contractors, subcontractors (meaning anyone, including but not limited to consultants having a contract with the Contractor or a subcontract for part of the services), successors, agents, and assigns through which the Contractor shall act to provide the services detailed herein, shall be included in the competitive service, have any property right to any position, or any of the rights an employee may have in the event of termination of this Agreement.

3.9 **Use of Patented Materials:** Contractor shall assume all costs arising from the use of patented or copyrighted materials, including but not limited to equipment, devices, processes, and software programs, used or incorporated in the services or work performed by Contractor under this Agreement. Contractor shall indemnify, defend, and save the Sheriff harmless from any and all suits, actions or proceedings of every nature for or on account of the use of any patented or copyrighted materials.

3.10 **Proprietary Information:** All proprietary information developed by the Contractor specifically for the Sheriff or the provision of the services required by this Agreement to the GCJ, or in connection with, or resulting from, this Agreement, including but not limited to inventions, discoveries, improvements, copyrights, patents, reports, textual material, or software programs, but not including the Contractor's underlying materials, software, or know-how, shall be the property of the Sheriff, and are confidential and shall not be made available to any person or entity without the prior written approval of the Sheriff. The Contractor agrees that the compensation to be paid pursuant

Greene County Bid #: 17-10578
Greene County Cx. #: 17-819

Electronically Filed - Greene - June 17, 2022 - 03:50 PM

to this Agreement includes adequate and sufficient compensation for any proprietary information developed in connection with or resulting from the performance of the Contractor's services under this Agreement. The Contractor further understands and agrees that full disclosure of all proprietary information developed in connection with, or resulting from, the performance of services by the Contractor under this Agreement shall be made to the Sheriff and that the Contractor shall do all things necessary and proper to perfect and maintain ownership of such proprietary information by the Sheriff.

3.11 **Retention of Funds:** Contractor hereby authorizes County to deduct from any amount payable to Contractor (whether arising out of this Agreement or otherwise) any amounts the payment of which may be in dispute hereunder or which are necessary to compensate County for any losses, costs, liabilities, or damages suffered by County, and all amounts for which County may be liable to third parties, by reason of Contractor's negligent acts, errors, or omissions, or willful misconduct, in performing or failing to perform Contractor's obligations under this Agreement. County in its sole and absolute discretion, may withhold from any payment due Contractor, without liability for interest, an amount sufficient to cover such claim or any resulting lien. The failure of County to exercise such right to deduct or withhold shall not act as a waiver of Contractor's obligation to pay County any sums Contractor owes County.

3.12 **Termination by the Sheriff:** The Sheriff has the right to terminate this Agreement, in conjunction with the Purchasing Director, at any time, with or without cause, upon written notice to the Contractor. Upon receipt of any notice of termination, the Contractor shall immediately cease all services hereunder except such as may be specifically approved in writing. The Contractor shall be entitled to compensation for all services rendered prior to receipt of notice of termination and for any services authorized in writing thereafter. If termination is due to the failure of the Contractor to fulfill its obligations under this Agreement, the Contractor's liability shall include, but not necessarily be limited to, the total cost for obtaining the services referenced in this Agreement, and the costs incurred in retaining a replacement provider or providers, and similar expenses. All parties involved shall be informed of this decision.

3.13 **Right to Stop Work; Termination by the Contractor:** Contractor may terminate this Agreement only for cause, upon ninety (90) days' prior written notice to the County and the Sheriff's office. Contractor shall immediately cease all services hereunder as of the date Contractor's notice of termination is sent to County, except such services as may be specifically approved in writing by County. Contractor shall be entitled to compensation for all services rendered prior to the date notice of termination is sent to County and for any services authorized in writing by County thereafter. If Contractor terminates this Agreement because of an error, omission, or a fault of Contractor, or Contractor's willful misconduct, the terms of Section 3.8 relating to County's right to take over and finish the work and Contractor's liability therefore shall apply.

3.14 **Waiver:** No delay or omission in the exercise of any right or remedy by a non-defaulting party on any default shall impair such right or remedy or be construed as a waiver. A party's consent to or approval of any act by the other party requiring the party's consent or approval shall not be deemed to waive or render unnecessary the other party's consent to or approval of any subsequent act. Any waiver by either party of any default must be in writing.

3.15 **Legal Actions:** Legal actions concerning any dispute, claim, or matter arising out of or in relation to this Agreement shall be instituted and maintained in an appropriate court with jurisdiction in the Circuit Court in Greene County, Missouri; and all the Parties agree to submit to the personal jurisdiction of such court.

3.16 **Rights and Remedies are Cumulative:** The rights and remedies of the parties are cumulative and the exercise by either party of one or more of such rights or remedies shall not preclude the exercise by it, at the same or different times, of any other rights or remedies for the same default or any other default by the other party.

3.17 **Attorneys' Fees:** In any action by the County against the Contractor seeking enforcement of any of the terms or provisions of this Agreement or in connection with the performance of the work hereunder, if the County is the party prevailing in the final judgment in such action or proceeding, in addition to any other relief which may be granted, the County shall be entitled to have and recover from the Contractor its reasonable costs and expenses, including, but not limited to, reasonable attorney's fees, expert witness fees, and courts costs. If the County is required to initiate or defend litigation with a third party because of the violation of any term or provision of this Agreement by the Contractor, then the County shall be entitled to its reasonable attorney's fees and costs from the Contractor.

3.18 **Force Majeure:** The time period specified in this Agreement for performance of services shall be extended because of any delays due to unforeseeable causes beyond the control and without the fault or negligence of County or Contractor, including, but not restricted to, acts of nature or of the public enemy, unusually severe weather, tornadoes, fires, earthquakes, floods, epidemics, quarantine restrictions, riots, strikes, freight embargoes, wars, litigation, and/or acts of any governmental agency, including County, if the delaying party shall within ten (10) days of the commencement of such delay notify the other party in writing of the causes of the delay. If Contractor

Greene County Bid #: 17-10578
Greene County Cx. #: 17-819

Electronically Filed - Greene - June 17, 2022 - 03:50 PM

is the delaying party, County shall ascertain the facts and the extent of delay, and extend the time for performing the services for the period of the enforced delay when and if in the judgment of County such delay is justified. County's determination shall be final and conclusive upon the parties to this Agreement. In no event shall Contractor be entitled to recover damages against County for any delay in the performance of this Agreement, however caused. Contractor's sole remedy shall be extension of this Agreement pursuant to this Section 3.14.

**3.19** <u>Non-liability of County Employees:</u> No official, employee, agent, representative, or volunteer of County shall be personally liable to Contractor, or any successor in interest, in the event of any default or breach by County, or for any amount which may become due to Contractor or its successor, or for breach of any obligation of the terms of this Agreement.

**3.20** <u>Conflicts of Interest:</u> No official, employee, agent, representative or volunteer of the County shall have any financial interest, direct or indirect, in this Agreement, or participate in any decision relating to this Agreement that affects his or her financial interest or the financial interest of any corporation, partnership, association or other entity in which he or she is interested, in violation of any Federal, State, or County law or statute. Contractor shall not employ any such person while this Agreement is in effect.

Contractor represents, warrants, and covenants that he, she, or it presently has no interest, direct or indirect that would interfere with or impair in any manner or degree the performance of the Contractor's obligations and responsibilities under this Agreement. Contractor further agrees that while this Agreement is in effect Contractor shall not acquire or otherwise obtain any interest direct or indirect, that would interfere with or impair in any manner or degree the performance of Contractor's obligations and responsibilities under this agreement.

**4. SECTION FOUR: PREMISIS**

**4.1** <u>Security:</u> The Contractor acknowledges that the Sheriff may exercise the right to screen and reject or approve anyone for security or background clearance, including but not limited to the Contractor's staff and the individuals, entities, employees, independent contractors, successors, agents, and assigns through which the Contractor shall act to provide the services detailed herein, and that this could operate to exclude individuals from access to the GCJ. The exercise of this right by the Sheriff shall not be construed as a breach of this Agreement. Failure, including refusal, by the Contractor or any of the individuals, entities, employees, independent contractors, successors, agents, and assigns through which the Contractor shall act to provide the services detailed herein, to cooperate and comply with the exercise of such right by the Sheriff, or to perform the services required by this Agreement due to the Contractor utilizing individuals who could not satisfy the screening process, shall be a breach of this Agreement.

**4.2** <u>Tobacco-Free Campus:</u> Tobacco use shall be strictly prohibited within the entire campus of the County, including the GCJ, and in privately-owned vehicles parked on such property. This policy applies to the Contractor and all the staff through which it provides the services detailed in this Agreement and compliance is a condition of this Agreement.

**5. SECTION FIVE: MISCELLANEOUS PROVISIONS**

**5.1** <u>Access to Records of the Sheriff:</u> All records, including but not limited to medical records, prepared by the Contractor in the performance of this Agreement (i) shall be the property of the Sheriff and shall be delivered at no cost to the Sheriff upon its request or upon the termination of this Agreement, and (ii) are confidential and shall not be made available to any individual or entity without prior written approval of the Sheriff. The Contractor shall keep and maintain all records and reports related to this Agreement for a period of three (3) years following termination of this Agreement, and shall timely notify the Sheriff of its intent, if any, to destroy such records prior to doing so.

**5.2** <u>Access to Records of the Contractor:</u> The Contractor shall provide all information and records required by this Agreement, and will also permit access to its books, records, accounts, other sources of information, and its facilities, as may be determined by the Sheriff to be necessary to ascertain compliance with this Agreement. Where any information required of the Contractor in the exclusive possession of any other who fails or refuses to furnish this information, the Contractor shall cooperate with the Sheriff in obtaining such information.

**5.3** <u>Notices:</u> Unless otherwise provided herein, all notices required to be delivered under this Agreement or under applicable law shall be personally delivered, or delivered by United States mail, prepaid, certified, return receipt requested, or by reputable document delivery service that provides a receipt showing date and time of delivery. Notices personally delivered or delivered by a document delivery service shall be effective upon receipt. Notices delivered by mail shall be effective at 4:00 p.m. on the second calendar day following dispatch. Notices to the County shall be delivered to the following address, to the attention of the County Representative set forth in Paragraph D.1 of the Fundamental Terms of this Agreement:

Greene County Bid #: 17-10578
Greene County Cx. #: 17-819

ACH 000051

Exhibit A

**To County:**          Greene County
                        Purchasing Department
                        933 N. Robberson
                        Springfield, Missouri 65802

Notices to Contractor shall be delivered to the address set forth below Contractor's signature on Part I of this Agreement, to the attention of Contractor's Representative set forth in Paragraph D.2 of the Fundamental Terms of this Agreement. Changes in the address to be used for receipt of notices shall be effected in accordance with this Section 4.2.

5.4   **Construction and Amendment:** The terms of this Agreement shall be construed in accordance with the meaning of the language used and shall not be construed for or against any party by reason of the authorship of this Agreement or any other rule of construction which might otherwise apply. The headings of sections and paragraphs of this Agreement are for convenience or reference only, and shall not be construed to limit or extend the meaning of the terms, covenants and conditions of this Agreement. This Agreement may only be amended by the mutual consent of the parties by an instrument in writing.

5.5   **Severability:** Each provision of this Agreement shall be severable from the whole. If any provision of this Agreement shall be found contrary to law, the remainder of this Agreement shall continue in full force to the extent possible to give effect to the intent of all the Parties as expressed herein.

5.6   **No Assignment:** The Contractor shall not assign the services it is required to provide under this Agreement in whole or in part without the express prior written approval of the Sheriff. In the event of any unapproved assignment, such as but not limited to any bankruptcy proceeding, the Sheriff may void the Agreement at either's option and in their sole and absolute discretion, and no assignment shall release any surety of the Contractor of any liability hereunder without the express written consent of the Sheriff.

5.7   **Licenses, Permits, Fees and Assessments:** The Contractor shall obtain at its sole cost and expense all licenses, permits, and approvals that may be required by law for the performance of the services required by this Agreement. The Contractor shall have the sole obligation to pay any fees, assessments, and taxes, plus applicable penalties and interest, which may be imposed by law and arise from or are necessary for the Contractor's performance of the services required by this Agreement, and shall indemnify, defend, and hold harmless the SHERIFF and the County against any such fees, assessments, taxes, penalties, or interest levied, assessed, or imposed against the Sheriff thereunder.

5.8   **Conflicts of Interest of with the Contractor:** The vendor represents, warrants, and covenants that it presently has no interest, direct or indirect that would interfere with or impair in any manner or degree the performance of the Contractor's obligations and responsibilities under this Agreement. The Contractor further agrees that while this Agreement is in effect the Contractor shall not acquire or otherwise obtain any interest direct or indirect, which would interfere with or impair in any manner or degree the performance of the Contractor's obligations and responsibilities under this Agreement.

5.9   **No Employment of Sheriff Personnel:** The Contractor shall not employ any officers, employees, agents, attorneys, representatives, successors, assigns, or volunteers of the Sheriff or the County while this Agreement is in effect.

5.10  **Inmate Labor:** The Contractor shall not employ, engage, or utilize GCJ inmates in any way to provide any services of any kind, including but not limited to services required by this Agreement.

5.11  **Authority:** The person(s) executing this Agreement on behalf of the parties hereto warrant that (i) such party is duly organized and existing, (ii) they are duly authorized to execute and deliver this Agreement on behalf of said party, (iii) by so executing this Agreement, such party is formally bound to the provisions of this Agreement, and (iv) the entering into this Agreement does not violate any provision of any other Agreement to which said party is bound.

5.12  **Special Provisions:** Any additional or supplementary provisions or modifications or alterations of these General Provisions shall be set forth in this Agreement.

Greene County Bid #: 17-1058
Greene County Cx. #: 17-819                    Page 21 of 30

**THIS AGREEMENT FOR CONTRACT SERVICES MUST BE SIGNED AND INCLUDED WITH THE BID SUBMISSION. IF AWARDED, THE CONTRACT WILL BE SIGNED AND CERTIFIED BY GREENE COUNTY AND ONE COPY OF THIS AGREEMENT WILL BE RETURNED TO YOU.**

IN WITNESS WHEREOF, the parties have executed and entered into this Agreement as of the date first set forth above.

**COUNTY OF GREENE**

By: _____
      Purchasing Director

By: _____
      Greene County Administrator

By: _____
      Presiding Commissioner

By: _____
      Commissioner, District 1

By: _____
      Commissioner, District 1

By: _____
      Commissioner, District 2

ATTEST BY: _____
      County Clerk

By: _____
      Greene County Sheriff

      4-19-17
      Date

**CONTRACTOR**

By: _____

Title: Dr. Norman Johnson, CEO

By: _____

Title: _____

**AUDITOR CERTIFICATION**

I certify that the expenditure contemplated by Greene County in this document is within the purpose of the document is within the purpose of the appropriation to which it is to be charged and that there is an unencumbered balance of anticipated revenue appropriated for payment of same.

_____
Greene County Auditor

5/9/17
Date

Greene County Bid #: 17-10578
Greene County Cx. #: 17-819

Page 22 of 30

**ACH 000053**

**Exhibit A**

## CONTRACTUAL REQUIREMENTS

1. A purchase order or contract issued to the successful bidder shall be governed by the United States and Missouri Uniform Commercial Code, and all laws of the State of Missouri as adopted and in force on the date of the Agreement.

2. Items and/or services are to be furnished as described in the proposal and in strict conformity with all instructions, conditions, provisions and specifications contained in the contract. In the event of a conflict with the requirements stated in the Bid Document or the Contractor's response, the Bid document shall govern.

3. Contractor proposes and agrees to accept, as full compensation for furnished items and/or services, the amount submitted in his/her proposal. All related costs associated with completion of the project specified shall be considered by both Contractor and County to be included within this quoted price. The County shall not pay, nor be liable for any additional cost including, but not limited to taxes, insurance, interest, penalties, termination payments, etc.

4. Inspection and final acceptance will be at destination, and will be made by an authorized representative of the County. Until delivery and final acceptance, risk of loss will be the obligation of the Seller unless loss results from negligence of the County.

5. Contractor shall comply with all applicable state and local laws, rules, regulations, ordinances, building and safety codes. It shall be the sole responsibility of Contractor to comply with said laws, and any deviation from said laws will subject Contractor to the penalties set forth.

6. Issuance of contract shall be contingent upon submission by contractor of required insurance. Any notice of cancellation shall be given in writing to the Purchasing Director by registered or certified mail. Contractor shall assume all responsibility for deductible amounts from such insurance and bonding, and shall indemnify and hold the County harmless there from.

7. In addition to any insurance required hereunder, contractor shall agree to reimburse the County for any damage done to County property which occurs during performance of the contract.

8. No modifications of any provision of the contract shall be made, or construed to have been made, unless such modification is mutually agreed to in writing by all parties privy to this agreement, and incorporated in a written amendment to the contract.

9. It is the responsibility of the contractor to complete the project as described herein, incorporating suitable materials, and Contractor shall be solely responsible for the performance of workmanship and materials.

10. Sales/Use Tax Exemption: County will provide the Contractor with a completed Missouri Project Exemption and Missouri Tax Exemption letter for Greene County, Missouri and the Contractor shall be responsible for furnishing the exemption certificate and tax exemption letter to all authorized sub-contractors and suppliers providing materials incorporated in the work. All invoices issued for purchases for such materials, supplies and taxable rentals shall be in the name of the Greene County Sheriff's Office and contain the project number assigned by Greene County for the contract awarded. It shall be the responsibility of the Contractor to insure that no sales or use taxes are included in the invoices and that the County/ Sheriff pays no sales/use taxes from which it is exempt. The Contractor shall be responsible for obtaining revised exemption certificates and revised expiration dates if the work extends beyond the estimated project completion date or a certificate expiration date. The Contractor shall also be responsible for retaining a copy of the project exemption certificate for a period of five years and for compliance with all other terms and conditions of section 144.062 RSMo not otherwise herein specified. The Contractor agrees not to use or permit others to use the project exemption certificate for taxable purchases of materials or rentals and supplies not directly incorporated into or used in the work to which it applies and agrees to indemnify and hold the County harmless from all losses, expenses and costs including litigation expenses and attorney fees resulting from the unauthorized use of such project exemption certificates.

11. Additions, Deletions, Changes: No one can authorize any additions, deletions, or changes to the work, before or during term of the contract, unless approved change orders have been issued by the Purchasing Department. The County will not be responsible for any additional charges unless authorized change order has been issued.

**Notice and Instructions to Bidders/Vendors**

**Regarding Sections 285.525 through 285.550 RSMo, Effective January 1, 2009 and Section 292.675 RSMo, Effective August 28, 2009**

Effective January 1, 2009 and pursuant to the State of Missouri's RSMo 285.530 (1), No business entity or employer shall knowingly employ, hire for employment, or continue to employ an unauthorized alien to perform work within the state of Missouri.

As a condition for the award of any contract or grant in excess of five thousand dollars by the state or by any political subdivision of the state (e.g., Greene County, Mo.) to a business entity, the business entity (Company) shall, by sworn affidavit and provision of documentation, affirm its enrollment and participation in a federal work authorization program with respect to the employees working in connection with the contracted services. Every such business entity shall sign an affidavit affirming that it does not knowingly employ any person who is an unauthorized alien in connection with the contracted services. [RSMo 285.530 (2)]

RSMo 285.530 pertains to all solicitations for services over $5,000. RSMo 285.530 does not apply to solicitations for commodities only. If a solicitation is for services and commodities, RSMo 285.530 applies if the services portion of the solicitation is over $5,000.

Effective August 28, 2009, Greene County, Missouri, in order to comply with sections 285.525 through 285.550, and require compliance as a condition for the award of any contract or grant in excess of five thousand dollars or any public works project contract, the contractor shall submit the following documents:

**Required Affidavit for contracts over $5,000.00 (US)** – Effective 1-1-2009, Company shall comply with the provisions of Section 285.525 through 285.550 RSMo. Contract award is contingent on Company providing an acceptable notarized affidavit stating that:

1. Company is enrolled in and participates in a federal work authorization program with respect to the employees working in connection with the contracted services; and

2. Company does not knowingly employ any person who is an unauthorized alien in connection with the contracted services.

**Required Affidavit for any Public Works Project Contract** – Effective 8-28-09, Contractor must provide documentation evidencing current enrollment in a federal work authorization program (e.g. electronic signature page from E-Verify program's Memo of Understanding (MOU). *See attached sample*

Greene County encourages companies that are not already enrolled and participating in a federal work authorization program to do so. E-Verify is an example of this type of program. Information regarding E-Verify is available at http://www.dhs.gov/how-do-i/verify-employment-eligibility-e-verify, or by calling 888-464-4218.

Greene County Bid #: 17-10578
Greene County Cx. #: 17-819                      Page 24 of 30

ACH 000055

Electronically Filed - Greene - June 17, 2022 - 03:50 PM

**ATTACHMENT I**



**Affidavit of Compliance with Section 285.500 RSMo, Et Seq.**
**For all Agreements in excess of $5,000.00.**
**Effective January 1, 2009**

STATE OF  PEORIA  )
                               ) ss.
COUNTY OF  ILLINOIS  )

Before me, the undersigned Notary Public, in and for the County of  Peoria ,
State of  Illinois , personally appeared  Sherri Miller  *(Name)*
who is  President and COO  *(Title)* of  Advanced Correctional Healthcare, Inc.
*(Name of company)*, (a corporation), (a partnership), (a sole proprietorship), (a limited liability
company), and is authorized to make this affidavit, and being duly sworn upon oath deposes and
says as follows:

    (1) that said company is enrolled in and participates in a federal work
        authorization program with respect to the employees working in connection
        with the contracted services; and

    (2) that said company does not knowingly employ any person who is an
        unauthorized alien in connection with the contracted services.

The terms used in this affidavit shall have the meaning set forth in Section 285.500 RSMo, et seq.

**Documentation of participation in a federal work authorization program is attached to
this affidavit.**

Signature _____

Name:  Sherri Miller _____

Subscribed and sworn to before me this _____ day of _____, _____.

_____
Notary Public

My commission expires: _____

Greene County Bid #:  17-10578
Greene County Cx. #:  17-819

Page 25 of 30

ACH 000056
Exhibit A

Electronically Filed - Greene - June 17, 2022 - 03:50 PM

**ATTACHMENT II**

**Company ID Number: XXXXXX**

The foregoing constitutes the full agreement on this subject between the SSA, DHS (Department of Homeland Security), and the Employer.

The individuals whose signatures appear below represent that they are authorized to enter into this MOU on behalf of the Employer and DHS respectively.

To be accepted as a participant in E-Verify, you should only sign the Employer's Section of the signature page. If you have any questions, contact E-Verify Operations at 888-464-4218.

**Employer, Your Company Name**

**John Doe**
_____
Name (Please type or print)                          Title

*Electronically Signed*                               01/01/2009
_____
Signature                                             Date

**Verification**

**Department of Homeland Security** –Division

**USCIS Verification Division**
_____
Name (Please type or print)                          Title

*Electronically Signed*                               01/01/2009
_____
Signature                                             Date

ACH 000057

Case 6:22-cv-03193-MDH   Document 1-1   Filed 07/29/22   Page 54 of 195
Exhibit A

Electronically Filed - Greene - June 17, 2022 - 03:50 PM

**TERMS AND CONDITIONS OF BIDS**

**PREPARATION OF BIDS**

A. Bidders are expected to examine the specifications, delivery schedule, bid prices and all instructions of the RFP. Failure to do so will be at bidder's risk. In case of an error in extension, the unit price (s) will govern.

B. Any manufacturer's names, trade names, brand names, information and/or catalog numbers listed in a specification are for informational purposes only, and are not intended to limit competition. The bidder may offer any brand which meets or exceeds the specification for any item. If bids are based on equivalent products, indicate on the bid form the manufacturer's name and model number. The bidder shall explain in detail the reasons why the proposed equivalent will meet the specifications and not be considered an exception thereto. Bids which do not comply with these requirements are subject to rejection. Bids lacking any written indication of intent to bid an alternate brand will be received and considered in complete compliance with the specifications as listed on the bid forms.

C. All supplies and equipment offered in a bid must be new and of current production unless the RFP clearly specifies that used or re-conditioned supplies or equipment may be offered.

D. Firm prices shall be bid and include all packing, handling, and shipping charges.

E. Unless otherwise indicated, prices quoted shall be firm for acceptance for ninety days from bid opening and for the specified contract period.

F. Greene County, Missouri does not pay federal excise and sales tax on direct purchases of tangible personal property, Exemption number 12531847.

**SUBMISSION OF BIDS**

G. A bid submitted by a bidder must (1) be manually signed by the Bidder on the Greene County RFP form, (2) contain all information required by the RFP, (3) be priced as required, (4) be sealed in an envelope or container, (5) be attached to a security deposit if required, and (6) be delivered to the Purchasing Department and officially clocked in no later than the exact time and date specified in the solicitation.

H. The sealed envelope or container containing a bid should clearly marked on the outside of the container with (1) the official RFP number, and (2) the official closing date and time.

**MODIFICATION OR WITHDRAWL OF BIDS**

I. A bid may be modified or withdrawn by written notice received prior to the official closing date and time specified. A bid may also be withdrawn or modified in person by the Bidder or his authorized representative provided proper identification is presented before the official closing date and time. Verbal phone requests to withdraw or modify a bid will not be considered.

J. After official closing date and time, no bid may be modified or withdrawn.

**NO BIDS AND FUTURE SOLICITATIONS**

K. If no bid is to be submitted, the bid should be marked "NO BID" and returned in order to maintain the bidders name in file for future solicitations. If a bidder fails to respond to a reasonable number of bids without returning a "NO BID", the Purchasing Department reserves the right to delete the Bidder from the vendor file for future solicitations.

ACH 000058
Case 6:22-cv-03193-MDH   Document 1-1   Filed 07/29/22   Page 55 of 195
Exhibit A

**BID OPENING**

L.  Bid openings are public on the date and at the time specified on the bid form. It is the bidder's responsibility to assure that his bid is delivered by the proper time to the office of the Purchasing Department. Bids which for any reason are not so delivered will not be considered. Offers by telegram, telephone, or facsimile will not be acceptable. Bid files may be examined during normal working hours by appointment. Bid tabulations will not be provided by telephone.

**AWARDS**

M.  By virtue of statutory authority, a preference will be given to materials, products, supplies, provisions and all other articles produced, manufactured, made or grown within the State of Missouri, when all other factors are equal.

N.  Cash discounts for prompt payment of invoices will not be considered in the evaluation of prices. However, such discounts are encouraged to motivate prompt payment.

O.  As the best interest of Greene County may require, the right is reserved to make awards by item, group of items, all or none or a combination thereof, with one or more suppliers; to reject any and all bids, or waive any minor irregularity or technicality in bids received.

P.  Awards will be made to the Bidder whose bid (1) meets the specifications and all other requirements of the RFP, and (2) is the lowest and best bid, considering price, responsibility of the Bidder and all other relevant factors. All awards will be made by written notification from an authorized agent of the Greene County Purchasing Department.

Q.  Each bid received with the understanding that the acceptance in writing by Greene County of the offer to furnish any or all materials, equipment, supplies or services described therein shall constitute a contract between the bidder and Greene County and shall bind the Bidder to furnish and deliver at the price in accordance with the conditions of said accepted bid and detailed specifications.

**CLARIFICATION OF REQUIREMENTS**

R.  It is the intent and purpose of Greene County, Missouri that this request permits competitive bidding. It shall be the bidder's responsibility to advise the Purchasing Department if any language, requirements, etc. or any combinations thereof, inadvertently restricts or limits the requirements stated in this RFP to a single source. Such notification must be submitted in writing and must be received by the Purchasing Director not later than five (5) days prior to the closing date. A review will be made of any such notifications.

**TERMS OF PURCHASE**

S.  Binding Contract: A document in the form of a written purchase order or "Notice of Contract Award", signed by the Seller and countersigned by an authorized employee of the Purchasing Department of Greene County (also referred to as the "County" or "County's") shall constitute a binding contract, and the language of the contract shall govern in the event of a conflict with Seller's submitted bid or proposal.

The written contract or purchase order shall express the complete agreement of the parties, and performance shall be governed solely by the terms and conditions contained therein. Changes, additions or modifications thereto must be in writing and signed by an authorized employee of the Purchasing Department of Greene County.

T.  Quantities: The County shall assume no obligation for goods and/ or services provided in excess of the quantity ordered. Unauthorized quantities are subject to the County's rejection and shall be returned at the Seller's expense.

Electronically Filed - Greene - June 17, 2022 - 03:50 PM

U. **Delivery:** If delivery of goods and/ or services rendered are not made within the time initially agreed upon, in writing or by verbal agreement with the written agreement taking precedent over the verbal agreement, by the two parties, the County reserves the right to cancel or to purchase goods and/or services elsewhere. Seller may be liable for re-procurement cost.

V. **Shipment:** Deliveries shall be F.O.B. destination unless otherwise specified by the County.

W. **Invoices:** An original and remittance copy of the invoice shall be submitted to the Purchasing Department and shall show the Greene County purchase order number and contain full descriptive information of goods and/or services furnished. Each invoice must be itemized in accordance with items listed on the contract. Failure to comply with these requirements will delay processing of invoices for payment. Payment for all goods and services shall be made in arrears, according to the payment terms on the contract. The County will not make any advance deposits.

X. **Inspection and Acceptance:** No goods and/ or services received by the County pursuant to the contract shall be deemed accepted until the County has had reasonable opportunity to inspect said goods and/ or services. All goods and/ or services which are discovered to be defective or which do not conform to the warranty of the Seller upon inspection or at any later time, which were not reasonably ascertainable upon the initial inspection, may be returned and/ or be credited for. Should the authorized employee of the Purchasing Department of Greene County agree, they may also be replaced with goods and/ or services of equivalent value, purpose, and functionality. Such right-to-return offer to the County arising from the County's receipt of defective goods or services shall not exclude any other legal, equitable or contractual remedies the County may have therefore.

Y. **Warranty:** Seller expressly warrants that all articles, materials, work, and services covered by the contract will conform to each and every specification, drawing, sample or other description which is furnished to or adopted by the County, and that they will be fit and sufficient for the purpose intended, merchantable, of acceptable material and workmanship, and free from defect. Such warranty shall survive delivery and shall not be deemed waived either by reason of the County's acceptance of said goods and/ or services, or by payment for them.

Z. **Patents:** Seller guarantees that the sale or use of the articles described herein will not infringe upon any U.S. or foreign patent, and Seller covenants that he will, at his or her own expense, defend every suit which may be brought against the County, or those using the County's product for any alleged infringement of any patent by reason of the sale or use of such articles, and Seller agrees that he will pay all costs, damages, and profits recoverable in such suit.

AA. **Bankruptcy or Insolvency:** In the event of any proceedings by or against either party, or for the appointment of a receiver or trustee or an assignee for the benefit of creditors, of the property of Seller, or in the event of breach of any of the terms hereof including the warranties of the Seller, the County may cancel the contract or affirm the contract and hold Seller responsible in damages.

AB. **Compliance with Applicable Laws:** The Seller warrants they have complied with all applicable laws, rules and ordinances of The United States, or any state, municipality or any other governmental authority or agency in the manufacture or sale of the items and services covered by the contract.

AC. **Interpretation of Contract and Assignments:** The contract shall be construed according to the laws of the State of Missouri. The contract or any rights, obligations, or duties hereunder may not be assigned by the Seller without the County's written consent, and any attempted assignment without such consent shall be void.

AD. **Termination of Contract:** The County reserves the right to terminate any contract at any time if the provisions of the contract are violated by the Seller or any of his or her subcontractors, in the sole judgement and discretion of the County. If the contract is so terminated, the County may purchase upon such terms and in such manner as the authorized employee of the Purchasing Department of Greene County may deem appropriate, supplies or services of equivalent value, condition, function, and purpose to those so terminated, and the Seller will be liable for additional costs occasioned thereby.

AE. **Non-Discrimination in Employment:** In connection with the furnishing of supplies or performance of work under the contract, Seller agrees to comply with the Fair Labor Standards Act, Fair Employment Practices, Equal Opportunity Employment Act; and all other applicable federal, state, local laws, and ordinances; and further agrees to insert the foregoing provisions in all subcontracts awarded hereunder.

Greene County Bid #: 17-10578
Greene County Cx. #: 17-819

ACH 000060

Exhibit A

AF. Performance Bonds: If required as condition for contract award, the amount of a performance bond will be described in the bid package at the time of issuance. The performance bond must be issued for amount specified by a surety company, or secured with a cashier's check, certified check, cash, bank draft, or irrevocable letter of credit. No annual bid or performance bonds will be accepted unless otherwise indicated in the bid package.

AG. Tax Exempt: Greene County, Missouri is exempt from state sales tax under Missouri Constitutional Provisions (Mo. Tax I.D. #12531647), and is exempt from Federal Excise Tax by Title 25, U.S. Code annotated.

AH. Uniform Commercial Code: The purchase agreement shall be governed by the Missouri Uniform Commercial Code as adopted and in force on the date of the Agreement, and both parties shall have all remedies afforded to each of them by the Missouri U.C.C. except as specifically modified within the Agreement.

AI. Trial by Jury: THE PARTIES EXPRESSLY WAIVE ANY RIGHT TO TRIAL BY JURY.

Electronically Filed - Greene - June 17, 2022 - 03:50 PM



## OFFICE OF THE PURCHASING DIRECTOR
### 933 N. ROBBERSON AVE., SPRINGFIELD, MO 65802

| ROBERT CIRTIN | HAROLD BENGSCH | LINCOLN P. HOUGH |
|---|---|---|
| PRESIDING COMMISSIONER | COMMISSIONER, 1st DISTRICT | COMMISSIONER, 2nd DISTRICT |

**ADDENDUM TO: REQUEST FOR PROPOSAL (RFP)/ AGREEMENT FOR CONTRACT SERVICES (CONTRACT)**

**RFP NO:** 17-10578   **ADDENDUM NO.:** 2   **CONTACT:** Chris Maride
**TITLE:** Inmate Medical Services   **PHONE:** (417)868-4019
**ISSUE DATE:** 04/18/2017   **E-MAIL:** cmaride@greenecountymo.gov

**RETURN ADDENDUM**
**NO LATER THAN:**   04/20/2017 at 2:00 PM (Central Standard Time)

**RETURN ADDENDUM TO:**   GREENE COUNTY PURCHASING DEPARTMENT
933 NORTH ROBBERSON AVE., TOP FLOOR
SPRINGFIELD, MISSOURI 65802

This Addendum forms a part of the Bid document (RFP)/ Agreement for Contract Services (Contract) for the services identified above. All remaining portions of the Bid document 17-10578, and its associated contract (17-819) not specifically mentioned or otherwise revised by this Addendum remain in full force and effect.

1. Heretofore, this Bid, and its associated Contract, will no longer include provisions for Administrative Services, which were previously included. Any costs associated with this role are no longer a valid part of the document. The forty hours per week of services required for Administrative Services cease to be a factor in the aforementioned Bid/ Contract.

   As such the bid proposed by Advanced Correctional Healthcare's (ACH) price is reduced by ▓▓▓▓▓▓ making the grand total for the entire bid, including items two through ten of the document entitled "17-10578 – Revised Pricing Form – Inmate Medical Services" (which was included as an appendices of Addendum One) equal to ▓▓▓▓▓▓▓▓.

2. Cavity Searches: The Contractor will not be responsible for performing physical body cavity searches. ACH will assist the COUNTY and SHERIFF in coordinating outside medical personnel to perform the searches. The Contractor will, through a physician or other qualified health care professionals, perform all medical examinations necessary to determine the gender status of an inmate when clinically necessary. The Contractor will make its staff familiar with all applicable SHERIFF polices regarding such searches.

Please be advised that the failure to supply the required documents or information required by this addendum by 4/20/2017 at 2:00 PM, may subject your bid to disqualification. This addendum consists of (2) pages.

Page 1 of 2

ACH 000062
Case 6:22-cv-03193-MDH   Document 1-1   Filed 07/29/22   Page 59 of 195
Exhibit A

Electronically Filed - Greene - June 17, 2022 - 03:50 PM

Sincerely,

Chris Mericle _(digitally signed)_

Chris Mericle
Purchasing Director

Addendum #2 acknowledged by:

Advanced Correctional Healthcare, Inc.
**Company Name**

Dr. Norman Johnson, CEO
**Bidder Name**

_(signature)_
**Signature**

Page 2 of 2

Electronically Filed - Greene - June 17, 2022 - 03:50 PM

# ADVANCED
## Correctional Healthcare, Inc.

GREAT PLACE TO WORK CERTIFIED AUG 2018 - AUG 2017 USA

15 January 2019

**VIA US MAIL PREPAID CERTIFIED RETURN RECEIPT REQUESTED**
ATTN: COUNTY REPRESENTATIVE: CHRIS MERICLE
Greene County
Purchasing Department
933 N. Robberson
Springfield, MO 65802

      Re:    Contract No. 17-819

County Representative Chris Mericle:

The above-referenced contract commenced on July 13, 2017 at 12:01 A.M. for a two-year term, with options to renew. Accordingly, our contract with Greene County expires on July 12, 2019 at 11:59 P.M.

This letter serves as written notice pursuant to the contract that ACH desires not to renew for subsequent contract periods. Therefore, our contract expires on July 12, 2019 at 11:59 P.M.

Thank you.

Respectfully,

Jessica Young, Esq., CCHP
President

Cc:    Damon Phillips *via email only to damon@kpwlawfirm.com*

Electronically Filed - Greene - June 17, 2022 - 03:50 PM

**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| MICHAEL D. HANCOCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  6:18-cv-03170-MDH-P |
| | ) | |
| JIM ARNOTT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

     Pursuant to Federal Rule of Civil Procedure 42(a), the Court hereby orders the consolidation of this case and *Porter v. Massie, et al.*, No. 6:18-cv-04114-MDH-P, and *Blade v. Advanced Correctional Healthcare, et al.*, No. 6:18-cv-03212-MDH-P.  The cases are consolidated into *Hancock v. Arnott*, No. 6:18-cv-03170-MDH-P.[1]

     Further, the Court requests that Charlie C. Eblen enter his appearance on the three plaintiffs' behalf. The Clerk of the Court shall send a copy of this order to Mr. Eblen at the following address: 2555 Grand Boulevard, Kansas City, MO 64108-2613. If any of the plaintiffs have an objection to this appointment, he or she shall advise the Court of that objection within ten days of this Order.

     **IT IS SO ORDERED.**

                        /s/  Douglas Harpool
                        DOUGLAS HARPOOL
                        UNITED STATES DISTRICT JUDGE

DATED:  August 23, 2018

---

[1] Rule 42(a) permits the Court to consolidate cases, or to issue orders to avoid unnecessary cost or delay, where actions before the Court "involve a common question or law or fact."  Consolidation is a question for the Court, in its broad discretion, and should be granted when a case meets the threshold requirements of common questions of fact or law.  *Enter. Bank v. Saettele*, 21 F.3d 233, 235 (8th Cir. 1994).  The Court finds consolidation appropriate because the cases involve common questions of fact and law and, furthermore, the Court's order will avoid unnecessary costs and delay because cases likely involve the same attorneys and arise out of acts occurring in the Greene County Justice Center.

Case 6:23-cv-03103-MDH  Document 1-16  Filed 07/28/23  Page 62 of 195
Case 6:18-cv-03170-MDH  Document 16  Filed 08/23/18  Page 1 of 1
**Exhibit C**

Electronically Filed - Greene - June 17, 2022 - 03:50 PM

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**

Michael D. Hancock 1854765 )
(full name)       (Register No.) )

_____ )

_____ )

     **Plaintiff(s).** )

**v.** )

    )

Sheriff Jim C. Arnot, Major Donny )
(Full name) )
Cpt. Johnson, Cpt. Coonrod, Cpt. Howell, )
Dr. Jason Willkins, Eric Partenheimer )
      **Defendant(s).**

**1 8 - 3 1 7 0 - CV - S - MDH - P**

Case No. _____

Defendants are sued in their (check one):

\_\_\_\_ Individual Capacity

\_\_\_\_ Official Capacity

✓ Both

## COMPLAINT UNDER THE CIVIL RIGHTS ACT OF 42 U.S.C. § 1983

I.    Place of present confinement of plaintiff(s): GREENE COUNTY Jail
1000 N. Boonville Ave, Springfield, Mo. 65802

II.    Parties to this civil action:
Please give your commitment name and any another name(s) you have used while incarcerated.

A. Plaintiff Michael D. Hancock     Register No. 1854765
Address GREENE COUNTY Jail 1000 N. Boonville Ave.
Springfield, Mo. 65802

B. Defendant Jim C. Arnott, Denny, Coonrod, Johnson, Howell
Jason D. Willkins, Eric Partenheimer
Is employed as Sheriff, Major, Captian, Captian, Captain, Doctor
RN.

For additional plaintiffs or defendants, provide above information in same format on a separate page.

1

Case 6:22-cv-03193-MDH Document 1-1 Filed 07/29/22 Page 63 of 195
Case 6:18-cv-03170-MDH Document 1 Filed 07/09/22 Page 1 of 105

**Exhibit D**

III.    Do your claims involve medical treatment?    Yes ___✓___    No _____

IV.    Do you request a jury trial?    Yes ___✓___    No _____

V.    Do you request money damages?    Yes ___✓___    No _____

     State the amount claimed?    $250,000 / 250,000 (actual/punitive)

VI.    Are the wrongs alleged in your complaint continuing to occur?   Yes ___✓___ No ___

VII.    Grievance procedures:

     A.   Does your institution have an administrative or grievance procedure?

                                                    Yes ___✓___    No _____

     B.   Have the claims in this case been presented through an administrative or grievance procedure within the institution?    Yes ___✓___    No _____

     C.   If a grievance was filed, state the date your claims were presented, how they were presented, and the result of that procedure. (Attach a copy of the final result.)

_____ See Attach copies. _____

_____

_____

     D.   If you have not filed a grievance, state the reasons.

_____

_____ N/A _____

_____

_____

VIII.    Previous civil actions:

     A.   Have you begun other cases in state or federal courts dealing with the same facts involved in this case?    Yes _____ No ___✓___

     B.   Have you begun other cases in state or federal courts relating to the conditions of or treatment while incarcerated?    Yes _____ No ___✓___

     C.   If your answer is "Yes," to either of the above questions, provide the following information for each case.

         (1) Style: _____

                     (Plaintiff)                    (Defendant)

         (2) Date filed:_____

2

**Exhibit D**

(3) Court where filed: _N/A_

(4) Case Number and citation: _N/A_

(5) Basic claim made: _N/A_

(6) Date of disposition: _N/A_

(7) Disposition: _N/A_
  (Pending) (on appeal) (resolved)

(8) If resolved, state whether for: _N/A_
  (Plaintiff or Defendant)

For additional cases, provide the above information in the same format on a separate page.

IX.  Statement of claim:

A.  State here as briefly as possible the facts of your claim. Describe how each named defendant is involved. Include the names of other persons involved, dates and places. Describe specifically the injuries incurred. Do not give legal arguments or cite cases or statutes. You may do that in Item "B" below. If you allege related claims, number and set forth each claim in a separate paragraph. Use as much space as you need to state the facts. Attach extra sheets, if necessary. Unrelated separate claims should be raised in a separate civil action.

_Dr. Wilkins has refused to send me to the hospital for surgery to fix my hernia & to see a specialist for my nerve damage because I'm unable to pay for it._

_SSS Attachment page 1_
_Sheriff Jim Arnott, Captains Howell, Johnson, Coonrod & Major Denny have upheld the Doctor's Choose in this matter as well as made policey refusing medical care if we as inmates can not pay._

B.  State briefly your legal theory or cite appropriate authority:

_The Actions of the listed defendants violates the 8th Amendment of the United States Constitution, Article 1, Section 21 of the Missouri State Constitution. Estelle v. Gamble 429 U.S. 97, 103 (1976) Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir 1994) Estelle, 429 U.S. at 104; Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir 2006) Brock v. Wright, 315 F.3d 158 (2d Cir 2003) & McRaven v. Sanders, 577 F.3d 974 (8th Cir 2009)_

3

**Exhibit D**

Electronically Filed - Greene - June 17, 2022 - 03:50 PM

On May 11th 2017 Springfield Police officer shot me in the back and right Leg while running away. I was taken to Mercy Hospital treatment. Medical staff did surgery to see that vital organs were okay.

On May 14th I was released to GREENE County Jail where I have been every since. ON July 4th, 7th & 10th complained about stomach pain & possible hernia on Nov 28th 2017 seen LPN Ashlie Shimmin with protruding hernia about middle of stomach.

ON 12-12-17 seen Doctor at Mercy who had me sign papers to agree to surgery. ON Jan 8th 2018 asked Dr. Willkins about surgery said would Look into. ON Jan 9th was told would do surgery if I could pay by Morgan Wamhoff LPN. Complained of hernia again on 2-12-2018.

ON 4-5-2018 was called to medical by Dr J. Willkins, Cpt. Howell, E. Postenheimer and given a copy of page 26 Greene County Jail Rule Book And RSMo 221.120. and to I had to pay for it.

Also on 12-18-2017 I placed a sick call in to see a specialist for nerve damage in my spine. was also told then would not be sent if I could Not pay.

Case 6:22-cv-03193-MDH Document 1-1 Filed 07/29/22 Page 66 of 195
Case 6:18-cv-03181-MDH Document 1 Filed 05/29/18 Page 6 of 1
Exhibit D

X.   Relief: State briefly exactly what you want the court to do for you. Make no legal arguments.

_I ask that this honorable court order this institution to have_
_my medical needs taken care of and grant the damages I ask_
_for._

XI.   Counsel:

A.  If someone other than a lawyer is assisting you in preparing this case, state the person's
name.   _N/A_

B.  Have you made any effort to contact a private lawyer to determine if he or she would
represent you in this civil action?                     Yes _✓_ No _____

If your answer is "Yes," state the names(s) and address(es) of each lawyer contacted.

_Shawn Markin 630 N. Robberson Springfield, Mo. 25806, Michael Horn 703 U.S. 65_
_Business Branson, Mo. 65616, Brad Bradshaw MD 1736 E. Sunshine Suite 200 Springfield, Mo 65807_
_Brian Johnson 911 N. Boonville Ave, Springfield, Mo. 65802_

C.  Have you previously had a lawyer representing you in a civil action in this court?
                                                Yes _____ No _✓_

If your answer is "Yes," state the name and address of the lawyer.

**I declare under penalty of perjury that the foregoing is true and correct.**

Executed (signed) this _27th_ day of _April_ 20_18_.

_Michael Duane Hancock_
Signature(s) of Plaintiff(s)

4

**Exhibit D**

Michael Hancock #1854765
GREENE COUNTY Jail
1000 N Boonville Ave.
Springfield, Mo. 65802

LEGAL MAIL

SCREENED BY
U.S. MARSHALS

RECEIVED
2019 MAY 29 PH 12: 13
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF MO.
KANSAS CITY, MO.

U.S. District Court
Office of CLERK
1510 Whittaker Courthouse
400 E. Ninth Street
Kansas City, Mo. 64106

UNITED STATES POST[AL]
02 1P
0000846:
MAILED...MO

**Exhibit D**

Electronically Filed - Greene - June 17, 2022 - 03:50 PM

**GREENE COUNTY SHERIFF'S OFFICE**        **JAIL DIVISION**

## INMATE REQUEST TO STAFF

FROM: Michael Hancock     CFN: 1854765   POD: A   CELL: 215

I am requesting: I request Dr. Wilkins to send me for my hernia surgery because I'm in the custody of Greene County Jail under RSMo you have to pay for it.

Thank you

4 / 4 / 18
**TODAY'S DATE**            Michael Hancock
                           **INMATE'S SIGNATURE**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* POD OFFICER IN CHARGE RESPONSE \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

/ /
**TODAY'S DATE**                    **SIGNATURE OF POD OFFICER**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* SHIFT SUPERVISOR RESPONSE - IF NEEDED \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
See inmate Rules + Regulations Section #6, Medical & Dental/ Mental Health, page 26, 1-C.

4 / 5 / 18
**TODAY'S DATE**                    **SIGNATURE OF SHIFT SUPERVISOR**

↑

NoT Medical STAFF

**Distribution: Original - Inmate**
**Copy - Inmate File**

JAL-ADMIN 106

Case 6:23-cv-03193-MDH Document 1-1 Filed 07/29/22 Page 69 of 185
Case 6:18-cv-03470-MDH Document 1-1 Filed 06/29/18 Page 69 of 185
**Exhibit D**

Electronically Filed - Greene - June 17, 2022 - 03:50 PM

## SECTION #6

## MEDICAL/DENTAL/MENTAL HEALTH

1.  **GENERAL PROVISIONS:**

    A.  At the time of being booked in, the Classification Officer will ask you about your medical condition(s) and history. Please indicate any problem at this time. If you have a communicable disease, please advise the Classification Officer of this. A medical questionnaire will be completed on each inmate.

    B.  The Medical staff will review initial medical screening and triage those inmates who require a physical evaluation will be seen by the Medical Staff.

    C.  While incarcerated in the Greene County Jail, your medical care will be under the direction of the Jail's Physician. If you require care outside of the facility, you must assume responsibility for payment of that care.

    D.  In the event of a medical emergency please notify staff who will notify the Medical Department. You will be seen by medical staff on duty and an appropriate triage decision will be made.

    E.  While in the custody of Greene County your medical care will be under the medical direction of the Jail Physician. The medical staff will verify your home medications and/or outside prescriptions. Medications will be started once they are ordered by the Jail Physician. You may not be placed on the same medications and dosages that you are on at home. The Jail Physician has the final decision on your medical care while incarcerated. The Greene County Jail Medical Staff makes every effort to use non-pharmacological means to treat physical and mental health problems whenever possible.

    F.  Inmates requiring a medical diet for **allergies** must submit an allergy questionnaire when classified during the booking process, documenting the allergy. Medical will then perform a lab/blood draw to test for the allergy. If the lab results are positive you will receive a medical diet and Greene County will pay for the lab test. If the lab results are negative, you will not receive a medical diet and will be responsible for paying $47.17 for the lab test (cost subject to change). You may accept or decline the allergy test; however, declination will result in you not receiving a medical diet.

2.  **MEDICAL ATTENTION:**

    A.  The Jail's Physician visits the Jail at least two days each week and is on call 24/7. Additionally, there is other medical staff on duty 24/7.

Case 6:23-cv-03193-MDH Document 1-1 Filed 07/29/23 Page 70 of 195
Exhibit D

Electronically Filed - Greene - June 17, 2022 - 03:50 PM

View the 2017 Missouri Revised Statutes | View Previous Versions of the Missouri Revised Statutes

# 2011 Missouri Revised Statutes
# TITLE XIII CORRECTIONAL AND PENAL INSTITUTIONS
# Chapter 221 Jails and Jailers
# Section 221.120. Medicine and medical attention for prisoners, definitions.

**Universal Citation:** MO Rev Stat § 221.120.

**Medicine and medical attention for prisoners, definitions.**

221.120. 1. If any prisoner confined in the county jail is sick and in the judgment of the jailer, requires the attention of a physician, dental care, or medicine, the jailer shall procure the necessary medicine, dental care or medical attention necessary or proper to maintain the health of the prisoner. The costs of such medicine, dental care, or medical attention shall be paid by the prisoner through any health insurance policy as defined in subsection 3 of this section, from which the prisoner is eligible to receive benefits. If the prisoner is not eligible for such health insurance benefits then the prisoner shall be liable for the payment of such medical attention, dental care, or medicine, and the assets of such prisoner may be subject to levy and execution under court order to satisfy such expenses in accordance with the provisions of section 221.070, and any other applicable law. The county commission of the county may at times authorize payment of certain medical costs that the county commission determines to be necessary and reasonable. As used in this section, the term "medical costs" includes the actual costs of medicine, dental care or other medical attention and necessary costs associated with such medical care such as transportation, guards and inpatient care.

*Violates U.S. & Mo. Constitution*

**GREENE COUNTY SHERIFF'S OFFICE**          **JAIL DIVISION**

## INMATE REQUEST TO STAFF

FROM: _Michael Hancock_ CFN: _1854765_ POD: _B_ CELL: _203_

I am requesting: _I am Requesting Dr Wilkins to send me To the hospital to get my Hernia Fix. Its getting worse._

_2, 27, 18_
**TODAY'S DATE**

_Michael Hancock_
**INMATE'S SIGNATURE**

* * * * * * * * * * * * * * * **POD OFFICER IN CHARGE RESPONSE** * * * * * * * * * * * * * * * * * *

_picked up 2/27/2018 @ 0750 KS_

_You have been given information on how to successfully recieve surgery (on 1/9/18). For any additional medical concerns please feel free to turn in a sick call —————— AS LPN 2/28/18_

_/   /_
**TODAY'S DATE**

**SIGNATURE OF POD OFFICER**

* * * * * * * * * * * * * **SHIFT SUPERVISOR RESPONSE - IF NEEDED** * * * * * * * * * * * * * * *

_/   /_
**TODAY'S DATE**

**SIGNATURE OF SHIFT SUPERVISOR**

**Distribution:** Original - Inmate
Copy - Inmate File

JAL-ADMIN 106

**Exhibit D**

# Greene County
# Sheriff's Office

**TO:**           **Michael Hancock CFN# 1854765**

**FROM:**         **Capt Johnson**

**DATE:**         **01-17-18**

**SUBJECT:**      **Administrative Remedy #2**

Your Request for Administrative Remedy asks that the jail medical staff send you to see a specialist for you medical complaint.

I have to depend on the experience and expertise of the Mercy trauma doctor you saw, Dr. Wilkins and our medical staff. You were provided medical attention for your medical complaint and the outcome for the complaint was made by a licensed physician.

This matter is concluded.

**Exhibit D**

# REQUEST FOR ADMINISTRATIVE REMEDY

1/13/18
00:41
Electronically Filed - Greene - June 17, 2022 - 03:50 PM

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

FROM: _Hancock Michael D_     _1854765_     _B-216_
        LAST NAME, FIRST, MIDDLE INITIAL     CFN NO.     UNIT

**PART A - INMATE REQUEST** On 12-19-17 I requested that the medical staff at Greene County Jail send me to see a specialist for my back problems made worse by gunshot from Springfield Police & was denied. This is in violation of State Law to provide me with medical care & U.S. & Missouri Constitution under Estelle v. Gamble, 429 U.S. 97, 103 (1976).

Again I ask to be sent to a specialist about my back problems.

_1-13-18_                            _Michael Hancock 1854765_
DATE                                      SIGNATURE OF REQUESTER

**PART B - RESPONSE**

_____
DATE

**ORIGINAL: RETURN TO INMATE**

                              **DIRECTOR**
                              **CASE NUMBER:** _____

**PART C – RECEIPT**

                                     **CASE NUMBER:** _____

**RETURN TO:** _____
          LAST NAME, FIRST, MIDDLE INITIAL    CFN NO.    UNIT

**SUBJECT:** _____

_____                       _____
DATE                            RECIPIENT'S SIGNATURE (STAFF MEMBER)

Distribution GREEN = Inmate File, YELLOW = Inmate Copy, PINK = Sheriff     JAL-ADMIN 102 - Rev. 1 (3/9/06)

**Exhibit D**

**GREENE COUNTY SHERIFF'S OFFICE**　　　　　　　　　　**JAIL DIVISION**

## INMATE REQUEST TO STAFF

FROM: _Michael Hancock_　CFN: _1854765_　POD: _B_　CELL: _216_

I am requesting: _NEED INFORMAL REQUEST FOR Remedy_
_ON Medical FoT The charges I have_
_Been charged For The problems that was_
_caused By The Gunshots on May 11th 2017_
_By Springfield Police Department._

_1 / 16 / 18_　　　　　　　_Michael Hancock_
**TODAY'S DATE**　　　　　　　**INMATE'S SIGNATURE**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* **POD OFFICER IN CHARGE RESPONSE** \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

_Fwd to medical_

_1 / 16 / 18_　　　　　　　_Jamem #1133_
**TODAY'S DATE**　　　　　　　**SIGNATURE OF POD OFFICER**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* **SHIFT SUPERVISOR RESPONSE - IF NEEDED** \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

_As of 1/22/18 you have been charged For 2 provider visits and 4_
_sick calls. These are not accurate charges, there is supposed to be an_
_additional 6 provider charges, 1 nurse sick call, and 3 pod calls. I will_
_make sure your account is updated. thank you for bringing this to our_
_attention._

_1 / 22 / 18_　　　　　　　
**TODAY'S DATE**　　　　　　　**SIGNATURE OF SHIFT SUPERVISOR**

**Distribution: Original - Inmate**
　　　　　　　**Copy - Inmate File**

**JAL-ADMIN 106**

Case 6:22-cv-03193-MDH Document 1-1 Filed 07/29/22 Page 75 of 195
Case 6:18-cv-03170-MDH Document 1-1 Filed 05/29/18 Page 75 of 195
**Exhibit D**

**GREENE COUNTY SHERIFF'S OFFICE**                    **JAIL DIVISION**

### INMATE REQUEST TO STAFF

**FROM:** _Michael Hancock_     **CFN:** _18541765_  **POD:** _B_   **CELL:** _216_

**I am requesting:** _I would Like Administrative ~~Redm~~ Remedy_
_Levle 3 Because of deniate of Medical Care_

_1 , 12 , 18_                                    _Michael Hancock_
**TODAY'S DATE**                                 **INMATE'S SIGNATURE**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* **POD OFFICER IN CHARGE RESPONSE** \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

_/     /_
**TODAY'S DATE**                                 **SIGNATURE OF POD OFFICER**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* **SHIFT SUPERVISOR RESPONSE - IF NEEDED** \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

_/     /_
**TODAY'S DATE**                                 **SIGNATURE OF SHIFT SUPERVISOR**

**Distribution:  Original - Inmate**     _TuRned in Level 3 To_
**Copy - Inmate File**     _OFFicer TayleR on 1-12-18_

**JAL-ADMIN 106**

**Exhibit D**

# GREENE COUNTY JAIL

**INFORMAL REQUEST FOR REMEDY**

Refiled date missing white page.

**L E V E L # 1 F L O O R O F F I C E R**

INMATE: Michael Hancock 1854765   CELL: B-216   DATE: 1-8-18

DATE, TIME, & LOCATION OF INCIDENT: On or About 12-19-2017 at Greene County Jail Medical

NATURE OF COMPLAINT: On or About 12-19-17 I requested The Doctor of this Jail to send me to a specialist for my Back problems. Not the trauma Surgeon who seen me for My Hernia & was told he could not do so unless I could pay. I request to be sent to a specialist for my back problems.

DATE: 1-8-18   INMATE SIGNATURE: Michael Hancock

RECEIVED BY OFFICER: STRECKER 897   DATE / TIME: 1/9/18 @ 2053

OFFICER'S RESPONSE: Mercy Trauma has already evaluated you and no acute emergent issues were found. If a referral to a specialist was needed they would have been the ones to do it.

DATE/TIME RETURNED: 1/10/18 @ 0723   OFFICER SIGNATURE: _____

If Dissatisfied With The Above Response, Appeal By Filling Out Bottom Portion Of This Form And Return To Control Room Officer Within **24 Hours.**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I, THE ABOVE NAMED INMATE, AM DISSATISFIED WITH THE ABOVE RESPONSE AND WISH TO RESUBMIT TO THE SHIFT SUPERVISOR FOR FURTHER REVIEW AND CONSIDERATION BECAUSE:

**L E V E L # 2 LT. OR SGT.**

STATE REASON: The question & Request has not been addressed in this issue. Again I request to see a specialist about my back problems.

DATE: 1-10-18   INMATE SIGNATURE: Michael Hancock

RECEIVED BY OFFICER: L. Mitchell 1300   DATE / TIME: 1/10/2018 @ 13:15

SUPERVISOR'S RESPONSE: You have been evaluated by outside physicians and have not been referred for any other eval.

DATE: 11 JAN 18   SUPERVISOR'S SIGNATURE: _____

INMATE ADVISED AND GIVEN COPY OF RESPONSE. DATE / TIME _____

If Dissatisfied With The Supervisor's Response, Appeal By Submitting A Request For Administrative Remedy, Level #3, Administrative Assistant of the Jail Within 2 Calendar Days.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

DISTRIBUTION : LEVEL #1  ALL COPIES RETURNED TO INMATE

LEVEL #2  Orig. WHITE = INMATE FILE
Copy  YELLOW = INMATE , FOR ATTACHMENT TO LEVEL #3 REQUEST
Copy  PINK = INMATE, FOR RETENTION

Case 6:23-cv-03193-MDH Document 11-1 Filed 07/29/22 Page 77 of 195
Case 6:18-cv-03370-MDH Document 11-1 Filed 06/29/18 Page 7 of 195
JA Exhibit D 01

Electronically Filed - Greene - June 17, 2022 - 03:50 PM

# GREENE
# COUNTY
# JAIL  Re-filed date
missing white page.

# INFORMAL REQUEST
# FOR REMEDY

**L E V E L #1  F L O O R  O F F I C E R**

INMATE: Michael Hancock 1851765    CELL: B 216    DATE: 1-3-18

DATE, TIME, & LOCATION OF INCIDENT: On or about 12-19-2017 at Greene County Jail (Medical)

NATURE OF COMPLAINT: On or about 12-19-17 I requested the doctor of this jail to send me to a specialist for my back problems. Not the treatment Surgeon. He said my family doctor told him I should not have surgery unless I could pay. I request to be sent to a specialist for my back problems. So

DATE: 1-3-18    INMATE SIGNATURE: Michael Hancock

○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○

RECEIVED BY OFFICER: C. Recker 897    DATE / TIME: 1/4/18 @ 905

OFFICER'S RESPONSE: _____

_____

_____

DATE/TIME RETURNED: 1/8/18 _____    OFFICER SIGNATURE: _____

If Dissatisfied With The Above Response, Appeal By Filling Out Bottom Portion Of This Form
And Return To Control Room Officer Within **24 Hours**.

***************************************************************************
***************************************************************************

I, THE ABOVE NAMED INMATE, AM DISSATISFIED WITH THE ABOVE RESPONSE AND WISH TO RESUBMIT TO
THE SHIFT SUPERVISOR FOR FURTHER REVIEW AND CONSIDERATION BECAUSE:

**L E V E L #2  L T.  O R  S G T.**

STATE REASON: The question/request has not been addressed
in this issue. Again I request to see a specialist
about my back problems.

DATE: 1-10-18    INMATE SIGNATURE: Michael Hancock

○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○○

RECEIVED BY OFFICER: _____    DATE / TIME: _____

SUPERVISOR'S RESPONSE: You have been evaluated by outside
physicians and have not been referred for
any other eval.

DATE: 11 JAN 18    SUPERVISOR'S SIGNATURE: _____ (LN)

INMATE ADVISED AND GIVEN COPY OF RESPONSE. DATE / TIME _____

If Dissatisfied With The Supervisor's Response, Appeal By Submitting A Request For Adminis-
trative Remedy, Level #3, Administrative Assistant of the Jail Within 2 Calendar Days.

***************************************************************************
***************************************************************************

DISTRIBUTION : LEVEL #1   ALL COPIES RETURNED TO INMATE

LEVEL #2   Orig. WHITE = INMATE FILE
Copy   YELLOW = INMATE , FOR ATTACHMENT TO LEVEL #3 REQUEST
Copy   PINK = INMATE , FOR RETENTION

**Exhibit D**

T.001

**GREENE COUNTY SHERIFF'S OFFICE**                    **JAIL DIVISION**

## INMATE REQUEST TO STAFF

FROM: Michael Hancock CFN: 1854765 POD: B CELL: 216

I am requesting: On 1-4-18 I filed an Informal Request For REMEDY & returned it to Officer Hick 10267 at 02:10 Am. When it was returned to me by Cpl R. Lewis The Top page (white copy) was not there, I can't contenue with out the white copy would you please return the white copy.

Thank you.

1 / 8 / 18
**TODAY'S DATE**

Michael Hancock
**INMATE'S SIGNATURE**

* * * * * * * * * * * * * * * * * **POD OFFICER IN CHARGE RESPONSE** * * * * * * * * * * * * * * * * *

/ /
**TODAY'S DATE**                         **SIGNATURE OF POD OFFICER**

* * * * * * * * * * * * * * * **SHIFT SUPERVISOR RESPONSE - IF NEEDED** * * * * * * * * * * * * * * * *

/ /
**TODAY'S DATE**                         **SIGNATURE OF SHIFT SUPERVISOR**

**Distribution:  Original - Inmate**
                 **Copy - Inmate File**

**JAL-ADMIN 106**

**Exhibit D**

**GREENE COUNTY SHERIFF'S OFFICE**                    **JAIL DIVISION**

### INMATE REQUEST TO STAFF

FROM: _Michael Hancock_    CFN: _1854765_    POD: _B_    CELL: _216_

I am requesting: _I am in need of a Informal Request For Remedy_
_For violation of my 8th Amendment right, Missouri Constitution_
_Article 1 sec. 21 cruel & unusal punishment For denial of Medical_
_Care._

_Thank you._

_1 / 3 / 18_                         _Michael Hancock_
**TODAY'S DATE**                    **INMATE'S SIGNATURE**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* POD OFFICER IN CHARGE RESPONSE \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

_/       /_                         _____
**TODAY'S DATE**                    **SIGNATURE OF POD OFFICER**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* SHIFT SUPERVISOR RESPONSE - IF NEEDED \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

_You were seen by your trauma_
_surgeon. He did NOT refer you to_
_a specialist. Thanks!_
                                    _BSW PN._

_/       /_                         _____
**TODAY'S DATE**                    **SIGNATURE OF SHIFT SUPERVISOR**

**Distribution: Original - Inmate**
              **Copy - Inmate File**

**JAL-ADMIN 106**

**Exhibit D**

**GREENE COUNTY SHERIFF'S OFFICE**                    **JAIL DIVISION**

### INMATE REQUEST TO STAFF

FROM: _Michael Hancock_      CFN: _1854765_   POD: _B_   CELL: _216_

I am requesting: _I was evaluated by my trauma Surgeon at mercy For my Hernia NOT For the nerve damage that I requested to see a specialist For. (I was referred For surgery.) Again Why will the Doctor not send me to see a specialist for my NERVE damage in my Back. I would Like that in writing._

_Thank you._

_1 2 18_           _Michael Hancock_
**TODAY'S DATE**           **INMATE'S SIGNATURE**

* * * * * * * * * * * * * * * POD OFFICER IN CHARGE RESPONSE * * * * * * * * * * * * * * * * *

_FWD: MEDICAL_

_1 3 18_           _January 1203_
**TODAY'S DATE**           **SIGNATURE OF POD OFFICER**

* * * * * * * * * * * * * SHIFT SUPERVISOR RESPONSE - IF NEEDED * * * * * * * * * * * * * * *

_You were seen by your trauma surgeon. He did not refer you to a specialist._

_BN, RN_

_/_    _/_
**TODAY'S DATE**           **SIGNATURE OF SHIFT SUPERVISOR**

**Distribution: Original - Inmate**
              **Copy - Inmate File**

**JAL-ADMIN 106**

**Exhibit D**

**GREENE COUNTY SHERIFF'S OFFICE**                    **JAIL DIVISION**

### INMATE REQUEST TO STAFF

FROM: _Michael Hancock_ CFN: _1854765_ POD: _B_ CELL: _216_

I am requesting: _I would Like For the Dr. to tell me in writing_
_Why he can not send me to see a specialist For my_
_Back problems._
_Thank you._

_1 / 1 / 2018_                    _Michael Hancock_
**TODAY'S DATE**                    **INMATE'S SIGNATURE**

* * * * * * * * * * * * * * POD OFFICER IN CHARGE RESPONSE * * * * * * * * * * * * * * * * *

_Fwd to Med._
_P/U 1/1/18 @ 2000_                    _A8 LPN_

_1 / 1 / 18_                    _Hitchcock 1178_
**TODAY'S DATE**                    **SIGNATURE OF POD OFFICER**

* * * * * * * * * * * * * SHIFT SUPERVISOR RESPONSE - IF NEEDED * * * * * * * * * * * * * * * * *

_You were evaluated by your_
_trauma surgeon at mercy and were_
_not referred to any specialist._
_medical_

_/ /_                    _____
**TODAY'S DATE**                    **SIGNATURE OF SHIFT SUPERVISOR**

**Distribution: Original - Inmate**
**Copy - Inmate File**

**JAL-ADMIN 106**

**Exhibit D**

**GREENE COUNTY SHERIFF'S OFFICE**　　　　　　　　**JAIL DIVISION**

## INMATE REQUEST TO STAFF

FROM: _Michael Hancock_　　　CFN: _1854765_　　POD: _B_　　CELL: _216_

I am requesting: _I NEED A Administrative Remedy For violation_
_OF RSMo & US ~~Cant~~ Constitution. For denial of Medical_
_Care._

_Thank You_

_/  /  /  ,2018_　　　　　　　_Michael Hancock_
**TODAY'S DATE**　　　　　　　　**INMATE'S SIGNATURE**

* * * * * * * * * * * * * * * * POD OFFICER IN CHARGE RESPONSE * * * * * * * * * * * * * * * * * *

_Fwd to Med._
_PIU 11/11/18 @ 2000_　　　　　　　　　_RS LPN_

_/  /  /  / 18_　　　　　　　_Hitchcock 1170_
**TODAY'S DATE**　　　　　　　**SIGNATURE OF POD OFFICER**

* * * * * * * * * * * * * * SHIFT SUPERVISOR RESPONSE - IF NEEDED * * * * * * * * * * * * * * * *

_/  /  /_　　　　　　　
**TODAY'S DATE**　　　　　　　**SIGNATURE OF SHIFT SUPERVISOR**

**Distribution:　Original - Inmate**
　　　　　　　　**Copy - Inmate File**

**JAL-ADMIN 106**

**Exhibit D**

#2

**GREENE COUNTY SHERIFF'S OFFICE**                    **JAIL DIVISION**

### INMATE REQUEST TO STAFF

FROM: Michael Hancock   CFN: 18541765   POD: B   CELL: 216

I am requesting: I NEED A copy of my Medical File
FROM NOW TO 2008 FOR Legal ~~Reas~~
REASONS        Thank you

NOTE: I AM INDIGENT.

11, 17, 17          Michael Hancock
**TODAY'S DATE**        **INMATE'S SIGNATURE**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* POD OFFICER IN CHARGE RESPONSE \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

FWD to Medical

11 , 17 , 17          J. Metheny #1270
**TODAY'S DATE**        **SIGNATURE OF POD OFFICER**

\* \* \* \* \* \* \* \* \* \* \* \* \* SHIFT SUPERVISOR RESPONSE - IF NEEDED \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

It costs $22.01 to open your chart plus .52¢
per page after that. Your lawyer can request it
at no charge. ——— Medical

___ / ___ / ___
**TODAY'S DATE**        **SIGNATURE OF SHIFT SUPERVISOR**

**Distribution:  Original - Inmate**
            **Copy - Inmate File**

**JAL-ADMIN 106**

Case 6:22-cv-03196-MDH   Document 1-1   Filed 07/29/22   Page 84 of 195
Case 6:18-cv-03470-MDH   Document 1-1   Filed 05/29/18   Page 16 of 195
**Exhibit D**

**GREENE COUNTY SHERIFF'S OFFICE**　　　　　　　**JAIL DIVISION**

## INMATE REQUEST TO STAFF

**FROM:** _Michael Hancock_　CFN: _1854765_　POD: _B_　CELL: _216_

**I am requesting:** _I NEED A complete copy of_
_My medical file all the way_
_To 2008._

_11 , 16 , 17_
**TODAY'S DATE**　　　　　　　_Michael Hancock_
　　　　　　　　　　　　　　**INMATE'S SIGNATURE**

* * * * * * * * * * * * * * * * * * POD OFFICER IN CHARGE RESPONSE * * * * * * * * * * * * * * * * * *

_Fwd: Medical_

_11 , 16 , 17_
**TODAY'S DATE**　　　　　　　_NL 1258_
　　　　　　　　　　　　　　**SIGNATURE OF POD OFFICER**

* * * * * * * * * * * * * SHIFT SUPERVISOR RESPONSE - IF NEEDED * * * * * * * * * * * * * * * *

_Its $22.01 to open the chart $0.52 per page and will_
_be placed in your property._

_11 , 17 , 17_
**TODAY'S DATE**　　　　　　　**SIGNATURE OF SHIFT SUPERVISOR**


**Distribution:  Original - Inmate**
　　　　　　**Copy - Inmate File**


**JAL-ADMIN 106**

**Exhibit D**

Electronically Filed - Greene - June 17, 2022 - 03:50 PM

Michael Hancock #1854765
GREENE County Jail
1000 N Boonville Ave.
Springfield, Mo. 65802

LEGAL MAIL

SCREENED BY
U.S. MARSHALS

RECEIVED
2018 MAY 29 PM 12:13

U.S. District Court
Office of CLERK
1510 Whitaker Courthouse
400 E. Ninth Street
Kansas City, Mo. 64106

**Exhibit D**

Electronically Filed - Greene - June 17, 2022 - 03:50 PM

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN    DIVISION
*(Write the District and Division, if any, of the
court in which the complaint is filed.)*

Anthony T Porter

*(Write the full name of each plaintiff who is filing
this complaint. If the names of all the plaintiffs
cannot fit in the space above, please write "see
attached" in the space and attach an additional
page with the full list of names.)*

-against-
LPN Massie
Advanced Correctional Health-
Greene County Justice Center care

*(Write the full name of each defendant who is
being sued. If the names of all the defendants
cannot fit in the space above, please write "see
attached" in the space and attach an additional
page with the full list of names. Do not include
addresses here.)*

**Complaint for Violation of Civil
Rights**
(Prisoner Complaint)

18 - 4114 - CV - C - SRB - P

Case No. _____
*(to be filled in by the Clerk's Office)*

**REQUEST FOR TRIAL BY JURY**

Plaintiff requests trial by jury. ☑ Yes ☐ No

2

Case 6:22-cv-03093-MDH  Document 1-1  Filed 07/29/22  Page 87 of 195
Case 6:18-cv-04114-MDH  Document 1  Filed 06/26/18  Page 8 of 13
**Exhibit E**

# I. The Parties to This Complaint

## A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name _Antthony T Porter_

All other names by which you have been known:

_____

ID Number _# 29566628_
Current Institution _Greene County Justice Center_
Address _1000 N Boonville Springfield_
_Mo. 65802_

## B. The Defendant(s)

- Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.

- Make sure that the defendant(s) listed below are identical to those contained in the above caption.

- For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.

- Attach additional pages if needed.

Defendant No. 1

Name _LPN Massie_

Job or Title _Nurse_
(if known)

Shield Number _N/A_

Employer _Advanced Correctional Healthcare_

Address _1000 N Boonville Springfield_
_Mo 65802_

☑ Individual capacity ☐ Official capacity

3

**Exhibit E**

Defendant No. 2

Name     Advanced Correctional Health Care

Job or Title
(if known)     _____

Shield Number

Employer     Greene County Justice Center

Address     1000 N Boonville Springfield
          Mo 65802

☑ Individual capacity     ☐ Official capacity

## II. Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), you may sue federal officials for the violation of certain constitutional rights.

A.    Are you bringing suit against *(check all that apply)*:

☐    Federal officials (a *Bivens* claim)

☑    State or local officials (a § 1983 claim)

B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights.

What federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

8th Amendment - Right to Medical Care

_____

_____

4

**Exhibit E**

## III. Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

- [x] Pretrial detainee
- [ ] Civilly committed detainee
- [ ] Immigration detainee
- [ ] Convicted and sentenced state prisoner
- [ ] Convicted and sentenced federal prisoner
- [ ] Other *(explain)* _____

## IV. Statement of Claim

Write a short and plain statement of FACTS that support your claim. Do not make legal arguments. You must include the following information:

- What happened to you?
- What injuries did you suffer?
- Who was involved in what happened to you?
- How were the defendants involved in what happened to you?
- Where did the events you have described take place?
- When did the events you have described take place?

If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

Exibit "1" - The contracted Medical Providers "Failure to Provide Care" constituted deliberate indifference to my Health & Wellbeing. Plaintiff alleges "The end result of the deliberate indifference was an Unnecessary, Unreasonable life changing injury that resulted in permanent harm.

5

Case 6:22-cv-03093-MDH Document 1-1 Filed 07/28/22 Page 90 of 195
Case 6:18-cv-04214-MDH Document 1 Filed 06/06/18 Page 90 of 195
Exhibit E

Exibit "1"

Electronically Filed - Greene - June 17, 2022 - 03:50 PM

On the approximate date & time "2-11-18" 8:30am LPN
"Massie" neglected me Medical Attention because
I would not sign to "Authorize Deduction" of funds
from my account. LPN Massie stated I quote "Since
you dont "Authorize" deduction, I cant give you
Medical care". Then asked, "Do you think you dont have
to pay for your medical needs?" So I replyed "I am
in this countys custody under state supervision,
whereas if im in need of medical attention regardless
if I dont authorize pay or not! You cannot neglect
to give it to me." Thats when officer "Booth" intervened
stating "You (I) have to go upstairs since you dont
want to sign for Authorization!

Futher on down the line whereas asking for medical
attention & Grievances I was denied on both occasions!

1. For not authorizing deduction on the sick call form.
~~Good~~
2. I asked for an Grievance & was denied in which it
shows in Exibit "D"

Case 6:22-cv-03093-MDH Document 1-1 Filed 07/28/22 Page 91 of 195
Case 6:18-cv-03214-MDH Document 1 Filed 06/28/18 Page 91 of 195
Exhibit E

## V. Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

Due to the Neglect of Medical Attention I now have to have Facial Surgery because the infection Within is decaying my Facial Bone Structure, and also what the doctor thinks is leaking causing inflamation in my Esophagus & Nasal Passage. In which I had to have a "Barium Swallow" for an might need Surgery for.

## VI. Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

Plaintiff prays the Court awards Compensatory damages for all Medical Treatment and $25,000 for the value of any part of the body or physical functioning which cannot be replaced or restored, and Pain & Suffering. $25,000 in Punitive Damages

## VII. Exhaustion of Administrative Remedies Administrative Procedures

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures. Your case may be dismissed if you have not exhausted your administrative remedies.

Case 6:22-cv-03193-MDH Document 1-1 Filed 07/28/22 Page 92 of 195
Case 6:18-cv-04214-MDH Document 1 Filed 06/28/18 Page 8 of 13
**Exhibit E**

A. Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☑ Yes
☐ No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

Greene County Justice Center

B. Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☑ Yes
☐ No
☐ Do not know

C. Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

☑ Yes
☐ No
☐ Do not know

If yes, which claim(s)?

Neglect of Medical Attention
Delay in Medical Attention

D. Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

☐ Yes
☑ No

7

Case 6:22-cv-03193-MDH   Document 1-1   Filed 07/28/22   Page 93 of 195
Case 6:18-cv-03214-MDH   Document 1   Filed 06/08/18   Page 93 of 195
Exhibit E

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

☐ Yes
☑ No

E.  If you did file a grievance:

1.  Where did you file the grievance?

_____
_____
_____
_____

2.  What did you claim in your grievance? *(Attach a copy of your grievance, if available)*

_____
_____
_____
_____

3.  What was the result, if any? *(Attach a copy of any written response to your grievance, if available)*

_____
_____
_____
_____

4.  What steps, if any, did you take to appeal that decision?  Is the grievance process completed? If not, explain why not. *(Describe all efforts to appeal to the highest level of the grievance process.)*

_____
_____
_____
_____

8

**Exhibit E**

F.   If you did not file a grievance:

   1.   If there are any reasons why you did not file a grievance, state them here:

This facility doesn't have a direct Grievance Procedure. They make you fill out a request form when you ask for a "Grievance" then deny your request for 1 so you won't get a Grievance!

   2.   If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

I sent out the request forms asking for a Grievance but they denied my request for 1.

G.   Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

Exibit A, B, C, D, E and F shows how they refused me Medical Attention because I didn't want to Authorize a deduction of my Accaunt

*(Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*

## VIII. Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☐ Yes
☒ No

9

Case 6:22-cv-03123-MDH  Document 1-1  Filed 07/28/22  Page 95 of 195
Case 6:18-cv-03214-MDH  Document 1  Filed 06/28/18  Page 95 of 195
**Exhibit E**

If so, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

_____
_____

A.   Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☐ Yes
☑ No

B.   If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

    1.    Parties to the previous lawsuit

            Plaintiff(s)   _____
            Defendant(s)  _____

    2.    Court *(if federal court, name the district; if state court, name the county and State)*

            _____

    3.    Docket or index number

            _____

    4.    Name of Judge assigned to your case

            _____

    5.    Approximate date of filing lawsuit

            _____

    6.    Is the case still pending?

        ☐ Yes
        ☐ No

        If no, give the approximate date of disposition. _____

10

**Exhibit E**

7.    What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

_____

_____

C.    Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

☐    Yes

☑    No

D.    If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.    Parties to the previous lawsuit

Plaintiff(s)    _____

Defendant(s)   _____

2.    Court *(if federal court, name the district; if state court, name the county and State)*

_____

3.    Docket or index number

_____

4.    Name of Judge assigned to your case

_____

5.    Approximate date of filing lawsuit

_____

6.    Is the case still pending?

☐    Yes

☐    No *(If no, give the approximate date of disposition)*:

_____

11

Case 6:23-cv-03493-MDH Document 1-1 Filed 07/30/23 Page 97 of 195
Case 6:18-cv-04114-MDH Document 1 Filed 06/08/18 Page 27 of 195

**Exhibit E**

7. What was the result of the case? *(For example: Was the case dismissed?*
   *Was judgment entered in your favor? Was the case appealed?)*

   _____

   _____

## IX.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: May 31, 2018

Signature of Plaintiff          Anthony T Porter.
Printed Name of Plaintiff       Anthony T Porter
Prison Identification #         #2956628
Prison Address                  1000 N Boonville
City State Zip Code             Springfield, Mo 65802

12

**Exhibit E**

Nathan L Foster 295662S1
Greene County Justice Center
1000 N Booneville
Springfield Mo 65802

LEGAL MAIL 1159

RECEIVED
2018 JUN -6 AM 11:56
CLERK U.S. DIST COURT
WEST.DIST.OF MO.
KANSAS CITY, MO.

U.S. District Court
Western District of Mo
400 E 9th Street
Kansas City, Missouri 64106

LEGAL MAIL



02 1P
0000885762
MAILED FROM ZIP
UNITED STATES POSTAGE

Case 6:22-cv-03193-MDH Document 1-1 Filed 07/29/22 Page 99 of 195
Case 6:18-cv-03411-MDH Document 1 Filed 06/06/18 Page 29 of 195
Exhibit E

Exibit "A"

**GREENE COUNTY SHERIFF'S OFFICE**                    **JAIL DIVISION**

### INMATE REQUEST TO STAFF

FROM: Anthony Porter _____ CFN: 2956628 POD: D CELL: 215

I am requesting: A Greivance - To file on the medical staff

_____

_____

_____

_____

_____

4 , 26 , 2018
**TODAY'S DATE**                         **INMATE'S SIGNATURE**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* **POD OFFICER IN CHARGE RESPONSE** \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

FWD: Medical staff

_____

_____

_____

4 , 26 , 18
**TODAY'S DATE**                         **SIGNATURE OF POD OFFICER**

\* \* \* \* \* \* \* \* \* \* \* **SHIFT SUPERVISOR RESPONSE - IF NEEDED** \* \* \* \* \* \* \* \* \* \* \* \*

Please provide more information on the nature of the
greivance

_____

4 , 27 , 2018
**TODAY'S DATE**                         **SIGNATURE OF SHIFT SUPERVISOR**

**Distribution: Original - Inmate**
**Copy - Inmate File**

**JAL-ADMIN 106**

**Exhibit E**

Exibit "B"

D-215

**GREENE COUNTY SHERIFF'S OFFICE**                    **JAIL DIVISION**

## INMATE REQUEST TO STAFF

FROM: Anthony Porter          CFN: 2956628   POD: D   CELL: 215

I am requesting: A Grievance - To file against medical staff neglecting me Medical Attention.

_4_ , _27_ , _2018_
**TODAY'S DATE**                              **INMATE'S SIGNATURE**

* * * * * * * * * * * * * **POD OFFICER IN CHARGE RESPONSE** * * * * * * * * * * * * *
PIU 4/27/18 @ 0000                                        ASLPN

_____ , _____ ,
**TODAY'S DATE**                              **SIGNATURE OF POD OFFICER**

* * * * * * * * * * * * **SHIFT SUPERVISOR RESPONSE - IF NEEDED** * * * * * * * * * * * *
You were seen by Dr. Wilkins on 4-19-18. You refused your sick call on 4-17-18, 4-7-18, 3-28-18, 3-12-18, 2-28-18 and you refused a doctor visit on 3-1-18. If you are having problems place a sick call.

_4_ , _28_ , _18_
**TODAY'S DATE**                              **SIGNATURE OF SHIFT SUPERVISOR**

**Distribution:  Original - Inmate**
                **Copy - Inmate File**

**JAL-ADMIN 106**

Case 6:22-cv-03093-MDH Document 1-1 Filed 07/29/22 Page 101 of 195
Case 6:18-cv-03414-MDH Document 1-1 Filed 08/06/18 Page 2 of 7
**Exhibit E**

Exibit "C"

**GREENE COUNTY SHERIFF'S OFFICE**                    **JAIL DIVISION**

### INMATE REQUEST TO STAFF

FROM: Anthony Porter   CFN: 2956628   POD: D   CELL: 215

I am requesting: In response to your response on my Greivance I was neglected Medical Attention on 2-11-18, 2-28-18, 3-12-18, 3-28-18, 4-7-18, 4-17-18, and on 3-1-18 I was refused by Medical staff stating the same as they did on the other dates.
"If you don't sign ~~this form~~ resign how we want then then we cant give you Medical Attention"

So, Show me a Refusal form I have signed!! An I want a copy of every Sick Call I've sent to Medical

4 / 28 / 2018
**TODAY'S DATE**                              **INMATE'S SIGNATURE**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* **POD OFFICER IN CHARGE RESPONSE** \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

_____
_____
_____
_____
_____

____/____/____                              _____
**TODAY'S DATE**                              **SIGNATURE OF POD OFFICER**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* **SHIFT SUPERVISOR RESPONSE - IF NEEDED** \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

_____
_____
_____
_____

____/____/____                              _____
**TODAY'S DATE**                              **SIGNATURE OF SHIFT SUPERVISOR**

**Distribution:  Original - Inmate**
            **Copy - Inmate File**

**JAL-ADMIN 106**

**Exhibit E**

Exhibit "D"

**GREENE COUNTY SHERIFF'S OFFICE**                    **JAIL DIVISION**

**INMATE REQUEST TO STAFF**

FROM: Anthony Porter          CFN: 2956628 POD: D CELL: 215

I am requesting: For "1" I was called down on April 30 2018 because I requested a Greivance for your Medical staff neglecting me "Medical Attention" but I was charged $12.00 as if I came down for a Sick call!! for "2" I want my Greivance from yesterday and I want an Greivance for you wrongfully charging my account

✱. I Dont need to come down there just to talk about an Greivance & you werent suppose to charge $12.00 either so I need 2 Greivances

5 / 1 / 2018
**TODAY'S DATE**                              **INMATE'S SIGNATURE**

* * * * * * * * * * * * * **POD OFFICER IN CHARGE RESPONSE** * * * * * * * * * * * * * * * * * *

You were charged $12.00 on 4/26/2018 for a Provider visit from 4/19/2018, therefore, charges stand. You were not charged for your visit from 4/30/18. Grievance request is being denied at this time. Thankyou

5 / 01 / 2018
**TODAY'S DATE**                              **SIGNATURE OF POD OFFICER**

* * * * * * * * * * * * * **SHIFT SUPERVISOR RESPONSE - IF NEEDED** * * * * * * * * * * * * * * * *

/ /
**TODAY'S DATE**                              **SIGNATURE OF SHIFT SUPERVISOR**

**Distribution:  Original - Inmate**
                 **Copy - Inmate File**

**JAL-ADMIN 106**

Exibit "E"                                                                    D215

## REFUSAL OF TREATMENT MEDICAL RELEASE FORM

NAME: Porter, Anthony     ID #: 29566628 DOB: 12/23/92

DATE: 3/12/18     TIME: 1045

1.  I refuse to authorize the performance upon myself: _Anthony Porter_
                                                        **(Patient's name)**

   The following treatment(s):

   ☐ Intake Vital Signs  ☐ Detox Vital Signs  ☐ Blood Pressure Check  ☐ Blood Sugar Check

   ☐ Blood Draw for Laboratory Testing  ☐ Wound Care  ☒ Nurse Sick Call  ☐ Doctor Sick Call

   ☐ Medication (medication name and dose): _____

2.  I have been advised of the complications of my refusal:

   ☐ Proper baseline Vital Signs for possible diagnosis and treatment at a latter date. Possible death due to delay in diagnosis or treatment

   ☐ Proper monitoring of Vital Signs help prevent possible life threatening complications of alcohol and drug detoxification and possible death.

   ☐ Proper monitoring of Blood Pressures help prevent possible life threatening complications such as stroke, heart attack, vascular disease, kidney problems and possible death.

   ☐ Proper monitoring of Blood Sugar levels help prevent possible life threatening complications such as coma, vision problems, wound healing, kidney problems and possible death.

   ☒ Possible delay in medical treatment; diagnosis; needed change in medical treatment or medication and possible death.

   ☐ Possible delay in wound healing and increased chance of infection and possible death.

   ☒ Possible delay in needed assessment and treatment of a medical problem; may increase life threatening complications and possible death.

   ☐ Possible delay in therapeutic level of a needed medication to treat a medical\mental health problem and possible death.

3.  I hereby release the attending physician, nurses, correctional officers and this jail from all liability for injury to my health caused by this action.

4.  I certify that I have read and understand the above Refusal of Treatment, that the explanations therein referred to were made, and that all blanks of statements requiring insertion or completion were filled in before I signed.

Patient Signature _____     Date _____

_B Nawkins RN_                                 Date 3/12/18

Witness Signature _____

Witness Signature #2 (requested only if patient refuses to sign)     Date _____

Practitioner Acknowledgement _____     Date _____

0817 Refusal of Treatment                                        Page 1 of 1

Case 6:22-cv-03093-MDH Document 1-1 Filed 07/28/22 Page 104 of 195
Case 6:18-cv-03114-MDH Document 1-1 Filed 08/06/18 Page 6 of 7

**Exhibit E**

Exibit "F"

# GREENE COUNTY JUSTICE CENTER
## MEDICAL DEPARTMENT
### HEALTH SERVICES REQUEST

Health Service requests are collected and processed daily. However, unless your condition is deemed urgent by the medical officer, you will be seen within 72 hours. **Please submit only one Health Service Request at a time.** If you are not seen within 72 hours please notify a pod officer. If your condition is an emergency please notify a pod officer.

I, the undersigned, a prisoner at the Greene County Jail, authorize the Jail's clerk to deduct such sums from my jail commissary account to pay the Greene County Sheriff's Department for medical service rendered pursuant to the schedule of fees set forth in the Jail's Co-payment Fee Program for Health Services as shown below.
**No inmate will be denied health care services due to an inability to pay.**

*Name: Anthony Porter     *Signature: I Dont Authorize Deduction

*Pod/Cell: D-215     *CFN: 2956628     *DOB: 12-23-92

*Required fields -- you will not be seen unless these are completed for identification purposes

Allergies: _____

☒ Medical/ Dental          ☐ Mental Health (No Charge)

Please describe symptoms: Well, First my next follow up with doctor Greer is supposed to be an MRI on my hand but I also need an X-Ray an MRI on my Spinal Column. I might have a pinched nerve as one of the nurse stated but I dont know fo sure.

---

**For GCJ Medical Staff use only**

Picked Up on: 2/27/18 at 2000 by AS LPN

Triaged on: _____ at _____ by _____

Notes: We cannot see you until you properly fill out and sign a sick call

---

**Charges (for GCJ Medical Staff use only):**
Any time services are provided at no charge, please note "N/C" and the reason

| Quantity | Service Provided | Charge | Notes |
|---|---|---|---|
| | Nurse Visit | $7.00 | |
| | More than 2 consecutive sick call refusals | $7.00 | |
| | In-Pod Visit (Non-Emergent) | $7.00 | |
| | Provider Visit | $12.00 | |
| | Dental Visit | $12.00 | |
| | Lab Work *(sent out)* | $7.00 (Per Test) | ___CBC ___BMP ___PT/INR ___LFT ___CMP   Other |
| | **Total Amount Due:** | | **Nurse Initials:** |

T-Drive, Medical, Forms
Revised: 6/23/16

Case 6:22-cv-03093-MDH Document 1 - Filed 07/08/22 Page 105 of 195
Case 6:18-03-03093-MDH Document 1 - Filed 07/06/18 Page 105 of 195

**Exhibit E**

Nathan J Porter 295662SJ
Greene County Justice Center
1000 N Boonville
Springfield Mo 65802

LEGAL MAIL 1159

RECEIVED

2018 JUN -6 AM 11:56

CLERK U.S. DIST. COURT
WEST. DIST. OF MO.
KANSAS CITY, MO.

LEGAL MAIL

U.S. District Court
Western District of Mo
400 E 9th Street
Kansas City, Missouri 64106

02 1P
0000865762
MAILED FROM
UNITED STATES POSTAL

**Exhibit E**

**2231-CC00636**

18-3212-CV-S-BCW-P

REC'D JUL 2 2018

Electronically Filed - Greene - June 17, 2022 - 03:50 PM

Defendant, Courtney Blade CFN#138995
Greene County Justice Center
1000 North Boonville Avenue
Springfield, Missouri 65802
Defendant, Filing In Pro Per

United States District Court
Western District of Springfield

Court Case Number
No: re New filed Motion

| | |
|---|---|
| Courtney Blade,<br>Plaintiff,<br><br>VS.<br><br>Advance Correctional<br>Healthcare at the<br>Greene County Jail;<br>Defendants, | Notice of Motion for a legal<br>and lawful Federal Court Order<br>for the defendants to pay the<br>Referral fees for Eye Specialist<br>as Plaintiff is Indigent<br>and Suffering Medical Neglect<br>due to cost of referral fees. |

TO: Honorable Magistrate Judge David Rush:

Comes Now the above Named legal and
lawful Plaintiff Courtney Blade, legally
contends that he is currently housed and
detained here at the Greene County Jail
Facility. Since April 21, 2018 Plaintiff
has been seeing Flotters and Black Spots
in his eye he has followed all

**INDIGENT**

**Exhibit F**

Greene County Jail Healthcare Policies and
Procedures and was verbally and written
told that he would be referred to a
Eye Specialist and/or OPthamologist for
an appointment. Plaintiff has filed and has
completed the Grievance Process here at
the Administrative level to NO Avail and
Plaintiff is still suffering "Medical Neglect"
and "Medical Deliberate Indifference" by the
Named defendants. Defendants contends that
"Missouri State Law that the Greene County
Jail or Advance Correctional Healthcare are
Not responsible for the payment of any
outside treatment, the eye specialist or
OPthamologist wants a payment of $250.00
Two Hundred and Fifty Dollars before they
will see the Plaintiff." Plaintiff is currently
Indigent without any funds and is currently
Suffering Medical Deliberate Indifference in
blantant Violation of the Plaintiffs (8th)
Eighth Constitutional Amendment Right
of "Cruel and Unusual Punishment" by
Willfully being Denied/Refused Medical
Care and treatment by the Named
defendants due to the defendants have
willfully refused to pay the referral
fees of $250.00 Two Hundred and
Fifty Dollars the Medical                    INDIGENT

Exhibit F
Electronically Filed - Greene - June 17, 2022 - 03:50 PM

ORThamologist Needs for the Referral in error. Plaintiff is legally and humbly Seeking a "Federal Court Order" and a "Federal Monitor" to legally Order the Named defendants Advance Correctional HealthCare at the Greene County Jail to pay any/all Referral fees that is currently Needed for the Plaintiff to Medically Obtain the eye specialist he needs before he goes blind. Plaintiff is being treated with Medical Neglect and Medical Deliberate Indifference due to the cost of the Referral and due to Plaintiff is Indigent without Monies in error. A "Federal Monitor" to oversee the Medical Department as inmates/detainers are being willfully Denied/Refused Medical Treatment due to cost in error. A immediate ruling on this Meritable Motion is warranted as Plaintiff Prays for immediate Medical referral for Eye Specialist at this time.

Respectfully Submitted;

X Courtney Blade

Courtney Blade
~~Plaintiff~~ Filing

INDIGENT

Exhibit F



GREENE COUNTY JUSTICE CENTER
1000 N Boonville
Springfield MO, 65802

Courtney Blade
Inmate Name

138995
Jacket #

legal Mail

REC'D JUL 2 2018

SPRINGFIELD
MO 658
28 JUN '18
PM 2 L

United States District Court
Western District of Springfield
Honorable Magistrate Judge David Rush
ATTN: Clerk of the Court For Filing
222 North JQH Parkway
Springfield, Missouri
63806

INDIGENT

02 1P $000.890
0000885762 JUN 28 2018
MAILED FROM ZIP CODE 65802

**Exhibit F**

**GREENE COUNTY JAIL**

# INFORMAL REQUEST FOR REMEDY

L
E
V
E
L
#
1
F
L
O
O
R
O
F
F
I
C
E
R

INMATE: Blade Courtney    CELL: B-307    DATE: May 25 2018

DATE, TIME, & LOCATION OF INCIDENT: Since April 21 2018 Medical has been working on getting me a appointment with the OPthamoligist regarding my eye.

NATURE OF COMPLAINT: I am being treated with "Medical Deliberate Indifference under Federal law that any Referral Fees is to be paied by the facility. I am again seeking to be Referred to a OPthamoligist and fees waived as I am still seeing Flotters and Black Spots immerdiate attention is warranted

DATE: 05/25/2018    INMATE SIGNATURE: X Courtney Blade

RECEIVED BY OFFICER:      DATE / TIME:

OFFICER'S RESPONSE: It is 1 Missouri State Law that you are responsible for payment of outside medical care. As you have been told the specialist you were referred to is requiring Pre-payment once they recieve payment we can then sched you to be seen.

DATE/TIME RETURNED:    OFFICER'S SIGNATURE:

If Dissatisfied With The Above Response, Appeal By Filling Out Bottom Portion Of This Form And Return To Control Room Officer Within 24 Hours.

I, THE ABOVE NAMED INMATE, AM DISSATISFIED WITH THE ABOVE RESPONSE AND WISH TO RESUBMIT TO THE SHIFT SUPERVISOR FOR FURTHER REVIEW AND CONSIDERATION BECAUSE:

L
E
V
E
L
#
2
LT.
OR
SGT.

STATE REASON: Highly Dissatisfied, I am under Missouri State law an they violate Federal law which mandates Medical Care and Treatment upon seeing I be referred to the OPthamoligist and Greene County Jail to pay Referral fees is scam I'd igont all this

DATE: 05/25/2018    INMATE SIGNATURE: X Courtney Blade

RECEIVED BY OFFICER: W. Warren #10-2    DATE / TIME: 05/11/18 @ 2011 ho.

SUPERVISOR'S RESPONSE: It is not Greene County that is refusing to treat you. Missouri Eye Institute is requiring the payment before they provide tx. - according to Missouri Statutes section 221.120 "The prisoner shall be liable for the payment of such medical attention"

DATE: 5/31/2018    SUPERVISOR'S SIGNATURE:

INMATE ADVISED AND GIVEN COPY OF RESPONSE. DATE / TIME

If Dissatisfied With The Supervisor's Response, Appeal By Submitting A Request For Administrative Remedy, Level #3, Administrative Assistant of the Jail Within 2 Calendar Days.

DISTRIBUTION : LEVEL #1 ALL COPIES RETURNED TO INMATE

LEVEL #2   Orig. WHITE = INMATE FILE
       Copy YELLOW = INMATE , FOR ATTACHMENT TO LEVEL #3 REQUEST
       Copy PINK = INMATE, FOR RETENTION

JAIL-ADMIN 101

**Exhibit F**

# GREENE COUNTY JUSTICE CENTER
## MEDICAL DEPARTMENT
### HEALTH SERVICES REQUEST

*Please return all copys*

Health Service requests are collected and processed daily. However, unless your condition is deemed urgent by the medical officer, you will be seen within 72 hours. **Please submit only one Health Service Request at a time.** If you are not seen within 72 hours please notify your pod officer. If your condition is an emergency please notify a pod officer.

I, the undersigned, a prisoner at the Greene County Jail, authorize the Jail's clerk to deduct such sums from my jail commissary account to pay the Greene County Sheriff's Department for medical service rendered pursuant to the schedule of fees set forth in the Jail's Co-payment Fee Program for Health Services as shown below. **No inmate will be denied health care services due to an inability to pay.**

*Name: Courtney Blade    *Signature: Courtney Blade

*Pod/Cell: B-314    *CFN: 138995    *DOB: 2-26-79

*Required fields – you will not be seen unless these are completed for identification purposes

**Allergies:** _____

[✓] **Medical/ Dental**    [ ] **Mental Health** (No Charge)

**Please describe symptoms:** this is a follow up on my eye to the specialist that the eye doctor referred me to still seeing flotters and black spot

---

**For GCJ Medical Staff use only**

Picked Up on: 4/21/18   at 0820   by RS LPN

Triaged on: _____ at _____ by _____

Notes: Will call Monday to get a referral to the specialist.
BX Catherin DRN.

---

**Charges (for GCJ Medical Staff use only):**
*Any time services are provided at no charge, please note "N/C" and the reason*

| Quantity | Service Provided | Charge | Notes |
|---|---|---|---|
| | Nurse Visit | $7.00 | |
| | More than 2 consecutive sick call refusals | $7.00 | |
| | In-Pod Visit (Non-Emergent) | $7.00 | |
| | Provider Visit | $12.00 | |
| | Dental Visit | $12.00 | |
| | Lab Work *(sent out)* | $7.00 (Per Test) | ___CBC ___BMP ___PT/INR ___LFT ___CMP<br>Other |
| | **Total Amount Due:** | | **Nurse Initials:** |

T-Drive, Medical, Forms
Revised: 6/23/16

**Exhibit F**

Electronically Filed - Greene - June 17, 2022 - 03:50 PM

**221.120. Medicine and medical attention for prisoners, definitions.** — 1. If any prisoner confined in the county jail is sick and in the judgment of the jailer, requires the attention of a physician, dental care, or medicine, the jailer shall procure the necessary medicine, dental care or medical attention necessary or proper to maintain the health of the prisoner. The costs of such medicine, dental care, or medical attention shall be paid by the prisoner through any health insurance policy as defined in subsection 3 of this section, from which the prisoner is eligible to receive benefits. If the prisoner is not eligible for such health insurance benefits then the prisoner shall be liable for the payment of such medical attention, dental care, or medicine, and the assets of such prisoner may be subject to levy and execution under court order to satisfy such expenses in accordance with the provisions of section 221.070, and any other applicable law. The county commission of the county may at times authorize payment of certain medical costs that the county commission determines to be necessary and reasonable. As used in this section, the term **"medical costs"** includes the actual costs of medicine, dental care or other medical attention and necessary costs associated with such medical care such as transportation, guards and inpatient care.

**Exhibit F**

**GREENE COUNTY SHERIFF'S OFFICE**

Please return all copys
Thanks

**JAIL DIVISION**

## INMATE REQUEST TO STAFF

**FROM:** Courtney Blade          **CFN:** 138995     **POD:** B   **CELL:** 307

**I am requesting:** I just want to make sure made the appointment for the specialist
for my eye

thanks god bless

4 , 27 , 18

**TODAY'S DATE**

Courtney Blade

**INMATE'S SIGNATURE**

\* \* \* \* \* \* \* \* \* \* \* \* \* **POD OFFICER IN CHARGE RESPONSE** \* \* \* \* \* \* \* \* \* \* \* \* \*

PM 4/27/18 @ 8000 ————— AS LPN

_____ / _____ / _____

**TODAY'S DATE**

**SIGNATURE OF POD OFFICER**

\* \* \* \* \* \* \* \* \* \* \* \* **SHIFT SUPERVISOR RESPONSE - IF NEEDED** \* \* \* \* \* \* \* \* \* \* \* \* \* \*

We are working on getting you an appt set up
to see the opthamologist ————— MW LPN.

_____ / _____ / _____

**TODAY'S DATE**

**SIGNATURE OF SHIFT SUPERVISOR**

Advance Correctional
Healthcare

**Distribution: Original - Inmate**
              **Copy - Inmate File**

**JAL-ADMIN 106**

Case 6:22-cv-03199-MDH Document 1-1 Filed 07/29/22 Page 114 of 195
Case 6:18-cv-03214-MDH Document 1-1 Filed 07/02/18 Page 4 of 105
**Exhibit F**

# GREENE COUNTY JUSTICE CENTER
## MEDICAL DEPARTMENT
### HEALTH SERVICES REQUEST

Health Service requests are collected and processed daily. However, unless your condition is deemed urgent by the medical officer, you will be seen within 72 hours. **Please submit only one Health Service Request at a time.** If you are not seen within 72 hours please notify a pod officer. If your condition is an emergency please notify a pod officer.

I, the undersigned, a prisoner at the Greene County Jail, authorize the Jail's clerk to deduct such sums from my jail commissary account to pay the Greene County Sheriff's Department for medical service rendered pursuant to the schedule of fees set forth in the Jail's Co-payment Fee Program for Health Services as shown below.
**No inmate will be denied health care services due to an inability to pay.**

\*Name: _Courtney Blade_    \*Signature: X _Courtney Blade_

\*Pod/Cell: _B/207_    \*CFN: _138995_    \*DOB: _02/26/1979_

\*Required fields – you will not be seen unless these are completed for identification purposes

Allergies: _NONE_

☒ **Medical/ Dental**     ☐ **Mental Health** (No Charge)

**Please describe symptoms:**

_Again Seeking a "Eye Appointment" with the Opthamologist at this time and for the Greene County Jail to pay referral fees Please!_

---

**For GCJ Medical Staff use only**

Picked Up on: _5/22/18_ at _0000_ by _A8 LPN_

Triaged on: _____ at _____ by _____

Notes: _It is a Missouri State law that the Greene County Jail is not responsible for payment of outside treatment. The eye specialist wants a payment_

---

**Charges (for GCJ Medical Staff use only):** _of $250.00 before they will see you_
Any time services are provided at no charge, please note "N/C" and the reason    _BON, RN._

| Quantity | Service Provided | Charge | Notes |
|---|---|---|---|
| | Nurse Visit | $7.00 | |
| | More than 2 consecutive sick call refusals | $7.00 | |
| | In-Pod Visit (Non-Emergent) | $7.00 | |
| | Provider Visit | $12.00 | |
| | Dental Visit | $12.00 | |
| | Lab Work *(sent out )* | $7.00 (Per Test) | ___CBC ___BMP ___PT/INR ___LFT ___CMP ___Other |
| | **Total Amount Due:** | | **Nurse Initials:** |

**Exhibit F**

**GREENE COUNTY SHERIFF'S OFFICE**                                    **JAIL DIVISION**

## INMATE REQUEST TO STAFF

**FROM:** Blade Courtney     **CFN:** 138995  **POD:** B  **CELL:** 307

**I am requesting:** Seeking a "Personal Interview" to discuss why I am being treated with "Medical Deliberate Indifference" by the Medical Staff here. I am being Maliciously Denied a Grievance Form regarding being sent out to be seen by a Eye Specialist as I am still being denied a referral to a orthamologist due to the alleged cost why? I am still seeing Flotters and Black spots in my eye. Why is my Eight Amendment Right to Cruel and Usual punishment is being Violated here at this Facility. Again, a Grievance Form is being requested.

05, 24, 2018
**TODAY'S DATE**

x irvctny, Blade
**INMATE'S SIGNATURE**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* POD OFFICER IN CHARGE RESPONSE \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Fwd Cpt Howell's box

5, 24, 18
**TODAY'S DATE**

1056
**SIGNATURE OF POD OFFICER**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* SHIFT SUPERVISOR RESPONSE - IF NEEDED \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

____/____/____
**TODAY'S DATE**

**SIGNATURE OF SHIFT SUPERVISOR**

**Distribution: Original - Inmate**
**Copy - Inmate File**

**JAL-ADMIN 106**

**Exhibit F**

Electronically Filed - Greene - June 17, 2022 - 03:50 PM

TO: Medical Supervisor, Partenheimer

**GREENE COUNTY SHERIFF'S OFFICE**                    **JAIL DIVISION**

### INMATE REQUEST TO STAFF

FROM: Blade Courtney      CFN: 138995   POD: B   CELL: 307

I am requesting: Seeking a "Personal Interview" again to discuss my reference to a "Eye Specialist" and that Greene County Jail pays for fees due to I am Indigent. I have been waiting for approximately Two months for this specialist, why am I being treated with "Medical Delibrate Indifference" as I still am seeing Floaters and Black Spots a Grievience Form is now being requested at this time before I go blind. A Eye Specialist appointment is humbly and respectfully being requested!

05 / 22 / 2018          x Courtny Blade
**TODAY'S DATE**              **INMATE'S SIGNATURE**

*************** POD OFFICER IN CHARGE RESPONSE ***************
P/U 5/22/18 @ 2000 ——————————— AS LPN

/ /
**TODAY'S DATE**              **SIGNATURE OF POD OFFICER**

*************** SHIFT SUPERVISOR RESPONSE - IF NEEDED ***************

/ /
**TODAY'S DATE**              **SIGNATURE OF SHIFT SUPERVISOR**

**Distribution: Original - Inmate**
**Copy - Inmate File**

**JAL-ADMIN 106**

11:23
5/31/18
Tuesday 7pm
Cpl Smith 10?

GREENE COUNTY JAIL

## REQUEST FOR ADMINISTRATIVE REMEDY

FROM: _Blade Courtney_    _131995_    _B-307_
LAST NAME, FIRST, MIDDLE INITIAL    CFN NO.    UNIT

PART A - INMATE REQUEST Highly Dissatisfied, with level Two response which states "Missouri statute section 221.120 that the prisoner shall be liable for the payment of Medical care and treatment" in error, I am being treated with "Medical Deliberate Indifference" as I am currently Indigent without any funds to pay for Eye Specialist at this time. I am respectfully requesting Greene County Jail forward payment for "OPthamologist Eye Specialist" and the inmate reimburse facility at a later date. Under Federal law the Eighth Constitutional Amendment of "Cruel and Unusual Punishment" I am willfully being Denied/Refused adequate Medical Cure and treatment due to cost in error. I am still seeing Floaters and Black Spots in my eye a immediate referral P's still being requested at this time.

_May 31, 2018_
DATE

X _____
SIGNATURE OF REQUESTER

PART B - RESPONSE

THE COUNTY IS NOT RESPONSIBLE FOR OUTSIDE MEDICAL CARE.

_____
DATE
**ORIGINAL: RETURN TO INMATE**

DIRECTOR
CASE NUMBER: _____

PART C - RECEIPT

RETURN TO: _____
LAST NAME, FIRST, MIDDLE INITIAL    CFN NO.    UNIT

SUBJECT: _____

_____
DATE

CASE NUMBER: _____

RECIPIENT'S SIGNATURE (STAFF MEMBER) _____

Distribution GREEN = Inmate File, YELLOW = Inmate Copy, PINK = Sheriff

JAIL-ADMIN 102 - Rev 1 (3/9/06)

**Exhibit F**

TO: Medical Supervisor, Partenheimer

**GREENE COUNTY SHERIFF'S OFFICE**                    **JAIL DIVISION**

### INMATE REQUEST TO STAFF

FROM: Blade Courtney    CFN: 138995    POD: B    CELL: 307

I am requesting: In May 2018, I put in a Medical Grievance
regarding my Special Eye Appointment that is willfully
being Denied due to the $250.00 Referral fee. It has
been over (3) Three weeks Now when do I anticipate
I will have my (3) Third level Grievance response?

A "Personal Interview" and immediate response is warranted!

06 , 19 , 2018                    X Courtney Blade,
**TODAY'S DATE**                    **INMATE'S SIGNATURE**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* **POD OFFICER IN CHARGE RESPONSE** \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

picked up 6/20/18 by Rolph

_____ / _____ / _____
**TODAY'S DATE**                    **SIGNATURE OF POD OFFICER**

\* \* \* \* \* \* \* \* \* \* \* \* \* **SHIFT SUPERVISOR RESPONSE - IF NEEDED** \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

A third level grievance does not come to me, it goes to the
Captains who will discuss the situation with Dr. Wilkins. You can
expect a response from them.

6 , 21 , 18
**TODAY'S DATE**                    **SIGNATURE OF SHIFT SUPERVISOR**

**Distribution:  Original - Inmate**
                 **Copy - Inmate File**

**JAL-ADMIN 106**

Case 6:22-cv-03199-MDH Document 1-1 Filed 07/29/22 Page 119 of 195
Case 6:18-cv-03212-MDH Document 1-1 Filed 07/02/18 Page 9 of 105
Exhibit F

Electronically Filed - Greene - June 17, 2022 - 03:50 PM

GREENE COUNTY JUSTICE CENTER
1000 N Boonville
Springfield MO. 65802

Courtney Blade
Inmate Name

138995
Jacket #

REC'D JUL 2 2018

legal Mail

SPRINGFIELD
MO 658

02 1P
0000685762
MAILED FROM ZIP CODE 65802

UNITED STATES POSTAGE
$ 000.89⁰
PITNEY BOWES
JUN 28 2018

United States District Court
Western District of Springfield
Honorable Magistrate Judge David Rush
ATTN: Clerk of the Court For Filing
222 North 3QH Parkway
Springfield, Missouri
63806

INDIGENT

65806#2559 c062

Case 6:22-cv-03193-MDH Document 1-1 Filed 07/20/22 Page 120 of 105
Case 6:18-cv-03272-MDH Document 1-1 Filed 07/20/18 Page 70 of 105
Exhibit F

Electronically Filed - Greene - June 17, 2022 - 03:50 PM

LAWYERS
# KECK & AUSTIN

3140 E. DIVISION ST.
SPRINGFIELD, MO 65802
(417) 890-8989-office
(417) 890-8990-fax
Email: damon@keckaustin.com

PATRICIA KECK*
KEVIN AUSTIN

*Licensed in Missouri,
Kansas and Arkansas

Of Counsel
SEAN MCGINNIS
DAMON S. PHILLIPS
MATTHEW D. WILSON

Associate
ADAM LI

Investigator
MARLA MILLER

September 7, 2018

**Via Certified Mail and Email at**: sherri.miller@advancedch.com
Advanced Correctional Healthcare, Inc.
3922 West Baring Trace
Peoria, IL 61615
ATTN: Sherri Miller, Pres. and Chief Operations Officer

Re:     *Michael Hancock, et al. v. Sheriff Jim Arnott, et al.*, 18-3170-CV-S-MDH-P
        U.S. Dist. Court for the Western District of Missouri

Advanced Correctional Healthcare ("ACH"):

        I and this firm represent the Sheriff of Greene County, Missouri and his staff. We have received notice of a lawsuit filed by three pro se inmates, Michael Hancock, Courtney Blade, and Anthony Porter, regarding medical treatment at the Greene County jail, and are tendering this case to you to provide a defense, either directly or through your insurer.

Three Complaints

        I am attaching the complaints drafted by each separate Plaintiff, and which have now been consolidated into one case as captioned above. Plaintiffs have sued: ACH, Dr. Wilkins, Nurse Eric Partenheimer, Nurse Massie, Sheriff Arnott, Major Denney, Captain Coonrod, Captain Johnson, Captain Howell, the Greene County jail (not a legal entity) and the Greene County Justice Center (also not a legal entity). Essentially, all three inmates complained about medical treatment provided by ACH or its employees. The Sheriff and his staff were only alleged to have refused to implement policies overriding medical treatment decisions. As you know, Dr. Wilkins and all jail medical staff are provided by ACH pursuant to the March 23, 2017 ACH agreement.

Status

        The Court appointed an attorney to represent all three inmates. That attorney has not entered an appearance, and there have not been any summonses issued yet. However, the pro se complaints survived initial judicial review, so this case will go forward.

Electronically Filed - Greene - June 17, 2022 - 03:50 PM

ACH Agreement

       I am also attaching the March 23, 2017 ACH agreement. As you know, that agreement contained several relevant provisions, including but not limited to §§2.1, 2.3, 2.4, and 2.7, to the effect that ACH and/or its insurer would defend, hold harmless, and indemnify our clients. Specifically, §2.1 provided:

> To the fullest extent permitted by law, the Contractor shall hold harmless and indemnify the Sheriff and the County, including their respective employees, agents, attorneys, successors, and assigns, against any claims, losses, damages, including reasonable attorneys' fees and other costs of litigation, and expenses, arising by reason of any act, negligent or otherwise, of the Contractor or its personnel, including the individuals, entities, employees, independent contractors, subcontractors (meaning anyone, including but not limited to consultants having a contract with the Contractor or a subcontract for part of the services), successors, agents, and assigns through which the Contractor shall act in relation to providing the services detailed herein, including anyone directly or indirectly employed by the Contractor or by any subcontractor, or of anyone for whose acts the Contractor or its subcontractor may be liable, in connection with providing these services, and related to the medical services detailed herein. This provision does not, however, require the Contractor to indemnify or hold harmless the Sheriff or the County from their own negligence.

Furthermore, §2.3 stated in full:

> Without limiting the Contractor's indemnification obligations, the Contractor shall procure and maintain, at its sole cost and for the duration of this Agreement, insurance coverage as provided herein, against all claims for injuries against persons or damages to property which may arise from or in connection with the Contractor providing the services contemplated in this Agreement. The Contractor will name the Sheriff and the County, including their respective employees, agents, attorneys, successors, and assigns, as additional insureds under its commercial automobile, commercial general, and professional liability portions of insurance, as well as provide the County and Sheriff with a Certificate of Insurance SPECIFIC TO CORRECTIONAL FACILITIES AND PUBLIC ENTITIES evidencing the terms of the insurance coverage and policy limits. Each such policy MUST INCLUDE LANGUAGE TO THE EFFECT THAT THE LISTING AS ADDITIONAL INSUREDS SHALL NOT BE CONSRUED AS WAIVING THEIR RESPECTIVE RIGHTS OR DEFENSES WITH REGARD TO APPLICABLE SOVEREIGN, GOVERNMENTAL OR OFFICIAL IMMUNITIES AND ANY OTHER PROTECTIONS OR DEFENSES AS PROVIDED BY FEDERAL AND STATE CONSTITUTIONS, STATUTES, AND LAWS, AND THE PROCUREMENT AND MAINTENANCE OF INSURANCE SHALL NOT BE CONSTRUED AS WAIVING SUCH PROTECTIONS OR DEFENSES. The Contractor expressly warrants that such

Electronically Filed - Greene - June 17, 2022 - 03:50 PM

insurance will cover the Sheriff and the County, including their respective officers, employees, agents, attorneys, successors, and assigns, as well as cover the Contractor and the individuals, entities, employees, independent contractors, successors, agents, and assigns through which the Contractor shall act to provide the services detailed herein, and in the event that there is no such coverage, the Contractor shall defend, indemnify, and hold harmless the Sheriff and the County, and their respective officers, employees, agents, attorneys, successors, and assigns.

The Contractor shall not provide the services required by this Agreement until it has obtained all insurance required by this Agreement, where the Contractor must submit proof of said insurance which has been approved by the Sheriff. All policies shall be from companies authorized to issue insurance in the State of Missouri and shall be in the designated amounts (where specified), and from companies satisfactory to the Sheriff, and which must carry an A-6 better rating as listed in the A.M. Best or equivalent rating guide. The Contractor's inability to perform the services required by this Agreement due to failure to procure approved insurance shall not excuse performance, and will constitute a breach of this Agreement. Any notice of cancellation of insurance shall be given in writing to the Sheriff in the manner in which notices are required by this Agreement. The Contractor shall assume all responsibility for deductible amounts from such insurance and shall indemnify and hold the Sheriff and the County harmless therefrom. In addition, the Contractor shall reimburse the Sheriff or the County for any damage done to their respective property which occurs during performance of this Agreement.

<u>Conclusion</u>

Clearly, the Plaintiff's allegations are frivolous, but our clients have the right to be defended, held harmless, and indemnified by you or your insurer pursuant to the ACH agreement. We encourage you to provide the necessary defense as quickly as possible.

Cordially,

KECK & AUSTIN, L.L.C.

By<u>/s/ *Damon S. Phillips*</u>
Damon S. Phillips

DSP:jh
Enclosures

Electronically Filed - Greene - June 28, 2022 - 01:16 PM

LAWYERS

# KECK & AUSTIN

3140 E. DIVISION ST.
SPRINGFIELD, MO 65802
(417) 890-8989-office
(417) 890-8990-fax
Email: @keckaustin.com

PATRICIA KECK*
KEVIN AUSTIN

Of Counsel
SEAN MCGINNIS
DAMON PHILLIPS
MATTHEW D. WILSON

*Licensed in Missouri,
Kansas and Arkansas

Associate
ADAM LI
ALEX SHEPPARD

Investigator
MARLA MILLER

November 5, 2018

**Via Certified Mail and Email at**: sherri.miller@advancedch.com
Advanced Correctional Healthcare, Inc.
3922 West Baring Trace
Peoria, IL 61615
ATTN: Sherri Miller, Pres. and Chief Operations Officer

      Re:     *Michael Hancock, et al. v. Sheriff Jim Arnott, et al.*, 18-3170-CV-S-MDH-P
             U.S. Dist. Court for the Western District of Missouri

Advanced Correctional Healthcare ("ACH"):

      As you know from our letter of September 7, 2018, I and this firm represent the Sheriff of Greene County, Missouri and his staff. Again, we have received notice of a lawsuit filed by three pro se inmates, Michael Hancock, Courtney Blade, and Anthony Porter, regarding medical treatment at the Greene County jail, and are tendering this case to you to provide a defense, either directly or through your insurer. The Court appointed an attorney to represent the inmates, and a U.S. Marshal delivered summonses on Friday, November 2, 2018. We have NOT accepted summonses as to your employees, other than for Dr. Wilkins, because he is both your employee and a reserve deputy.

Complaints

      Plaintiffs have sued: ACH, Dr. Wilkins, Nurse Eric Partenheimer, Nurse Massie, Sheriff Arnott, Major Denney, Captain Coonrod, Captain Johnson, Captain Howell, the Greene County jail (not a legal entity) and the Greene County Justice Center (also not a legal entity). Essentially, all three inmates complained about medical treatment provided by ACH or its employees. The Sheriff and his staff were only alleged to have refused to implement policies overriding medical treatment decisions. As you know, Dr. Wilkins and all jail medical staff are provided by ACH pursuant to the March 23, 2017 ACH agreement.

Status

**Exhibit H**

Electronically Filed - Greene - June 28, 2022 - 01:16 PM

       In light of your failure to respond to our letter from September, we have no choice but to prepare an Answer to the Complaint. However, this is only a temporary measure before you provide the defense.

<u>ACH Agreement</u>

       Please refer to the March 23, 2017 ACH agreement that you already have, and which I also previously provided. As you know, that agreement contained several relevant provisions, including but not limited to §§2.1, 2.3, 2.4, and 2.7, to the effect that ACH and/or its insurer would defend, hold harmless, and indemnify our clients. Specifically, §2.1 provided:

> To the fullest extent permitted by law, the Contractor shall hold harmless and indemnify the Sheriff and the County, including their respective employees, agents, attorneys, successors, and assigns, against any claims, losses, damages, including reasonable attorneys' fees and other costs of litigation, and expenses, arising by reason of any act, negligent or otherwise, of the Contractor or its personnel, including the individuals, entities, employees, independent contractors, subcontractors (meaning anyone, including but not limited to consultants having a contract with the Contractor or a subcontract for part of the services), successors, agents, and assigns through which the Contractor shall act in relation to providing the services detailed herein, including anyone directly or indirectly employed by the Contractor or by any subcontractor, or of anyone for whose acts the Contractor or its subcontractor may be liable, in connection with providing these services, and related to the medical services detailed herein. This provision does not, however, require the Contractor to indemnify or hold harmless the Sheriff or the County from their own negligence.

Furthermore, §2.3 stated in full:

> Without limiting the Contractor's indemnification obligations, the Contractor shall procure and maintain, at its sole cost and for the duration of this Agreement, insurance coverage as provided herein, against all claims for injuries against persons or damages to property which may arise from or in connection with the Contractor providing the services contemplated in this Agreement. The Contractor will name the Sheriff and the County, including their respective employees, agents, attorneys, successors, and assigns, as additional insureds under its commercial automobile, commercial general, and professional liability portions of insurance, as well as provide the County and Sheriff with a Certificate of Insurance SPECIFIC TO CORRECTIONAL FACILITIES AND PUBLIC ENTITIES evidencing the terms of the insurance coverage and policy limits. Each such policy MUST INCLUDE LANGUAGE TO THE EFFECT THAT THE LISTING AS ADDITIONAL INSUREDS SHALL NOT BE CONSRUED AS WAIVING THEIR RESPECTIVE RIGHTS OR DEFENSES WITH REGARD TO APPLICABLE SOVEREIGN, GOVERNMENTAL OR OFFICIAL IMMUNITIES AND ANY OTHER PROTECTIONS OR DEFENSES AS PROVIDED BY FEDERAL AND STATE CONSTITUTIONS, STATUTES,

Electronically Filed - Greene - June 28, 2022 - 01:16 PM

AND LAWS, AND THE PROCUREMENT AND MAINTENANCE OF INSURANCE SHALL NOT BE CONSTRUED AS WAIVING SUCH PROTECTIONS OR DEFENSES. The Contractor expressly warrants that such insurance will cover the Sheriff and the County, including their respective officers, employees, agents, attorneys, successors, and assigns, as well as cover the Contractor and the individuals, entities, employees, independent contractors, successors, agents, and assigns through which the Contractor shall act to provide the services detailed herein, and in the event that there is no such coverage, the Contractor shall defend, indemnify, and hold harmless the Sheriff and the County, and their respective officers, employees, agents, attorneys, successors, and assigns.

The Contractor shall not provide the services required by this Agreement until it has obtained all insurance required by this Agreement, where the Contractor must submit proof of said insurance which has been approved by the Sheriff. All policies shall be from companies authorized to issue insurance in the State of Missouri and shall be in the designated amounts (where specified), and from companies satisfactory to the Sheriff, and which must carry an A-6 better rating as listed in the A.M. Best or equivalent rating guide. The Contractor's inability to perform the services required by this Agreement due to failure to procure approved insurance shall not excuse performance, and will constitute a breach of this Agreement. Any notice of cancellation of insurance shall be given in writing to the Sheriff in the manner in which notices are required by this Agreement. The Contractor shall assume all responsibility for deductible amounts from such insurance and shall indemnify and hold the Sheriff and the County harmless therefrom. In addition, the Contractor shall reimburse the Sheriff or the County for any damage done to their respective property which occurs during performance of this Agreement.

Conclusion

We encourage you to provide the necessary defense as quickly as possible.

Cordially,

KECK & AUSTIN, L.L.C.


By /s/ *Damon S. Phillips*
Damon S. Phillips


DSP:jh

Exhibit H

Electronically Filed - Greene - June 28, 2022 - 01:16 PM



November 20, 2018

Keck & Austin
3140 E. Division St.
Springfield, MO 65802
Attention: Damon S. Phillips

**Via Certified Mail: 9214700000000000000546**
**Via email at: damon@keckaustin.com**
**Via facsimile: 417-890-8990**

Re:    Claimant: Michael Hancock; Courtney Blake; and Anthony Porter
       Michael Hancock et al Plaintiffs v. Jim C. Arnott et al, Defendants
       Cause No. 6:18-cv-03170-MDH

       Insured: Advanced Correctional Healthcare ACH); Dr. Jason Wilkins;
       and Solita Massie.
       WLI Claim No: ACH-17-396649

Dear Mr. Phillips:

Western Litigation has been retained by Advanced Correctional Healthcare ("ACH") and its
insurer Arch Specialty Insurance Company to manage the above captioned claim.  We are in
receipt of your letters of September 7, 2018 and November 5, 2018 on behalf of the Sheriff of
Greene County, Missouri seeking a defense and indemnification of the above referenced
County Sheriff, from Advanced Correctional Healthcare pursuant to their contract to provide
inmate health services.

After reviewing the complaints it is clear that the all three inmates in these Complaints are
alleging they were advised they could not have outside medical care unless they paid for the
medical care.  Without going through each and every allegation noted in these Complaints, at
this juncture it is clear is that there are specific separate allegations against the County and
Sheriff with regard to the policy requiring payment of medical services and authorization of
deduction of funds for payment of medical care from the prisoner accounts.

Further the Hold Harmless/ Indemnification provision in the applicable contract between ACH
and Greene County clearly provides that the "provision does not, however, require the
Contractor (ACH) to indemnify or hold harmless the Sheriff or the County from their own
negligence."  In each of the three complaints filed, the individual prisoners are alleging that they
were denied medical care and treatment because they refused to pay for the fees for
consultation and treatment. In each instance, it is noted that neither ACH nor any of the
employed staff involved in these matters had any involvement in the creation of rules and
regulations related to the payment for outside medical providers and/or outside medical services
for non-urgent, non-emergent care. Nor did they have any role in determining who pays for

9201 W. Broadway Ave. Suite 600 | Minneapolis, MN 55438 | Dallas, TX 75244

P 800.557.0797 | F 214.647.5005 | westernlitigation.com

Exhibit I

Electronically Filed - Greene - June 28, 2022 - 01:16 PM

medical treatment. Further, as you are aware, Missouri law does not require anyone but the prisoner to pay for medical care.

Please note that we have retained J. Thaddeus Eckenrode of Eckenrode Maupin in St Louis, Missouri to represent the interests of Advanced Correctional Healthcare, Dr. Jason Wilkins, Eric Partenheimer, and Solita Massie in this matter. Please note that most recently Motions to Dismiss all three complaints were filed on behalf of ACH, Dr. Jason Wilkins; Eric Partenheimer; and Solita Massie.

With regard to your reference to the contractual provision that provides that ACH agreed to "procure and maintain, … insurance coverage … against all claims for injuries against all claims for injuries against persons or damages to property which may arise from or in connection with …(ACH) providing the services contemplated in the agreement" and requiring that ACH would "name the Sheriff and the county, including their respective employees, … as additional insureds …under … commercial general and professional liability portions of insurance, please note we have referred this matter to the carrier for their analysis. However, it is noted that the policy in question clearly states under SECTION III - WHO IS AN INSURED: COVERAGE C - HEALTH CARE PROFESSIONAL LIABILITY; SECTION VII – CONDITIONS:

7.      Other Insurance

This insurance is excess of any other valid and collectible insurance available to you whether that insurance is stated to be primary, pro-rata, contributory, excess, contingent or otherwise, unless that insurance specifically applies as excess insurance over this coverage form.

Therefore, based on the above, Advanced Correctional Healthcare respectfully declines your tender of defense and request for indemnification in the above-captioned matter at this time. Nothing in this correspondence shall be deemed to be a waiver of any contractual defense available to ACH in the future.

If you have any questions, please do not hesitate to contact me.

Very truly yours,

*Eugene B. Isotti*

Eugene B. Isotti, J.D.
Senior Vice President
Western Litigation

Cc:
Peter R. Jennetten
Quinn, Johnston, Henderson, Pretorius & Cerulo
27 N.E. Jefferson Ave.,
Peoria, IL 61602-1211

Alex Kinzinger
Advanced Correctional Healthcare, Inc.

Kecia Hoskins
Arch

Exhibit I

LAWYERS
# KECK, PHILLIPS & WILSON
3140 E. DIVISION ST.
SPRINGFIELD, MO 65802
(417) 890-8989-office
(417) 890-8990-fax
Email: damon@kpwlawfirm.com

PATRICIA  KECK*

Of Counsel
SEAN MCGINNIS
DAMON PHILLIPS
MATTHEW D. WILSON
FRANK COTTEY

Associates
ADAM LI
ALEX SHEPPARD

Investigator
MARLA MILLER

\* Principle, Licensed in
  Missouri,  Kansas and
  Arkansas

December 3, 2018

**VIA EMAIL ONLY: Eugene_Isotti@westernlitigation.com**
Eugene B. Isotti, J.D.
Senior Vice President Western Litigation
8401 N. Central Expressway, Suite 900| Dallas, TX 75225

      Re:    *Michael Hancock, et al. v. Sheriff Jim Arnott, et al.*, 18-3170-CV-S-MDH-P
              U.S. Dist. Court for the Western District of Missouri

Dear Mr. Isotti:

        I previously sent tender letters dated September 7, 2018 and November 5, 2018 to Advanced Correctional Healthcare, Inc. ("ACH") pursuant to the notice provisions of the 2017 inmate medical services agreement ("Agreement") between that entity and the Sheriff and Greene County, Missouri ("GCSO"). You responded to those letters on behalf of ACH in a letter dated November 30, 2018, sent via email, which copied general counsel for ACH. Accordingly, there is no dispute that ACH received notice under the Agreement. Moreover, you identified yourself as an attorney acting on behalf of ACH, albeit as an employee of a risk management company, Western Litigation, retained by ACH and its insurer, Arch Specialty Ins. Co. Thus, based on your assertion that you were responding to our letters for ACH, and your being an attorney, I am directing this letter to your attention. **If for any reason you do not represent ACH regarding its obligations under the Agreement, as they relate to the above-captioned lawsuits, please forward this letter to the appropriate individual(s), and provide the contact information for said individual(s). In the meantime, I am also copying ACH's general counsel.**

        In your November 30, 2018 letter, you advised that ACH had: 1) denied tender under the Agreement; 2) retained counsel for ACH and its staff; 3) filed motions to dismiss for ACH and its staff; and 4) forwarded tender to ACH's insurer, but expected the insurer to deny coverage. It is of course strange that you would act on behalf of ACH while simultaneously suggesting a lack of coverage, but in any event, that is just one part of what makes your letter perplexing.

Strictly as a strategic matter, ACH's rejection of the tender makes little sense. Assuming continued litigation, our clients are almost certain to obtain summary judgment; logically, it would make more sense for ACH to pursue that resolution on our clients' behalf; rather than go down the road it has chosen. Instead, ACH seems determined to destroy any possibility of a united front, and to force us to file suit against ACH. ACH's actions will also compel us to contact plaintiffs' counsel, and explore the possibility of a separate resolution, to the detriment of ACH.

Even if ACH promptly reconsiders, ACH's arguments in your letter and in its court filings have created a clear conflict of interest between our respective clients. In both instances, ACH has attacked our clients and mischaracterized ACH's duties under the Agreement. Accordingly, ACH will need to retain separate counsel for our clients.

The Complaints

Inmates Hancock, Porter, and Blade each filed a separate lawsuit. Inmate Hancock sued Sheriff Arnott, Major Denny, Capt. Johnson, Capt. Coonrod, and Capt. Howell; plus ACH employees Dr. Wilkins and Nurse E. Partenheimer. Essentially, inmate Hancock alleged that "Dr. Wilkins has refused to send me to the hospital for surgery to fix my hernia," and accused GCSO staff of "refusing medical care if … inmates cannot pay." Similarly, inmate Porter sued the GCSO and ACH staff person Nurse Massie, and alleged that Nurse Massie denied her medical treatment, and that the GCSO had a policy of requiring inmates to pay for medical treatment. The third inmate, Blade, did not sue any GCSO staff, but argued that Dr. Wilkins had refused to send her to an ophthalmologist until she paid the latter's referral fee. The Court properly recognized the similarity of all these allegations, appointed counsel, and consolidated all three cases.

In denying tender, your November 30, 2018 letter described that: "[a]fter reviewing the complaints it is clear that the all three inmates in these Complaints are alleging they were advised they could not have outside medical care unless they paid for the medical care." Then, ACH proceeded to throw our clients under the bus in its motions to dismiss.

ACH filed motions to dismiss all three lawsuits as to ACH and its staff. In each of those motions, ACH misrepresented to the Court that ACH has no control over inmate access to outside medical treatment, and that access to treatment is determined by GCSO staff. ACH argued as to inmate Hancock's complaint that:

> **The crux of Plaintiff's allegations against these Defendants must be that they did not force the jail to pay for his surgery or consultation** for "nerve damage".
>
> …
>
> Plaintiff's Complaint solely alleges that Defendant Wilkins failed to force the jail to pay for a hernia surgery … **[t]hese Defendants have no control over who pays for any outside surgeries and/or consults** …

Exhibit J

Electronically Filed - Greene - June 28, 2022 - 01:16 PM

(Doc. 24, p. 4, 5)(emphasis added). In that same vein, ACH argued as to Porter's complaint that:

> Nurse Massie provides care to inmates, *but the Greene County Justice Center requires inmates sign certain documents. Nurse Massie has no role in determining who pays for any medical treatment.*
>
> …
>
> Plaintiff is unable to establish that [Nurse Massie] was ever involved *in any decision-making regarding the payment for medical care*. …There is nothing in Plaintiff's Complaint that suggests the medical care on February 11, 2018 was medically necessary and emergent.

(Doc. 26, p. 1-2, 5)(emphasis added). ACH took that same approach as to inmate Blade, and told the Court that:

> Plaintiff was not sent to see the eye specialist because the eye specialist required a $250 fee before he/she would see Plaintiff. *Dr. Wilkins and ACH are not employees of Greene County Justice Center and have no involvement in the creations of rules and regulations related to the payment for outside medical providers*. Dr. Wilkins referred Plaintiff to a specialist and *who pays for the specialist is not determined by these Defendants*.
>
> …
>
> The only allegation that is against [Dr. Wilkins and ACH] is that Plaintiff was not sent to an ophthalmologist for an appointment…Even assuming, arguendo, that Plaintiff's floaters and black spots in his eyes are "serious medical needs", there is no allegation that these Defendants were "indifferent*"…[t]he crux of Plaintiff's allegations against these Defendants must be that they did not force the jail to pay for his consult* with an ophthalmologist.

(Doc. 28, p. 4-5).

ACH's arguments to the effect that "the jail" determines inmate access to medical treatment based on the inmate's ability to pay for it, are patently false. ACH also made those arguments in complete disregard of the Agreement.

<u>The Agreement</u>

ACH is responsible under the Agreement for providing all necessary inmate medical care within its professional abilities at its expense, and must determine whether care is elective (which also means ACH decides if it will bear the expense), and ACH must immediately notify jail staff of any serious medical need that is beyond ACH's professional abilities to treat. The Agreement expressly states that:

Electronically Filed - Greene - June 28, 2022 - 01:16 PM

The Parties acknowledge that *the Sheriff must rely on the Contractor's medical judgment in determining when treatment for an inmate is medically necessary* and reasonable.

(Agreement, "Performance to Satisfaction of Sheriff," p. 14 of 30)(emphasis added). The parties also agreed that:

*The Contractor shall provide all inmate medical treatment and treatment recommendations that it believes to be medically necessary* and within its professional capabilities to provide, and *the Sheriff, including his respective employees, agents, attorneys, successors, and assigns, shall rely on the Contractor to provide such medical treatment and treatment recommendations*.

(Agreement, "General Nature," p. 5 of 30)(emphasis added). Additionally, the Agreement provides that:

The Parties expressly acknowledge that *the Sheriff shall rely on the Contractor to provide all expert opinions regarding the medical condition and medically necessary treatment of all inmates* at the GCJ, *including that the Contractor shall be solely responsible for determining whether or not an inmate is medically fit for confinement*.

(Agreement, "Expert Opinion," p. 5 of 30)(emphasis added). Further, that:

*The Contractor shall* also examine each inmate that appears to suffer from any medical issue that could render such inmate not fit for confinement and *determine whether such inmate is medically fit for confinement, and promptly notify and advise GCJ staff of that determination*.

(Agreement, "Medical Screening," p. 6 of 30)(emphasis added). In the event medically necessary treatment off-site is required, then the parties agreed:

If in the Contractor's opinion an inmate requires medical treatment that is beyond the Contractor's professional abilities, such as for example, complicated surgical intervention, *the Contractor shall take such steps as it believes are medically necessary to provide treatment*, including referral to an appropriate off-site or outside emergency medical provider. *In case of such need, the Contractor shall immediately notify GCJ staff*, which will make arrangements for the transportation of the inmate to the preferred provider.

(Agreement, "Scope of Care," p. 6 of 30)(emphasis added). The Agreement also detailed that ACH must determine whether care was medically necessary or elective, where ACH would not be financially responsible for the latter, in that:

*The Contractor will not be responsible for providing elective care* to inmates. "Elective care" is care which, if not provided, would not, in the opinion of the

Electronically Filed - Greene - June 28, 2022 - 01:16 PM

Contractor, cause the inmate's health to deteriorate, or cause harm to the inmate's well-being. Decisions concerning elective care should be consistent with the applicable American Medical Association (AMA) standards. The Parties expressly acknowledge that *the Sheriff must rely on the Contractor* to provide all expert medical opinions, *including that the Contractor shall be solely responsible for determining whether or not care is elective or medically necessary* (non-elective).

(Agreement, "Elective Care," p. 7 of 30)(emphasis added). The Agreement also includes:

*The Contractor shall determine whether what would otherwise be a personal need item is medically necessary* under the specific circumstances applicable to an individual inmate, and the Contractor shall timely notify the Sheriff of any such determination, and *the Contractor shall either administer the medically necessary treatment or make the necessary referral and arrangement for such treatment to be provided*.

(Agreement, "Inmate Personal Needs," p. 9 of 30).

Accordingly, ACH's arguments that jail staff have any role in preventing inmate treatment based on financial ability, are simply incorrect. Moreover, there can be no dispute that the inmates in this case have alleged matters arising out of ACH's acts in providing medical services, such as by determining whether or not outside medical care was elective. Thus, ACH must accept tender.

ACH's Duty to Accept Tender

Your November 30, 2018 letter disregarded the Agreement as a whole, but also presented the last sentence of §2.1 out of context, for the proposition that the "provision does not, however, require the Contractor (ACH) to indemnify or hold harmless the Sheriff or the County from their own negligence." As you know, §2.1 of the Agreement includes that:

To the fullest extent permitted by law, the Contractor shall hold harmless and indemnify the Sheriff and the County, including their respective employees, agents, attorneys, successors, and assigns, against any claims, losses, damages, including reasonable attorneys' fees and other costs of litigation, and expenses, *arising by reason of any act*, *negligent or otherwise*, of the Contractor or its personnel, including the individuals, entities, employees, independent contractors, subcontractors (meaning anyone, including but not limited to consultants having a contract with the Contractor or a subcontract for part of the services), successors, agents, and assigns through which the Contractor shall act in relation to providing the services detailed herein, including anyone directly or indirectly employed by the Contractor or by any subcontractor, or of anyone for whose acts the Contractor or its subcontractor may be liable, *in connection with providing these services, and related to the medical services detailed herein.* This provision does

Electronically Filed - Greene - June 28, 2022 - 01:16 PM

not, however, require the Contractor to indemnify or hold harmless the Sheriff or
the County from their own negligence.

(Agreement, "Hold Harmless/Indemnification," p. 15 of 30)(emphasis added). To be clear,
ACH's obligations in this regard are based on *its* role in providing services under the Agreement,
not on the acts of our clients. Again, the inmates have alleged that they were denied access to
medical treatment, and the decision on whether treatment is medically necessary is entirely
ACH's responsibility. Obviously, your focus on the last provision of §2.1 in isolation disregards
ACH's obligations detailed in §2.1 regarding "any act [of ACH staff]…in connection with
providing these services, and related to the medical services detailed herein." It also misses the
point of the Agreement as a whole, and there can be no genuine dispute that the inmate
allegations at issue regard ACH's acts in providing medical services under the Agreement.

It is also not clear why you would argue *on behalf of ACH* that ACH's insurance is
unlikely to provide coverage. I could certainly understand why it would be in the interest of
Western Litigation or Arch Specialty Insurance Company to take that position; but it is obviously
not in ACH's interest to argue a lack of coverage. Here, note §2.3 of the Agreement includes
that:

> Without limiting the Contractor's indemnification obligations, the Contractor
> shall procure and maintain, at its sole cost and for the duration of this Agreement,
> insurance coverage as provided herein, ***against all claims for injuries against
> persons or damages to property which may arise from or in connection with the
> Contractor providing the services contemplated in this Agreement***.
>
> …
>
> ***The Contractor expressly warrants that such insurance will cover the Sheriff
> and the County, including their respective officers, employees, agents,
> attorneys, successors, and assigns, as well as cover the Contractor and the
> individuals, entities, employees, independent contractors, successors, agents,
> and assigns through which the Contractor shall act to provide the services
> detailed herein, and in the event that there is no such coverage, the Contractor
> shall defend, indemnify, and hold harmless the Sheriff and the County, and
> their respective officers, employees, agents, attorneys, successors, and assigns.***

(Agreement, "Insurance," p. 15 of 30)(emphasis added). In any event, ACH's duties exist
regardless of whether the insurer denies coverage.

Finally, it is unlikely that ACH will succeed on its motions to dismiss. Even if plaintiffs'
counsel did nothing, and allowed the case to be dismissed, ACH's obligations under the
Agreement would remain. Further, I expect that ACH would be involved in the discovery
process.

Conclusion

December 3, 2018
Page 7

Electronically Filed - Greene - June 28, 2022 - 01:16 PM

For all these reasons, I strongly encourage you to change your position.

Cordially,

KECK, PHILLIPS & WILSON, L.L.C.

By/s/ *Damon S. Phillips*
Damon S. Phillips

DSP:jh
Cc: alex.kinzinger@advancedch.com

**Exhibit J**

LAWYERS

# KECK & PHILLIPS, L.L.C.

3140 E. DIVISION ST.
SPRINGFIELD, MO 65802
(417) 890-8989-office
(417) 890-8990-fax

Partners
PATRICIA KECK*
DAMON PHILLIPS
JOHN SPURLOCK

Of Counsel
SEAN MCGINNIS

Outside Counsel
FRANK COTTEY

Associates
ADAM LI
SAMUEL PECK

Investigator
MARLA MILLER

* Principle, Licensed in
  Missouri, Kansas and
  Arkansas

October 21, 2019

**VIA EMAIL: Eugene_Isotti@westernlitigation.com**

**AND VIA CERTIFIED MAIL:      7018 1830 0001 1144 2193**

Advanced Correctional Healthcare, Inc.
C/O:
Eugene B. Isotti, J.D.
Senior Vice President Western Litigation
8401 N. Central Expressway, Suite 900| Dallas, TX 75225

> Re:   *Michael Hancock, et al. v. Sheriff Jim Arnott, et al.*, 18-3170-CV-S-MDH-P
>        U.S. Dist. Court for the Western District of Missouri

Dear Mr. Isotti:

I and this firm represent Greene County, Missouri, Greene County Sheriff Jim Arnott, and public officials Major Denny, Captain Howell, Captain Coonrod, and Captain Johnson, in the above-captioned matter. As you know, three former jail inmates sued my clients, plus Advanced Correctional Healthcare, Inc. ("ACH"), and ACH employees Dr. Jason Wilkins, Eric Partenheimer, and Solita Massie, regarding inmate medical treatment. I understand you are an attorney hired by a risk management company, Western Litigation, for ACH and its insurer, Arch Specialty Ins. Co., to make decisions regarding ACH's obligations under its 2017 contract to provide inmate medical services at the jail.

## I.   ACH Had A Duty to Diagnose Whether Jail Inmates Had Serious Medical Needs

All three inmates allege that they had medical needs that were not treated. My clients are not doctors or medical professionals. That is why your client, ACH, was contracted to evaluate inmate medical needs. The Agreement expressly states that:

> The Parties acknowledge that **the Sheriff must rely on the Contractor's medical judgment in determining when treatment for an inmate is medically necessary** and reasonable.

**Exhibit K**

Electronically Filed - Greene - June 28, 2022 - 01:16 PM

(Agreement, "Performance to Satisfaction of Sheriff," p. 14 of 30)(emphasis added). Additionally, the Agreement provides that:

> The Parties expressly acknowledge that *the Sheriff shall rely on the Contractor to provide all expert opinions regarding the medical condition and medically necessary treatment of all inmates* at the GCJ, *including that the Contractor shall be solely responsible for determining whether or not an inmate is medically fit for confinement*.

(Agreement, "Expert Opinion," p. 5 of 30)(emphasis added). Further:

> *"Elective care" is care which, if not provided, would not, in the opinion of the Contractor, cause the inmate's health to deteriorate, or cause harm to the inmate's well-being.* Decisions concerning elective care should be consistent with the applicable American Medical Association (AMA) standards. The Parties expressly acknowledge that *the Sheriff must rely on the Contractor* to provide all expert medical opinions, *including that the Contractor shall be solely responsible for determining whether or not care is elective or medically necessary* (non-elective).

(Agreement, "Elective Care," p. 7 of 30)(emphasis added). The Agreement also includes:

> *The Contractor shall determine whether what would otherwise be a personal need item is medically necessary* under the specific circumstances applicable to an individual inmate, and the Contractor shall timely notify the Sheriff of any such determination, and *the Contractor shall either administer the medically necessary treatment or make the necessary referral and arrangement for such treatment to be provided*.

(Agreement, "Inmate Personal Needs," p. 9 of 30). The parties also agreed that:

> *The Contractor shall provide all inmate medical treatment and treatment recommendations that it believes to be medically necessary* and within its professional capabilities to provide, and *the Sheriff, including his respective employees, agents, attorneys, successors, and assigns, shall rely on the Contractor to provide such medical treatment and treatment recommendations*.

(Agreement, "General Nature," p. 5 of 30)(emphasis added).

## II. ACH Had An Obligation to Report All Serious Medical Needs to Jail Staff

If any inmate had a serious medical need for treatment, then ACH was required to promptly tell jail staff. The Agreement expressly stated:

Electronically Filed - Greene - June 28, 2022 - 01:16 PM

> ***The Contractor shall*** also examine each inmate that appears to suffer from any medical issue that could render such inmate not fit for confinement and ***determine whether such inmate is medically fit for confinement, and promptly notify and advise GCJ staff of that determination***.

(Agreement, "Medical Screening," p. 6 of 30)(emphasis added). In the event medically necessary treatment off-site is required, then the parties agreed:

> If in the Contractor's opinion an inmate requires medical treatment that is beyond the Contractor's professional abilities, such as for example, complicated surgical intervention, ***the Contractor shall take such steps as it believes are medically necessary to provide treatment***, including referral to an appropriate off-site or outside emergency medical provider. ***In case of such need, the Contractor shall immediately notify GCJ staff***, which will make arrangements for the transportation of the inmate to the preferred provider.

(Agreement, "Scope of Care," p. 6 of 30)(emphasis added). ACH did not tell jail staff that any of these three inmates had serious medical needs for treatment. (I am not saying the inmates actually had any such need, I am merely pointing out that it is undisputed that ACH did not tell jail staff about any such need).

## III. ACH Was Supposed To Protect Greene County and Its Public Officers from these kinds of lawsuits

Under the terms of the Contract, it does not matter whether the inmates have made frivolous allegations, and ACH along with its insurer must defend, hold harmless, and indemnify Greene County and its public officers from the lawsuits. First, §2.1 of the Agreement includes that:

> To the fullest extent permitted by law, ***the Contractor shall hold harmless and indemnify the Sheriff and the County, including their respective employees***, agents, attorneys, successors, and assigns, against any claims, losses, damages, including reasonable attorneys' fees and other costs of litigation, and expenses, ***arising by reason of any act***, ***negligent or otherwise***, of the Contractor or its personnel, including the individuals, entities, employees, independent contractors, subcontractors (meaning anyone, including but not limited to consultants having a contract with the Contractor or a subcontract for part of the services), successors, agents, and assigns through which the Contractor shall act in relation to providing the services detailed herein, including anyone directly or indirectly employed by the Contractor or by any subcontractor, or of anyone for whose acts the Contractor or its subcontractor may be liable, ***in connection with providing these services, and related to the medical services detailed herein***. This provision does not, however, require the Contractor to indemnify or hold harmless the Sheriff or the County from their own negligence.

Exhibit K

Electronically Filed - Greene - June 28, 2022 - 01:16 PM

(Agreement, "Hold Harmless/Indemnification," p. 15 of 30)(emphasis added). It is also crystal-clear that ACH's insurance must cover my clients pursuant to the Contract, and:

> The Contractor expressly warrants that such insurance will cover the Sheriff and the County, including their respective officers, employees, agents, attorneys, successors, and assigns, as well as cover the Contractor and the individuals, entities, employees, independent contractors, successors, agents, and assigns through which the Contractor shall act to provide the services detailed herein, and in the event that there is no such coverage, the Contractor shall defend, indemnify, and hold harmless the Sheriff and the County, and their respective officers, employees, agents, attorneys, successors, and assigns.

(Agreement, "Insurance," p. 15 of 30).

### IV. ACH made misrepresentations and breached the Contract

Prior to entering the Contract, ACH regularly conducted seminars where it advertised that it would take care of inmate medical treatment matters and lawsuits if hired. My clients relied on those representations, and trusted that ACH would adhere by the terms of the Contract. These lawsuits were filed and consolidated with counsel appointed on August 23, 2018. I sent your client/insured letters dated September 7, 2018; November 5, 2018; and December 3, 2018, repeatedly demanding that ACH protect my clients from these lawsuits. In January of 2019 representatives of ACH asked to discuss the dispute, but again refused to take any action to protect my clients. ACH has also taken the position that it was not responsible for treatment decisions. At mediation on October 10, 2019 ACH failed to take steps to protect my clients. At this point, it has become very clear that ACH does not take its promises seriously.

### V. ACH's actions have damaged the people of Greene County, Missouri

In a real sense, our clients in these three federal lawsuits are the people of Greene County, Missouri. ACH's actions have hurt our clients, and prior to mediation $29,249.56 in fees and costs had been incurred in defending against these lawsuits. If ACH does not promptly take over the cost of defense, and compensate our clients for the defense costs already incurred, without reservation, then we will have no choice but to take all reasonable steps to protect our clients.

Cordially,

KECK & PHILLIPS, L.L.C.

*/s/Damon S. Phillips*
Damon S. Phillips

DSP/cjs

Exhibit K

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | |
|---|---|
| **MICHAEL D. HANCOCK,** ) | |
| **Plaintiff** ) | |
| **v.** ) | **Case No. 6:18-cv-03170-MDH** |
| ) | |
| **JIM ARNOTT, et al.,** ) | **Consolidated with Cases:** |
| **Defendants** ) | |
| ) | |
| **ANTHONY T. PORTER,** ) | **Case No. 6:18-cv-04114-MDH** |
| **Plaintiff** ) | |
| **v.** ) | |
| ) | |
| **MASSIE, et al.,** ) | |
| **Defendants** ) | |
| ) | **Case No.: 6:18-cv-03212-MDH** |
| **COURTNEY BLADE,** ) | |
| **Plaintiff** ) | |
| **v.** ) | |
| ) | |
| **ADVANCED CORRECTIONAL** ) | |
| **HEALTHCARE,** ) | |
| **Defendant.** ) | |
| ) | |

**ORDER**

Before the Court are multiple motions for summary judgment: Defendants Arnott, Coonrod, Denny, Greene County Sheriff's Office, Howell and Johnson's Motion for Summary Judgment as to Plaintiff Hancock (Doc. 236); Defendants Arnott and Greene County's Motion for Summary Judgment as to Plaintiff Blade (Doc. 239); Defendants Dr. Wilkins and Advanced Correctional Healthcare, Inc.'s ("ACH") Motion for Summary Judgment as to Plaintiff Blade (Doc. 242); Defendants Dr. Wilkins, Partenheimer, and ACH's Motion for Summary Judgment as to Plaintiff Hancock (Doc. 245); Defendants Arnott and Greene County, Missouri's Motion for Summary Judgment as to Plaintiff Porter (Doc. 274); and Defendants Dr. Wilkins, Massie and ACH's Motion for Summary Judgment as to Plaintiff Porter (Doc. 278).

1

**Exhibit L**

Electronically Filed - Greene - June 28, 2022 - 01:16 PM

Plaintiffs' lawsuits allege Greene County's policy implemented and enforced by Defendants, makes pre-payment a pre-requisite for necessary medical treatment for inmates in violation of their constitutional rights. The Court initially heard evidence on Plaintiffs' motion for preliminary injunctive relief and ruled that to the extent Greene County Jail's ("Greene County") policy requires inmates to pre-pay for necessary medical treatment of serious medical needs it would violate the constitution. This Court further held that whether an inmate has a serious medical need is a case-by-case determination and that based on the evidence before the Court, at that time, Plaintiff Hancock's hernia constituted a serious medical need, but that Hancock's other complaints did not constitute serious medical needs. Plaintiff Blade's eye complaints were found not to constitute a serious medical need.[1] The Court granted in part Plaintiffs' motion for injunctive relief. (See Doc 100). The Court ordered that to the extent Hancock remained in custody he should be further examined by Dr. Woods. Defendants were further ordered to treat Hancock for his hernia without requiring pre-payment. The Court's prior Order was dated April 2, 2019. Hancock had been transferred to Missouri Department of Corrections on March 20, 2019.

Now before the Court are Defendants' motions for summary judgment on Plaintiffs' claims. Plaintiffs' Amended Complaints each raise one count – Count I – Violation of 42 U.S.C. § 1983: Cruel and Unusual Punishment. Defendants Dr. Wilkins and the ACH Defendants (including Dr. Wilkins, Nurse Partenheimer, and Nurse Massie) generally argue that Plaintiffs have failed to state a claim of a constitutional violation; that Defendants did not have any policy, procedure, or custom that violated a constitutional right; and that Defendants cannot be held vicariously liable for the alleged violations of Plaintiffs' constitutional rights. The Greene County Defendants (including Sheriff Arnott, Denney, Johnson, Coonrod, and Howell) generally argue

---

[1] Plaintiff Porter's claims were not raised in the previous motion or the Court's prior Order.

Exhibit L

that Plaintiffs have failed to state a claim of a constitutional violation; that Plaintiffs do not have serious medical needs; that Plaintiffs cannot show that Defendants were the moving force behind an Eighth Amendment violation in order to establish municipal liability; that Plaintiffs failed to exhaust administrative remedies; and that Plaintiffs lack standing for relief as their claims are moot. The motions for summary judgment are specifically addressed as to each of the Plaintiffs' claims below.

<div align="center">

**BACKGROUND[2]**
</div>

**Greene County and ACH Defendants**

Greene County's policy states, in part:

> While incarcerated in the Greene County Jail, your medical care will be under the direction of the Jail's Physician. If you require care outside of the facility, you must assume responsibility for payment of that care.

Greene County Jail Rulebook, page twenty-six, Section 6.

Missouri Revised Statute § 221.120 states:

> If any prisoner confined in the county jail is sick and in the judgment of the jailer, requires the attention of a physician, dental care, or medicine, the jailer shall procure the necessary medicine, dental care or medical attention necessary or proper to maintain the health of the prisoner. The costs of such medicine, dental care, or medical attention shall be paid by the prisoner through any health insurance policy as defined in subsection 3 of this section, from which the prisoner is eligible to receive benefits. If the prisoner is not eligible for such health insurance benefits then the prisoner shall be liable for the payment of such medical attention, dental care, or medicine, and the assets of such prisoner may be subject to levy and execution under court order to satisfy such expenses in accordance with the provisions of section 221.070, and any other applicable law. The county commission of the county may at times authorize payment of certain medical costs that the county commission determines to be necessary and reasonable. As used in this section, the term "medical costs" includes the actual costs of medicine, dental

---

[2] The facts presented in the pending summary judgment motions have been considered by the Court in a light most favorable to Plaintiffs. Further, the Court has reviewed nearly 800 paragraphs of "material facts" submitted by the parties in the pending briefs. For purposes of this Order the Court has recited the facts it finds relevant to its rulings on the pending motions.

<div align="center">

3
</div>

care or other medical attention and necessary costs associated with such medical care such as transportation, guards and inpatient care.

Informational booklets provided to inmates, "Inmate Rulebooks," further state, in part:

Inmates will not be denied medical treatment for inability to pay, but the inmate's trust account will still be charged. When an inmate receives money the fee will be deducted before any other transactions occur. No inmate will be denied health care services due to an inability to pay. All services will be ordered at the discretion of the Jail's medical staff and/or physician.

The Inmate Rulebook further states Greene County shall require reimbursement for medical services provided to inmates per RSMo Section 221.120 and that while incarcerated in the Greene County Jail an inmate's medical care will be under the direction of the Jail's Physician and that "if you require care outside of the facility, you must assume responsibility for payment of that care."

ACH provided inmate medical services at Greene County through Jason Wilkins, M.D., a licensed physician, and other medical professionals. Dr. Wilkins provided medical services on behalf of ACH, a private entity, to inmates within Greene County Justice Center. He worked for the Greene County Sheriff from 2008 until 2017 and then began working for ACH. Eric Partenheimer is a registered nurse and provided care to inmates in the Greene County Justice Center. ACH also assisted in drafting and implementing specific medical policies and maintaining the appropriate standards and accreditation for such policies.

This Court has already held that if Greene County's written policy was implemented so as to require inmates to provide prepayment as a condition to receiving necessary medical treatment for a serious medical need it would violate the constitution. Nothing in this Order should be construed to alter that ruling. (See Doc. 100). To be clear, necessary medical treatment of a serious medical need may not be withheld based on an inmate's ability (or inability) to prepay for such medical treatment. However, placing the ultimate financial responsibility for medical treatment and services on the inmate is not a constitutional violation.

4

**Exhibit L**

**Plaintiff Hancock**

Plaintiff Hancock arrived at Greene County on May 14, 2017 shortly after undergoing surgery for gunshot wounds. Dr. Robert Johnson performed the surgery on May 11, 2017 at Mercy Hospital in Springfield, Mo. Hancock was detained from May 2017 through March 2019 and was examined and treated by ACH medical staff and outside Mercy health providers during that time. In May, Hancock was seen for follow up appointments for his surgery. On May 22, 2017 Hancock was sent to Mercy Hospital emergency room for evaluation. Hancock underwent an abdominal CT scan. Hancock did not have a hernia at that time. Hancock was discharged on May 24, 2017 and returned to Greene County. Hancock was again seen at Mercy on May 31, 2017 for a follow-up appointment. Hancock was not required to provide prepayment for any of the outside care he received for those visits.

On June 4, 2017, Hancock complained about his medical care and filed a grievance. On June 11, 2017, Hancock was seen by a nurse at Greene County for a complaint of chest pain and shortness of breath. Dr. Wilkins then examined Hancock on June 15, 2017. Hancock complained of right-sided abdominal pain. Dr. Wilkins notes state "c/o right sided abdominal pain. No distress noted. Will repeat labs."

On July 3, 2017, Hancock was seen by a nurse and after being examined put on the list to be seen again by Dr. Wilkins. Hancock was seen by Dr. Wilkins on July 7, 2017. Hancock was experiencing abdominal pain and sciatica pain to his left lower foot. Dr. Wilkins ordered that Dr. Johnson, who performed the prior surgery, be contacted to determine if a follow up was needed. Dr. Johnson's office stated there was no indication for a follow up. Dr. Wilkins then saw Hancock again on July 10, 2017. Hancock was angry and left the examination room before he could be fully examined. Hancock demanded medication for the "bullet that was moving" inside him. Dr.

5

**Exhibit L**

Wilkins ordered Hancock to follow up with his surgeon Dr. Johnson. Hancock was sent to Mercy Clinic Fremont on July 19, 2017 where he saw a physician assistant. Hancock reported lower abdominal pain and left leg pain he believed from the bullet. The physician assistant ordered a CT scan to assess Hancock's abdomen, pelvis and back pain and to follow up after the CT scan. Hancock had a CT scan on August 2, 2017. The CT scan showed no hernia but a large amount of retained stool. On August 7, 2017, Hancock was again seen at Mercy Clinic. Hancock complained of intermittent abdominal pain and left leg numbness which he thought was cause by a bullet. The surgeon's office did not diagnose a hernia on August 7 and ordered magnesium citrate for Hancock's constipation. Hancock was not required to provide prepayment for any of the outside care he received in these visits.

On September 13, 2017, Hancock was seen by Dr. Wilkins for a sore throat with no reference to a hernia or back pain on this visit. On November 16, 2017, Hancock saw Dr. Wilkins for a complaint of heartburn. Hancock's prescription for Prilosec was renewed. Hancock did not reference back pain or a hernia on this visit. On November 26, 2017, Hancock's blood pressure was 146/86 and Dr. Wilkins ordered Lisinopril for Hancock. There was no reference to hernia or back pain.

On November 28, 2017, Hancock saw a nurse for complaints of stomach pain and that he thought he had a possible hernia. On November 30, 2017, Dr. Wilkins examined Hancock and assessed an incisional hernia from his previous surgery and determined it was reducible and could be easily moved into place. Dr. Wilkins informed Hancock that he would contact Mercy for their opinion but that operative treatment would be considered elective and could safely be delayed until he was released. On December 12, 2017, Hancock saw Dr. Luehr, a trauma surgeon with Dr. Johnson's office. Dr. Luehr noted that Hancock had a small easily reducible ventral hernia and

6

**Exhibit L**

could be scheduled for elective repair. Hancock gave consent for Dr. Luehr to perform elective laparoscopic ventral hernia repair. The medical notes indicate that Dr. Luehr would plan for laparoscopic ventral hernia repair and Hancock was instructed to present immediately if hernia became non-reducible or symptoms worsened. Hancock was not admitted and no time frame was established for the surgery. Hancock was cleared to return to Greene County.

On December 14, 2017, Dr. Wilkins attempted to see Hancock for follow up with him regarding his hernia but Hancock refused to be seen. Hancock alleges his hernia had grown in size during this time, that he experienced increased pain, and that his condition was worsening while incarcerated at Greene County. Hancock states he requested surgery on multiple occasions and was denied the surgery because he could not pre-pay for the procedure. However, the record does not contain any evidence to support Hancock's vague allegations that his condition was worsening and there is no evidence that Hancock's hernia became non-reducible during this time.[3]

On December 18, 2017, Hancock complained that he needed to see a specialist for his back. Hancock left that visit with Dr. Wilkins prior to being fully evaluated. On January 8, 2018 Hancock saw Dr. Wilkins for a complaint related to his hernia. Dr. Wilkins indicated he would contact the surgeon's office but explained the surgeon had indicated the surgery was not immediately necessary. ACH staff contacted Dr. Johnson's office and were told that nothing could be scheduled until it was determined whether payment would be required. It was further stated that if the hernia protruded or became strangulated to take Hancock to the emergency department.

---

[3] Hancock has not provided any medical records that establish that his symptoms had worsened or that his hernia had become non-reducible during this time frame. Further, as stated herein, Hancock denied medical concerns in March 2019 when transferred and screened at the Missouri Department of Corrections and did not undergo surgery for the hernia until June 2020.

Dr. Wilkins ordered continued observation of Hancock and told Hancock to report if there were any complications. Hancock also visited ACH medical staff for unrelated issues and with inconsistent reports of hernia and back pain.[4] Hancock was examined on March 4, 2019 for back pain. He was given Tylenol and instructed to rest and apply heat to the area. Hancock stated the back pain had been going on for 7 days at that time. Hancock filed his initial complaint in this matter on May 29, 2018.

On March 20, 2019 Hancock was transferred and screened at the Missouri Department of Corrections. Hancock denied pain or needing medical attention related to a hernia or back pain at that time. Hancock was medically cleared to work in food service. Hancock states he underwent hernia surgery in June 2020.

**Plaintiff Blade**

Plaintiff Blade was a pre-trial detainee in the Greene County Jail and received treatment from Dr. Wilkins and ACH while incarcerated there. Blade was seen and provided treatment for complaints relating to his eye.[5] On March 22, 2018, Blade saw Dr. Wilkins for a complaint relating to a swollen left eye. Blade reported he suffered an injury to his left eye. Dr. Wilkins assessed Blade as having conjunctivitis and a possible abrasion. He was prescribed Tobramycin and Dexamethasone. On March 29, 2018, Blade saw Nurse Brandy Watkins for a complaint related to poor vision and "floaters." Nurse Watkins contacted Dr. Wilkins who assessed Blade with a

---

[4] Hancock was involved in fights with an inmate on March 16, 2018 and December 27, 2018 and denied medical concerns at those times. Plaintiff was also involved in a struggle with detention officers on July 11, 2018 and did not report medical concerns. Plaintiff saw ACH staff regularly through March regarding ear pain.

[5] The record before the Court contains other medical records for Blade that the Court finds irrelevant to the pending motion.

subconjunctival hemorrhage and ordered Blade to be sent out of the jail to Optiland for an eye evaluation.

On April 2, 2018, Blade saw Dr. Wilkins for a chronic care appointment and did not have any complaints related to his eyes.  On April 12, 2018, Blade underwent an examination at Heffington's Optiland by Dr. Dennis White.  Blade informed Dr. White that he had floaters.  Blade did not have to prepay for the appointment with Dr. White.  Dr. White stated Blade had no signs of retinal holes, tears, detachments, or lesions.  Dr. White diagnosed Blade with having a regular astigmatism in both eyes.  He did not recommend immediate referral to an ophthalmologist and did not diagnose Blade with vision loss due to an eye injury.   Dr. White stated in the medical records "if continues to see flashes of light over next couple weeks recommend seeing an Ophthalmologist (sic) for retinal evaluation."

On April 13, 2018, Blade submitted a health service request stating, "my gums have an infection and bleeding and teeth are loose."  On April 14, 2018, Blade saw Nurse Kristy Battles regarding his complaint related to a gum infection.  On April 21, 2018, Blade submitted a health service request stating, "this is a follow up on my eye to the specialist that the eye doctor referred inc (sic) to still seeing floaters and black spots."  On April 28, 2018, Dr. Wilkins approved a referral to an ophthalmologist and placed the referral for Blade to be sent to Missouri Eye Institute on May 31, 2018.  On May 2, 2018, Optiland entered a message in Blade's account record that stated, "jail called and wants referral to opthal – DH told them probably MEI and would need to be prepaid before anyone would see him – she will talk to the Dr there and determine who will pay."  That same day Blade saw Nurse Warnhoff for a complaint regarding his gums and teeth.  Blade did not complain about his vision or eyes at this visit.

9

**Exhibit L**

On May 25, 2018, Officer Wilkinson notified Blade that Missouri Eye Institute required payment before they provide treatment. He was told Greene County was not refusing to treat him and that according to RSMo Section 221.120 the prisoner shall be liable for the payment of such medical attention. On May 31, 2018, Blade requested to be seen by an eye specialist. On June 10, 2018 Optiland entered a message in Blade's account record that stated, "Ruth at MEI called – jail had called them to set up an appt, however he is unable to pay for the exam so they will not schedule him. We will not see him again either until he comes with $138 he owes from the 04/12/18 exam, plus prepayment for anything else." Optiland charged Blade $179.00, adjusted the amount of $41.00 to a total of $138.00, for his eye exam on April 12, 2018. Greene County ultimately paid the bill. On June 19, 2018, Blade stated in writing he was denied a specialist.[6]

On September 20, 2018, Blade had a chronic care appointment with Dr. Wilkins and refused his last three lab orders stating it was due to financial reasons. Dr. Wilkins reminded Blade that there was no charge for labs and that they were important. During this visit Blade did not reference any eye complaints. Blade had numerous additional interactions, including requests for health services, with the nurses and Dr. Wilkins regarding his feet and nerve pain in 2018 through March 23, 2019.[7] Blade left Greene County for prison in April 2019.

Blade was incarcerated at Fulton Reception and Diagnostic Center from April 24, 2019 through July 30, 2019. Blade was seen on May 8, 2019 by Dr. Alfred Garcia for a complaint

---

[6] The parties dispute whether Blade had sufficient funds to pay $250 for the ophthalmologist. Defendants state Blade spent over $250 for commissary items. Blade argues the records do not support this fact. For purposes of this Order, the Court assumes facts most favorable to Plaintiff.

[7] Blade made health services requests on December 6 and 12, 2018 none of which raised concerns about his eyes or vision. Blade was seen by the nurses or Dr. Wilkins on October 20, 2018, December 8, 17, 24, 2018, January 7 and 14, 2019, and March 10, 12, 14 and 23, 2019. During those visits Blade did not raise concerns about his vision or his eyes. Blade was seen for complaints regarding nerve issues, rashes and other concerns.

related to an eye issue that he reported was the result of being poke in the eye two years before. Blade stated that he saw floaters and black spots. Dr. Garcia's records indicate that the examination was grossly unremarkable but that he would be referred to an eye doctor. On May 16, 2019, Blade saw Dr. Michael Lane, an optometrist who diagnosed Blade with posterior vitreous detachment but did not recommend any treatment for that condition. Blade's vision at the appointment was better than his vision when he saw Dr. White at Optiland in 2018. Dr. Lane did not refer Blade to an ophthalmologist. As of July 30, 2020, Blade was incarcerated at South Central Correctional Center where he arrived in July 2019. In September 2019, Blade was seen by an optometrist who said he had no change in his vision.

**Plaintiff Porter**

Plaintiff Anthony Porter arrived as an inmate at Greene County around January 2017. Porter was incarcerated at other facilities prior to Greene County.[8] Porter received medical treatment from Nurse Solita Massie and Dr. Wilkins. Porter was seen for a variety of conditions including complaints related to his mouth. During his first four months of detention at Greene County Porter either received or refused medical attention at least 17 times.

Initially, Porter did not have any dental complaints on January 13, 20, or 23, 2017 when he was seen by ACH medical staff at the jail. On February 28, 2017, Porter was transferred to Cox Health North emergency room for a complaint of a cystic structure on the roof of his mouth for 3-5 years that had developed after he had orbital fracture surgery in 2011. Porter states he never saw

---

[8] Porter was incarcerated in the Cook County, Illinois jail on August 16, 2016 and complained of an inability to open his mouth due to a toothache. He complained to Cook County on September 7, 2016 that his face was swollen and he couldn't open his mouth and on September 12, 2016 that he had an orbital fracture and he was scheduled for a dentist appointment. Plaintiff was incarcerated at Rutherford County, Tennessee on December 22, 2016. Plaintiff did not make any dental complaints upon his arrival.

an oral surgeon, dentist, or ENT after his surgery in 2011.  However, Porter previously complained of mouth pain while incarcerated at other jails in 2016.

Dr. Schmitt at Cox examined Porter and then cleared him to return to Greene County.  Dr. Schmitt did not refer Porter to an oral surgeon for surgery but recommended an ENT consult and Augmentin.  Dr. Wilkins prescribed the Augmentin and scheduled an appointment with Dr. Fenwick, an otolaryngologist at Ferrell Duncan Clinic ENT, for March 20, 2017.  Dr. Wilkins followed up with Porter on March 2, 2017 after his emergency room visit and noted Porter was not compliant with taking his antibiotic.  On March 20, 2017, Porter was examined by Dr. Fenwick.  Dr. Fenwick recommended a CT scan of Porter's facial bones which occurred on March 27, 2017.  After the CT scan, Dr. Fenwick stated Porter needed to see an oral surgeon and made a referral to OMS.  Porter was not required to prepay for any of the outside medical care he received on these visits.  An appointment was scheduled with Dr. Arquitt at OMS for May 4, 2017.  Porter was released from Greene County on April 20, 2017, before his scheduled appointment.[9]

During his release from custody Porter did not seek any medical treatment for the cyst in his mouth.  Porter was reincarcerated at Greene County on December 28, 2017. At intake Porter signed an intake form stating that he did not have any painful dental conditions.  Porter saw ACH staff for issues related to his left thumb, for which he was sent to the hospital for x-rays, in January 2018.  In February 2018, Porter saw Dr. Wilkins regarding his mouth.  Dr. Wilkins requested records from Cox Health and ordered Porter to follow-up with the ENT.  Porter was scheduled for March 23, 2018 to see Dr. Fenwick.  Porter refused to sign the health service request to be examined by nurse Massie at Greene County and refused to see the dentist on February 28, 2018.

---

[9] After two weeks of being released, Porter went to Cook County, Iroquois County, and then Cape County jails.

Porter refused to be seen by Dr. Wilkins on March 1, 2018.  Porter requested to see the dentist on March 12, 2018 but again refused to be seen.

On March 23, 2018, Porter again saw Dr. Fenwick, ENT.  Dr. Fenwick noted that Porter had not followed up with a return visit after his CT.  He further recommended a barium swallow and a consult with an oral surgeon.  A barium swallow was scheduled for March 29, 2018 and the results were that Porter had an unremarkable esophagram.

On April 7, 2018 Porter again refused to be seen by a dentist and refused to be seen by a nurse on April 17, 2018.  Porter saw Dr. Wilkins on April 19, 2018 but did not have any complaints or issues related to the cyst in his mouth.  Porter was then seen by an oral surgeon, Dr. Gibson, at OMS on April 30, 2018.  Dr. Gibson recommended removal of the cyst in Porter's mouth and informed Porter of the risks and benefits of the procedure.  Dr. Gibson did not schedule the surgery at that time but his notes state "will schedule."  Dr. Wilkins was informed to start prescription amoxycillin and to call to schedule appointment for Porter.  Porter was not required to prepay for any of the outside care he received on these visits.

After the visit on April 30, 2018, Porter filed no further requests to be seen by medical at GCJC.  Porter was not seen by any medical professionals at the GCJC after April 30, 2018.  He made no further medical requests.

On May 7, 2018, Nurse Kalyn Sampson contacted OMS to schedule Porter's procedure for oral surgery as requested by Dr. Gibson. However, Dr. Gibson's nurse called Nurse Sampson and told Nurse Sampson that Dr. Gibson would not perform this surgery while Porter was incarcerated. Porter argues he was denied surgery because Defendants would not prepay the costs.

Porter was released from Greene County in approximately July 2018 and went to Iroquois County, Illinois jail.  Porter testified in his deposition in January 2020 that he had not obtained any

further treatment for the cyst and has not had surgery to remove the cyst. Porter testified after he was released from jail in August or September 2019 he did go to see Dr. Gibson without an appointment and was told he needed to get insurance to have the surgery performed.

<center>STANDARD</center>

Summary judgment is proper where, viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1359 (8th Cir. 1993). "Where there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate." *Quinn v. St. Louis County*, 653 F.3d 745, 750 (8th Cir. 2011). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets the initial step, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To satisfy this burden, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

A question of material fact is not required to be resolved conclusively in favor of the party asserting its existence. Rather, all that is required is sufficient evidence supporting the factual dispute that would require a jury to resolve the differing versions of truth at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248-249. Further, determinations of credibility and the weight to give evidence are the functions of the jury, not the judge. *Wierman v. Casey's General Stores, et al.,* 638 F.3d 984, 993 (8th Cir. 2011).

<center>14</center>

<center>**Exhibit L**</center>

# DISCUSSION

Plaintiffs argue that Greene County Justice Center's policy requiring inmates to pre-pay for treatment of a serious medical need amounts to unconstitutional deliberate indifference.

The Greene County Jail's policy states:

> While incarcerated in the Greene County Jail, your medical care will be under the direction of the Jail's Physician. If you require care outside of the facility, you must assume responsibility for payment of that care.

Missouri Revised Statute § 221.120 states:

> If any prisoner confined in the county jail is sick and in the judgment of the jailer, requires the attention of a physician, dental care, or medicine, the jailer shall procure the necessary medicine, dental care or medical attention necessary or proper to maintain the health of the prisoner. The costs of such medicine, dental care, or medical attention shall be paid by the prisoner through any health insurance policy as defined in subsection 3 of this section, from which the prisoner is eligible to receive benefits. If the prisoner is not eligible for such health insurance benefits then the prisoner shall be liable for the payment of such medical attention, dental care, or medicine, and the assets of such prisoner may be subject to levy and execution under court order to satisfy such expenses in accordance with the provisions of section 221.070, and any other applicable law. The county commission of the county may at times authorize payment of certain medical costs that the county commission determines to be necessary and reasonable. As used in this section, the term "medical costs" includes the actual costs of medicine, dental care or other medical attention and necessary costs associated with such medical care such as transportation, guards and inpatient care.

The Eighth Circuit has defined "a serious medical need" as "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (internal citation omitted); and *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011); see also Model Civ. Jury Instr. 8th Cir. 4.22 (2018) (Definition: Serious Medical Need – Convicted Prisoners (42 U.S.C. § 1983)). Further, "medical conditions need not be emergencies in order to be considered serious." *Roe v. Crawford*, 514 F.3d 789, 801, n. 9 (8th Cir. 2008).

15

Further, in interpreting "a serious medical need" this Court found an inmate displaying significant symptoms interfering with the activities of daily life, suffering significant daily pain, or suffering from a deteriorating medical condition, may have a serious medical need that requires treatment even if the condition is neither "emergent nor urgent" as those terms may be used in the medical profession.

This Court previously found that a policy requiring inmates to prepay for medical services when a serious medical need exists fails to meet constitutional scrutiny and violates the Eighth Amendment of the U.S. Constitution. (Doc. 100). This Court concluded that "while an inmate can be held ultimately responsible for the cost of medical care, it is the jail's constitutional obligation to see that an inmate's serious medical need receives necessary medical attention." *Id.* Here, while ultimate financial responsibility for medical care costs is placed on the inmate, nothing in Greene County's written policy requires the inmate to make prepayment for treatment of a serious medical need. The policy on its face does not contain a constitutional violation. Therefore, the Court looks to whether Plaintiffs have shown Defendants have an unwritten practice, policy, or custom that violates Plaintiff's constitutional rights with regard to the medical treatment of serious medical needs.

Defendants argue that Plaintiffs have failed to state a § 1983 claim for medical mistreatment because they cannot establish a deliberate indifference to objectively serious medical needs. Under § 1983 a deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104–05, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976). Plaintiffs' § 1983 claims for this indifference may arise from a prison doctor's response to the prisoner's needs or from a prison guard's intentional denial or delay in allowing access to medical care, or intentional

16

**Exhibit L**

interference with the treatment prescribed. *Id.* "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id.* at 106.

In order to analyze whether Defendants were deliberately indifferent to Plaintiffs' serious medical needs the Court must look at both an objective and a subjective component. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (internal citation omitted). Plaintiffs must demonstrate: (1) that he suffered objectively serious medical needs, and (2) that Defendants actually knew of but deliberately disregarded those needs. *Id.* As this Court has already held, Plaintiffs must establish that their medical needs are serious. However, "the failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Id.* "As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." *Id.* "Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation." *Id.*

Defendants can be "found free from liability if they responded reasonably to a risk, even if the harm ultimately was not averted." *Id.* at 1240. If the medical records indicate that treatment was provided and physician affidavits indicate that the care provided was adequate, Plaintiff cannot create a question of fact by merely stating that he did not feel he received adequate treatment. *Id.*

When an "inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, 'the objective seriousness of the deprivation should also be measured by

**Exhibit L**

reference to the effect of delay in treatment.'" *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005)(citations omitted). An "inmate must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." *Id.* As to any sophisticated medical condition, "failure to produce expert testimony to prove that a lack of proper medical treatment" caused an inmate's injury is "fatal to [his] deliberate indifference claim as a matter of law." *Alberson v. Norris*, 458 F.3d 762, 766 (8th Cir. 2006). If an inmate fails to provide evidence to support his claim alleging damage from delay in care his claim must fail. *Id.* Further, if an inmate has evidence of "his diagnosis and treatment, but he offer[s] no evidence establishing that any delay in treatment had a detrimental effect, the inmate fail[s] to raise a genuine issue of fact on an essential element of his claim." *Jackson v. Riebold*, 815 F.3d 1114, 1120 (8th Cir. 2016) (citations omitted).

Under the subjective standard, an official is deliberately indifferent if he or she knows of and disregards an excessive risk to an inmate's health or safety, is aware that the inference could be drawn that a substantial risk of serious harm exists, and also draws that inference. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). The Supreme Court has likened deliberate indifference to a criminal recklessness standard. *Id.* at 839. Finally, deliberate indifference is greater than gross negligence and requires more than mere disagreement regarding medical treatment. *Pietrafeso v. Lawrence County, S.D.*, 452 F.3d 978, 983 (8th Cir. 2006).

The Court looks to each individual Plaintiff's claim under the § 1983 precedent.

**Hancock**

The Court previously held Hancock had a serious medical need with regard to his hernia. The record reflects that a physician opined that Hancock required surgery to repair the hernia falling under the definition of "a serious medical need" as "one that has been diagnosed by a

**Exhibit L**

physician as requiring treatment." However, the Court did not previously find sufficient evidence regarding Hancock's back pain, or arthritis, to constitute a serious medical need. The Court finds now, based on the additional evidence submitted through summary judgment, Hancock has not provided any basis for a serious medical need that arises from his alleged back pain or arthritis. Hancock's alleged complaints regarding back pain do not constitute a serious medical need under § 1983.[10]

Next, the Court looks to whether there is evidence of an inference of deliberate indifference to Hancock's constitutional rights. Evidence of possible negligence is insufficient to create an inference of deliberate indifference. *Dulany v. Carnahan*, 132 F.3d at 1240. "Grossly incompetent or inadequate care can constitute deliberate indifference in violation of the Eighth Amendment where the treatment is so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Id.* at 1240-1241.

The Court finds the facts in this case are similar to *Dulany v. Carnahan*. *Id.* In *Dulaney*, the Eighth Circuit affirmed the district court's order stating even though one of the plaintiffs alleged that that prison officials failed to follow the recommendations of her outside consultants "a prison doctor remains free to exercise his or her independent professional judgment and an inmate is not entitled to any particular course of treatment" *Id.* at 1240 (citation omitted). Further, the Eighth Circuit found that the plaintiff failed to demonstrate harm from any delay in treatment even if the plaintiff had a serious medical need. *Id.* The Eighth Circuit stated that the medical records indicated that prison physicians actively attended to the inmate's needs and provided

---

[10] Even if the Court were to find Hancock's back pain rose to the level of a serious medical need, for the reasons set forth herein his claim would still fail to establish a § 1983 claim of deliberate indifference.

diagnostic procedures in attempts to determine the cause of her pain and there was no evidence to indicate that the prison medical officials did not respond reasonably to her medical needs. *Id.*

Here, there is no evidence that the care provided to Hancock was grossly inadequate or resulted in any serious harm to Plaintiff. Plaintiff has failed to provide evidence from which a trier of fact could draw an inference that his medical treatment was grossly inappropriate or evidenced intentional maltreatment. Hancock was seen on numerous occasions by medical providers both at Greene County and outside the jail within the Mercy health system. He was not required to provide prepayment for that care. While Hancock was referred for elective hernia repair surgery while incarcerated at Greene County, there is no evidence that the surgery needed to be performed within a certain time frame or that Defendants' decisions regarding the surgery amounted to inadequate care or grossly incompetent care. Hancock was informed that if his conditions worsened, or if the hernia became strangulated, that he seek immediate care. However, there is no evidence any of these events occurred during his detention at Greene County. The Court notes that if Hancock's conditions had worsened to a point where the doctors deemed the hernia repair to be an immediate need then the refusal of such immediate treatment based on a requirement for prepayment could form the basis of a constitutional violation. Here, however, while Hancock was a certainly a candidate for elective hernia repair surgery, there was no specific timeframe during which the surgery needed to occur and Defendants' failure to schedule the surgery during the time he was incarcerated at Greene County does not amount to evidence of an indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

While this Court finds that Hancock had a serious medical need with regard to his hernia, the evidence does not support that the treatment he received was inadequate. Here, Dr. Wilkins remained free to exercise his independent medical judgment that the hernia repair surgery did not

20

need to be immediately scheduled.  That judgment was consistent with the advice of Dr. Luehr, the outside surgeon.  While Hancock was a candidate for the elective repair, there is no evidence of medical malpractice, let alone indifference, and it appears Defendants responded reasonably to the risk by monitoring his hernia for changes.  Here, the medical records indicate that Hancock was regularly provided medical treatment.

This finding is further supported by Defendants' retained expert's opinion stating that elective surgery can be offered but at no point did either Dr. Luehr or Dr. Johnson indicate that the surgery had to be done to avoid medical complications or symptoms.  Further, Dr. Luehr released Hancock back to Greene County stating that Hancock could be scheduled for "elective repair." While Hancock was a candidate for hernia repair, and ultimately received the surgery, Hancock simply cannot establish that any Defendant impermissibly denied or delayed necessary medical care due to prepayment issues.  In addition, the evidence supports that Plaintiff did not suffer any health consequence as a result of Defendants' actions or the alleged delay in the elective hernia repair.

There is no evidence that Defendants knew of and disregarded an excessive risk to Hancock's health or safety, were aware that such an inference could be drawn, that a substantial risk of serious harm existed, and also drew that inference.  See *Farmer v. Brennan,* 51 U.S. 825, 837 (1994).  Here, Hancock has provided no medical evidence or expert opinion that a delay in his hernia repair created any excessive risk or harm and certainly has no evidence amounting to a criminal recklessness standard.  *Id.* at 839.  Dr. Wilkins frequently examined and monitored Hancock and found no evidence of interference with daily activities or acute distress.  Hancock admits that he made only intermittent subjective complaints to Defendants when he came in for multiple visits during which he was seen for unrelated issues and did not report hernia pain.  At

**Exhibit L**

the time of his incarceration, Hancock's objective manifestations were taken, such as vital signs, heart rate, range of motion, and all medical examinations indicated Hancock was not in significant pain or distress. Dr. Wilkins was "free to exercise his independent medical judgment" in determining whether the hernia surgery needed to be immediately scheduled. Hancock has failed to provide any evidence that the alleged delay in treatment caused him injury or any medical reasons the hernia repair needed to be performed earlier than it was.

Finally, Hancock has submitted a supplemental memorandum in support of his opposition to summary judgment based on medical records obtained from the June 2020 surgery. (See Docs 293 and 296). Defendants have filed oppositions to Hancock's supplemental brief and records arguing the records are untimely, were not authorized to be filed as a "sur-response," were filed without any authority under the federal or local rules of civil procedure, and that Hancock did not seek, or obtain, leave to file any such additional evidence and arguments. While this Court agrees that Hancock's supplemental filings are not properly before the Court, even if they were, a review of the supplemental information taken in a light most favorable to Hancock does not alter this Court's rulings. At most, the supplemental filings and medical records establish that it was well over a year after Hancock had been transferred out of Greene County before his symptoms worsened. The medical records submitted well after the conclusion of summary judgment briefing reflect that in June 2020 (Hancock left Greene County in March 2019) he was seen for "pain started *several weeks ago* with diarrhea, nausea, and vomiting. The symptoms initially improved, but then returned much more severe 2 days go. He has been vomiting constantly in the last 2 days with sharp stabbing severe abdominal pain …. *The bulge started as a small lump* over a year ago, but *has increased in size significantly in the last few months*…." (*emphasis added*). The late submission of these medical records do not provide support that Hancock required surgery while

**Exhibit L**

in custody at Greene County.  During Hancock's incarceration at Greene County none of these symptoms existed.

Here, while the Court has found that Hancock had a serious medical need with regard to his hernia, he cannot establish that Defendants were deliberately indifferent to this serious medical need in order to prevail on a claim under § 1983.

**Blade**

After a review of the record before the Court, the Court finds Blade has failed to demonstrate he has a serious medical need with regard to his complaints regarding his eye.  Blade's vision, at his last appointment, had either improved or remained the same.  However, regardless of whether his eye complaints rise to the level of a serious medical need, Blade's claim would fail nonetheless as he cannot show a deliberate indifference to his medical needs.

Blade was seen multiple times by the medical staff at Greene County and was also sent to Optiland to be examined by an outside provider.  There is no evidence that Blade required a consultation with an ophthalmologist, however, he was referred to one only if he continued to see flashes of light.  Dr. White testified he fully expected Blade's complaints to resolve on their own. Defendants' retained experts also reviewed the medical records and concurred that there was nothing to indicate Blade required a consult with an ophthalmologist.  Blade argues he should have been sent to a specialist for another opinion.  However, Blade fails to demonstrate the need for any treatment and cannot establish he suffered any actual injury as a result of the failure of Defendants to send him to a specialist.  See e.g., *Laughlin v. Schriro,* 430 F.3d 927 (8th Cir. 2005).  Further, Blade has failed to provide any expert opinion that supports his argument that he received inadequate care, was denied a required treatment, or was injured by Defendants' actions.

23

There is simply no evidence to dispute that the care provided to Blade by Defendants met the standard of care.  Here, Defendants acted reasonably in providing care to Blade, including multiple examinations while at Greene County and a referral to Optiland for examination.  Blade has not provided any evidence that an alleged delay in treatment caused him harm or injury.  Here, there is no evidence Dr. Wilkins, or any Defendants, had actual knowledge of a risk of harm and failed to act.  See *Bryan v. Endell*, 141 F.3d 1290 (8th Cir. 1998).

The Optiland physician stated that Blade could be seen by an ophthalmologist if he continued to see floaters, but he did not recommend any immediate consultation or treatment.  When Blade complained of seeing floaters he was given a referral to an ophthalmologist by Dr. Wilkins.  However, Blade never saw the ophthalmologist.  The record contains a factual dispute regarding whether Blade had access to the $250 required prepayment for the appointment - either in his commissary account or from family/friends.

Regardless of the dispute over whether Blade had the funds to pay for the appointment, the issue before the Court is whether Defendants' failure to send Blade to an ophthalmologist constitutes a § 1983 violation.  First, there is no evidence to support that Blade's complaints of seeing floaters constituted a serious medical need.  Further, even if it does constitute a serious medical need, there is no evidence Defendants failed to provide treatment or that he required different treatment that rises to the level of deliberate indifference.  Here, the record establishes that Blade was seen on numerous occasions, was referred to Optiland, and that his vision had improved after he left Greene County and was evaluated at the Missouri Department of Corrections.  For the reasons set forth herein and discussed throughout, Blade has also failed to establish a § 1983 violation.

**Exhibit L**

**Porter**

After a review of the record before the Court, the Court finds Porter has failed to establish a violation of his rights under § 1983 based on his allegations related to the medical treatment he received related to the cyst on the roof of his mouth. Even if Porter's cyst rises to the level of a serious medical need, Porter has failed to establish a constitutional violation based on the treatment he received while at Greene County.

During his incarceration Porter was seen multiple times by Dr. Wilkins and ACH medical staff. Porter was also seen by outside medical providers at Cox North, Dr. Fenwick, and Dr. Gibson.[11] Dr. Fenwick, ENT, performed in-office procedures including fiberoptic laryngoscopy, which entailed the use of anesthesia and recommended an esophogram, also called a barium swallow, that was done at the Martin Center by Dr. McCann. Porter was not required to prepay for any of these medical examinations or procedures.

Porter was also seen by oral surgeon Dr. Gipson who recommended removal of the cyst, but similar to Hancock's evaluation, Dr. Gibson did not provide a specific timeframe for the removal of the cyst. Further, Porter did not request to be seen by any ACH medical staff regarding the cyst at numerous times during his incarceration and refused to see the dentist when scheduled to do so.

Here, despite the fact Defendants did not schedule Porter to have the cyst removed with Dr. Gibson, he was seen multiple times by ACH medical staff, and referred to a dentist, ENT and oral surgeon. Porter was provided with medical care and treatment and cannot establish deliberate indifference based on the standard set forth herein.[12] Porter was provided antibiotics which appear

---

[11] Porter was also seen by Dr. Greer at Ferrell Duncan regarding unrelated complaints.

[12] Dr. Wilkins referred Porter to a dentist and an ENT on several occasions, prescribed the medications recommended by the ENT and oral surgeon, ordered a CT scan per the

**Exhibit L**

to have reduced the swelling, along with oral hygiene.  Further, there is no evidence that the removal needed to be performed within a certain time frame, and to date, despite being released from incarceration, Porter has not sought to have the oral surgery.

The medical opinions set forth in the record state that Defendants met the standard of care, and Porter has provided no evidence to dispute the opinions provided.  Dr. Sclaroff, an oral surgery expert, opined that Porter did not have a serious medical need for oral surgery and that the care he received was not deliberately indifferent.  Porter has provided no medical opinions to the contrary and he has provided no opinion, other than his own, that the cyst was deteriorative.  Finally, Porter has failed to produce evidence to show any detrimental effect of a delay in the removal of the cyst, let alone expert opinion that he has suffered harm by not having the cyst removed.  Plaintiff testified in his deposition that he had not obtained any further treatment for the cyst either while incarcerated at Cook County jail, Iroquois County jail, or in Cape Girardeau, or since his release from custody in August or September 2019.

Here, even if the removal of the cyst constituted a serious medical need, Porter has failed to show deliberate indifference in the medical care provided by the Defendants to establish a § 1983 claim.  Porter simply cannot establish that the Defendants' conduct rose to the level of deliberate indifference.

---

recommendation of the ENT, ordered a referral for a barium swallow, ordered referral to a dentist, ordered a referral to the oral surgeon, and ordered the nursing personnel to schedule Plaintiff's oral surgery. Plaintiff did not prepay for the numerous hospital visits, doctor's visits, x-rays, or treatments he received while incarcerated at Greene County.

**CONCLUSION**

After a review of the record before the Court, and after considering the facts in a light most favorable to the Plaintiffs, the Court hereby **GRANTS** Defendants' motions for summary judgment for the reasons set forth herein. (Docs. 236; 239; 242; 245; 274 and 278).

**IT IS SO ORDERED.**

Date:   March 30, 2021                                    _/s/ Douglas Harpool_____
                                                                          Douglas Harpool
                                                                          United States District Judge

**Exhibit L**

LAWYERS
# KECK & PHILLIPS, L.L.C.
3140 E. DIVISION ST.
SPRINGFIELD, MO 65802
(417) 890-8989-office
(417) 890-8990-fax
damon@kpwlawfirm.com

<table>
<tr><td>Partners<br>PATRICIA KECK*<br>DAMON PHILLIPS**<br>JOHN SPURLOCK</td><td>Associate<br>SAMUEL PECK</td></tr>
<tr><td>Of Counsel<br>SEAN MCGINNIS<br>TY HARDEN<br>MIKE TIGHE</td><td>Investigator<br>MARLA MILLER</td></tr>
<tr><td>Outside Counsel<br>FRANK COTTEY</td><td>* Member, Licensed<br>  in Kansas and Arkansas<br><br>** Member</td></tr>
</table>

June 18, 2021

Via **Certified Mail 7018 1830 0001 1143 9797**
TO: Advanced Correctional Healthcare, Inc.
C/O: Western Litigation
8401 N. Central Expressway, Suite 900
Dallas, TX 75225

AND
Via **Certified Mail 7018 1830 0001 1143 9780** and Email at jessica.young@advancedch.com
Jessica Young, President & CEO
Advanced Correctional Healthcare, Inc.
3922 West Baring Trace
Peoria, IL 61615

Re: Claimant: Michael Hancock; Courtney Blake; and Anthony Porter
Michael Hancock et al Plaintiffs v. Jim C. Arnott et al, Defendants
Cause No. 6:18-cv-03170-MDH; and Eighth Circuit Court of Appeals Case Number 21-1954

Dear Advanced Correctional Healthcare:

As you already know, this firm represents Jim Arnott in his official capacity as the elected Sheriff of Greene County, Missouri. In his official capacity Sheriff Arnott operates the jail and is the law enforcement arm of Greene County, Missouri. As you are well-aware, Advanced Correctional Healthcare, Inc. ("ACH") contracted to provide expert medical services at the jail, as described in the attached Contract. (Ex. #1).

In 2018 three inmates, Michael D. Hancock ("Hancock"), Anthony T. Porter ("Porter"), and Courtney Blade ("Blade"), filed separate lawsuits under the civil rights act of 42 U.S.C. § 1983 in the United States District Court for the Western District of Missouri, which were then

consolidated into Hancock's case, Case Number 18-3170. Hancock, Porter, and Blade accused ACH, ACH's medical staff, the Sheriff in his official capacity, and the Sheriff's staff, of being deliberately indifferent to serious medical needs by not providing their desired treatment. Each of these inmates alleged that they were deliberately denied treatment pursuant to policies enacted and enforced at the jail that required pre-payment before treatment would be provided.

Per the Contract, ACH was required to procure insurance coverage for the Sheriff and his staff as to "*all claims…which may arise from or in connection with the Contractor providing the services contemplated in this Agreement*" and "*in the event that there is no such coverage, the Contractor shall defend, indemnify, and hold harmless the Sheriff and the County, and their respective officers, employees, agents, attorneys, successors, and assigns*." Ex. 1, Section 2.3. ACH's indemnity and hold harmless obligations under the Contract include "*reasonable attorneys' fees and other costs of litigation*…" Ex. 1, Section 2.1.

On September 7, 2018 the Sheriff through counsel tendered the consolidated Hancock case to ACH to provide a defense, either directly or through its insurer. ACH did not respond. Approximately two months later, on November 5, 2018 the Sheriff through counsel again tendered the consolidated Hancock case to ACH, and this time advised that a United States Marshal had recently delivered summonses, which set a deadline for them to file responsive pleadings. ACH waited until the last moment, and on November 20, 2018 answered the tenders through "Western Litigation," a risk management company hired by Arch Specialty Insurance Company, an insurer of ACH. In that response, ACH rejected tender and described that: "*In each of the three complaints filed, the individual prisoners are alleging that they were denied medical care and treatment because they refused to pay for the fees of consultation and treatment. In each instance, it is noted that neither ACH nor any of the employed staff involved in these matters had any involvement in the creation of rules and regulations related to the payment for outside medical providers and/or outside medical services for non-urgent, non-emergent care. Nor did they have any role in determining who pay for medical treatment. Further, as you are aware, Missouri law does not require anyone but the prisoner to pay or medical care.*" Here, ACH completely disregarded the nature of the inmate allegations, and that ACH was required to determine the need for inmate medical care, regardless of whether categorized as "non-urgent" or "non-emergent," including that ACH was expressly required to provide expert medical opinions as to whether inmates were medically fit for confinement and whether requested treatment was medically necessary. ACH also disregarded that it was contractually obligated to assist the Sheriff in enacting and revising medical treatment policies, and in fact had done so. Further, contrary to ACH's suggestion, Missouri law does not (and could not) violate the United States' Constitution by authorizing anyone to disregard a serious medical need based on inmate failure to pay. Further, ACH's position that the claims against the Sheriff and his staff did not relate to the services ACH was contracted to provide was contradicted by the simple fact that insurance defense counsel was hired to protect ACH and its staff.

All three plaintiffs in the consolidated Hancock case were represented by the law firm of Shook, Hardy & Bacon, one of the biggest law firms in Missouri, which has offices across the country, plus a London location. That firm assigned multiple attorneys to work on the consolidated case. ACH and its staff were separately defended in the Hancock case at the District

Electronically Filed - Greene - June 28, 2022 - 01:16 PM

Court level by insurance defense counsel. This firm defended the Sheriff and his jail administrators. For a brief moment, it appeared that ACH recognized the error of not providing a defense, and on January 14, 2019 ACH through Arthur Rose contacted the Sheriff via undersigned counsel to request a meeting. That same day, undersigned counsel contacted general counsel for ACH, Alex Kinzinger, to report the contact and to offer to attend the meeting. Attorney Kinzinger forwarded that communication to Jessica Young, who is both an attorney and the President of ACH. Ms. Young contacted undersigned counsel and asked about the conflict. In response, undersigned counsel explained in part that:

> …essentially, the allegations against Sheriff Arnott and his jail administrators are that they refused to substitute their judgment for ACH staff. All three inmates have alleged they should have been sent out of jail for free medical treatment. Our understanding is that they at best wanted elective treatment.

> … In any event, the gist is that the contract emphasizes that the Sheriff and his staff rely on ACH to determine whether inmates have serious medical needs, including whether they are fit for confinement, and whether inmate medical issues regard elective treatment. The contract also requires ACH to maintain insurance coverage for my clients, and ACH is responsible in the event coverage is denied.

> Strangely, a risk management company denied the tender on behalf of ACH; and at the same time said it had forwarded the tender to your insurer but expected it to be denied due to lack of coverage. I admit I do not understand how that company purported to act for you, or, if it was looking out for you, why it would argue ACH does not have insurance coverage applicable to my clients.

The next day, on January 15, 2019, Ms. Young sent undersigned counsel notice that ACH would not renew the Contract after it expired.

At the District Court level each party relied heavily on voluminous medical records and expert opinions to demonstrate the appropriateness of medical care provided to the inmates. In granting summary judgment in favor of all the defendants, the District Court issued a twenty-seven (27) page order, which focused in detail on the nature of the various medical complaints and care. Despite ACH's continued awareness of the nature of the litigation, ACH never reconsidered its earlier denial of tender and request for indemnification.

Hancock (although not Porter or Blade) filed a notice of appeal to the Eighth Circuit of the United States Court of Appeals. ACH is aware of and continues to be represented by insurance defense counsel in the appeal. There can be zero doubt that the appeal relates to the services ACH was obligated to provide in the Contract.

Accordingly, we sincerely hope that ACH will reconsider its earlier denial of tender and request for indemnification, and:

- Confirm that ACH will provide the costs of defending against the Hancock appeal;

- Acknowledge ACH's obligation to indemnify and hold harmless the Sheriff and his staff as required by the Contract.

- Provide reimbursement for outstanding defense costs incurred as of June 18, 2021, totaling $119,230.45 plus expense disbursements of $12,463.97;

Additionally, please provide a complete and full copy of *each and every* insurance policy that ACH claims it procured to provide coverage the Sheriff and his staff as required by the Contract.

Cordially,

KECK & PHILLIPS, L.L.C.

*/s/Damon S. Phillips*
Damon S. Phillips

DP/mm
Enclosure, Ex. #1

Electronically Filed - Greene - June 28, 2022 - 01:16 PM

Electronically Filed - Greene - June 28, 2022 - 01:16 PM



Peter R. Jennetten
227 N.E. Jefferson Ave.
Peoria, IL 61602

T: (309) 674-1133
F: (309) 674-6503
pjennetten@quinnjohnston.com

July 7, 2021

Via Email: damon@kpwlawfirm.com
Damon S. Phillips
Keck & Phillips, L.L.C.
3140 E. Division St.
Springfield, MO 65802

> Re: Claimant: Michael Hancock; Courtney Blake; and Anthony Porter
> Michael Hancock et al Plaintiffs v. Jim C. Arnott et al, Defendants
> Cause No. 6:18-cv-03170-MDH; and Eighth Circuit Court of Appeals
> Case Number 21-1954

Dear Mr. Phillips:

Your letter of June 18, 2021 was forwarded to me for a response. I understand that your clients are demanding reimbursement of defense costs under the contract between ACH and Greene County.

The indemnity clause in Section 2.1 provides that "the Contractor shall hold harmless and indemnify the Sheriff and the County… against any claims… arising by reason of any act, negligent or otherwise, of the Contractor or its personnel… This provision does not, however, require the Contractor to indemnify or hold harmless the Sheriff or the County from their own negligence." The full section is:

2.1.  **Hold Harmless / Indemnification:** To the fullest extent permitted by law, the Contractor shall hold harmless and indemnify the Sheriff and the County, including their respective employees, agents, attorneys, successors, and assigns, against any claims, losses, damages, including reasonable attorneys' fees and other costs of litigation, and expenses, arising by reason of any act, negligent or otherwise, of the Contractor or its personnel, including the individuals, entities, employees, independent contractors, subcontractors (meaning anyone, including but not limited to consultants having a contract with the Contractor or a subcontract for part of the services), successors, agents, and assigns through which the Contractor shall act in relation to providing the services detailed herein, including anyone directly or indirectly employed by the Contractor or by any subcontractor, or of anyone for whose acts the Contractor or its subcontractor may be liable, in connection with providing these services, and related to the medical services detailed herein. This provision does not, however, require the Contractor to indemnify or hold harmless the Sheriff or the County from their own negligence.

**PEORIA | SPRINGFIELD**

**Exhibit N**

The insurance clause similarly requires the Contractor to procure "insurance coverage… against all claims… which may arise from or in connection with the Contractor providing the services contemplated in this Agreement."

2.3. **Insurance:** Without limiting the Contractor's indemnification obligations, the Contractor shall procure and maintain, at its sole cost and for the duration of this Agreement, insurance coverage as provided herein, against all claims for injuries against persons or damages to property which may arise from or in connection with the Contractor providing the services contemplated in this Agreement. The Contractor will name the Sheriff and the County, including their respective employees, agents, attorneys, successors, and assigns, as additional insureds under its commercial automobile, commercial general, and professional liability portions of insurance, as well as provide the County and Sheriff with a Certificate of Insurance SPECIFIC TO CORRECTIONAL FACILITIES AND PUBLIC ENTITIES evidencing the terms of the insurance coverage and policy limits. Each such policy

The purpose of these clauses is to provide indemnity and insurance coverage where a plaintiff attempts to impose some vicarious liability upon the Sheriff or the County for the actions or decisions of ACH staff. The Porter, Blade, and Hancock cases did not attempt to make the Sheriff or the County vicariously liable for the actions of the ACH staff. The Sheriff and County must defend and assume responsibility for any judgment arising from their own policies and actions.

The consolidated lawsuit was a direct challenge to the Missouri statute, RSMo §221.120, which provides in part: "the prisoner shall be liable for the payment of such medical attention, dental care, or medicine…" and to Greene County's written policies, which tell inmates that "If you require care outside of the facility, you must assume responsibility for payment of that care." See, Order [300] at 3, 15 (court order granting summary judgment, hereafter "Order"). The plaintiffs claimed that these policies were enforced to require prepayment by the inmate even for necessary medical care for serious medical needs and that any outside care would be denied if the inmate could not prepay for it.

The complaints expressly alleged that the jail had a policy of requiring prepayment for medical care. See e.g. Hancock Second Amended Complaint [120] at¶20-21; Porter Second Amended Complaint [121] at¶20-23; Blade Second Amended Complaint [120] at¶16-17. ACH did not create the policy, nor did it write the Inmate Rules and Regulations which were quoted and upon which the claims were based. The claims were frivolous, but that does not change the nature of the assertions: the claims against your clients were based upon their actions and their policies, not ACH's actions or policies.

Electronically Filed - Greene - June 28, 2022 - 01:16 PM

Exhibit N

Electronically Filed - Greene - June 28, 2022 - 01:16 PM

Western Litigation, Inc.
July 7, 2021
Page 3

The Court summarized the claim: "Plaintiffs argue that Greene County Justice Center's policy requiring inmates to pre-pay for treatment of a serious medical need amounts to unconstitutional deliberate indifference." Order at 15. The Court noted, referencing its prior order, that requiring inmates to prepay for necessary medical services for a serious medical need is a constitutional violation (Order at 16), but found on summary judgment that the written policy, on its face, was not a violation of the constitution. *Id.* Rather than address whether there was an unconstitutional custom or practice of denying such care, the Court instead analyzed each plaintiff's care and found either that they did not have a serious medical need or that the jail staff were not deliberately indifferent. Order at 18-26.

Returning to the indemnity clause, the claims against the Sheriff and correctional staff are not claims "arising by reason of any act" of ACH or its staff. The claims against the sheriff and correctional staff arose solely from their own policies. Looking at the insurance clause, the claims do not "arise from or in connection with the Contractor providing the services." They arise from the policies created and implemented (allegedly) by the Sheriff and the jail. Plaintiffs' claims were not that they were misdiagnosed or mistreated. Plaintiffs claimed that they were not allowed to have treatment recommended by the medical staff because of the jail's policies (the plaintiffs were wrong, but that does not change the nature of their claim).

   It is my understanding that the insurer, Arch, was informed of your request for coverage and they can respond to that request. Enclosed is a copy of the policy. With respect to the tender to ACH under the contract, it remains our position that your clients are not entitled to defense or indemnity from ACH.

                         Very truly yours,

                         QUINN JOHNSTON

                    By: _____
                         Peter R. Jennetten

PRJ:kp
Enclosure

4811-6217-1632, v. 3

Exhibit N

# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

MICHAEL D. HANCOCK, PLAINTIFF,    )
    )
v.    )    Case No. 6:18-cv-03170-MDH-P
    )
JIM ARNOTT, ET AL., DEFENDANTS,    )    Consolidated with Cases 18-4114 and
    )    18-3212
    )
ANTHONY T. PORTER, PLAINTIFF,    )
    )
v.    )    Case No. 6:18-cv-04114-MDH-P
    )
MASSIE, ET AL., DEFENDANTS,    )
    )
    )
COURTNEY BLADE, PLAINTIFF,    )
    )
v.    )    Case No.:  6:18-cv-03212-MDH-P
    )
ADVANCED CORRECTIONAL    )
HEALTHCARE, ET AL., DEFENDANTS.    )

## MICHAEL D. HANCOCK'S FIRST AMENDED COMPLAINT

Plaintiff Michael D. Hancock, for his claims against Royce Denny, David Johnson, Jeff Coonrod, Melissa Howell, Jason Wilkins, Eric Partenheimer, Advanced Correctional Healthcare, Jim Arnott, and Greene County, alleges as follows:

1.    Plaintiff Michael D. Hancock is a citizen of Missouri who currently resides at South Central Correctional Center, 255 W. Highway 32, Licking, Missouri 65542.

2.    Defendant Arnott is a citizen of Missouri, and at all times relevant to this action was the Sheriff of Greene County, Missouri. As Sheriff of Greene County, Missouri, Arnott set the rules, regulations, and policies of the Greene County Justice Center (the "Jail").

Case 6:22-cv-03093-MDH Document 1-1 Filed 07/29/22 Page 174 of 195
Case 6:18-cv-03170-MDH Document 120 Filed 07/15/19 Page 1 of 195
**Exhibit O**

3. Defendant Denny is a citizen of Missouri, and at all times relevant to this action was a law enforcement official of Greene County, Missouri. As an official for Greene County, Denny set and enforced the rules, regulations, and policies of the Jail.

4. Defendant Howell is a citizen of Missouri, and at all times relevant to this action was a law enforcement official of Greene County, Missouri. As an official for Greene County, Denny set and enforced the rules, regulations, and policies of the Jail.

5. Defendant Johnson is a citizen of Missouri, and at all times relevant to this action was a law enforcement official of Greene County, Missouri. As an official for Greene County, Denny set and enforced the rules, regulations, and policies of the Jail.

6. Defendant Coonrod is a citizen of Missouri, and at all times relevant to this action was a law enforcement official of Greene County, Missouri. As an official for Greene County, Denny set and enforced the rules, regulations, and policies of the Jail.

7. Defendant Advanced Correctional Healthcare, Inc. is a citizen of Illinois and at all times relevant to this action contracted with the Jail to provide medical care and treatment to the inmates at that facility. As an official for Greene County, Denny set and enforced the rules, regulations, and policies of the Jail.

8. Defendant Jason Wilkins is a citizen of Missouri and at all times relevant to this action was the Jail Physician and an employee of Defendant Advanced Correctional Healthcare.

9. Defendant Partenheimer is a citizen of Missouri and at all times relevant to this action was the supervisory nurse at the Jail and an employee of Defendant Advanced Correctional Healthcare.

4824-8542-4794

**Exhibit O**

10.     Defendant Greene County is a municipal corporation organized under the laws of the State of Missouri. During all times relevant to this action, acting through its Sheriff's Office, Greene County maintained and operated the Jail.

## JURISDICTION AND VENUE

11.     Mr. Hancock has brought claims for the violation of his constitutional rights as provided by 42 U.S.C. § 1983. Consequently, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

12.     Pursuant to 28 U.S.C. § 1391, venue of this action properly lies in the United States District Court for the Western District of Missouri, Southern Division.

## ALLEGATIONS COMMON TO ALL COUNTS

13.     Mr. Hancock hereby incorporates by reference allegations of Paragraphs 1 through 12 above as if set forth fully herein.

14.     Mr. Hancock arrived at the Jail shortly after undergoing surgery for gunshot wounds.

15.     The surgery caused him to suffer from a ventral hernia.

16.     Mr. Hancock sought treatment for his hernia from jail medical staff, including Defendant Wilkins and Defendant Partenheimer.

17.     The medical staff sent Mr. Hancock to a trauma surgeon at Mercy Hospital for a follow up to treat his ventral hernia.

18.     The Mercy trauma surgeon recommended Mr. Hancock undergo hernia repair surgery and had Mr. Hancock sign paperwork consenting to surgery.

19.     The hospital required prepayment of a $3,500 fee for the surgery.

4824-8542-4794

Case 6:22-cv-03098-MDH   Document 1-12   Filed 07/29/22   Page 176 of 195
Case 6:19-cv-03370-MDH   Document 1-20   Filed 07/13/19   Page 3 of 19

Exhibit O

Electronically Filed - Greene - June 28, 2022 - 01:16 PM

20.     Defendants Wilkins, Howell, and Partenheimer informed Mr. Hancock that it was the Jail's policy that Mr. Hancock must personally pre-pay the fee for the surgery.

21.     This policy is explicitly stated in Section 6(C) of the Greene County's Inmate Rules and Regulations which states, in part: "If you require case outside of the facility, you must assume responsibility for payment of that care."

22.     Defendants were responsible for creating and enforcing this policy.

23.     Mr. Hancock, at all relevant times, was indigent.

24.     Mr. Hancock told Defendants he could not afford the fee for the surgery.

25.     Defendant Wilkins admits that Mr. Hancock's hernia condition needs treatment.

26.     Based on the Jail's policy of requiring pre-payment of the fee, Defendants denied Mr. Hancock access to recommended hernia surgery.

27.     Mr. Hancock's hernia is actively getting larger, and often requires him to push the protruding hernia back inside his body.

28.     Mr. Hancock's hernia causes him physical and emotional discomfort and interferes with his daily activities.

29.     Mr. Hancock also suffers from degenerative arthritis, causing severe pain to his back.

30.     On several occasions, Defendants refused to treat Mr. Hancock's back pain, including refusing to send him to see a specialist, because he was unable to prepay for treatment.

31.     Mr. Hancock presented his claims through the Jail's grievance procedure and was denied.

4824-8542-4794

Case 6:22-cv-03093-MDH   Document 1-20   Filed 07/29/22   Page 177 of 195
Case 6:19-cv-03137-MDH   Document 1-20   Filed 04/23/19   Page 4 of 195
Exhibit O

## COUNT 1 – VIOLATION OF 42 U.S.C. § 1983:
## CRUEL AND UNUSUAL PUNISHMENT (All Defendants)

32.     Mr. Hancock hereby incorporates by reference allegations of Paragraphs 1 through 31 above as if set forth fully herein.

33.     Mr. Hancock suffered from objectively serious medical needs.

34.     Defendants actually knew about Mr. Hancock's objectively serious medical needs and deliberately disregarded those need by withholding necessary medical care for want of payment from an inmate who could not pay.

35.     It was the common practice, policy, custom, habit and accepted culture for Jail personnel to deny all inmates outside medical care if the inmates could not afford to pre-pay for it.

36.     A policy requiring inmates to prepay for medical services when a serious medical need exists violates the Eighth Amendment of the United States Constitution.

37.     Defendants' denial of medical care constitutes deliberate indifference to Mr. Hancock's serious medical needs.

38.     As a direct and proximate result of Defendants' actions, Mr. Hancock was deprived of his constitutional right to be free from cruel and unusual punishment. This deprivation caused him, and continues to cause him, to suffer significant physical, mental, and emotional injuries.

39.     At all times, Defendants were acting under color of state law.

40.     Defendants' actions were maliciously and recklessly indifferent to Mr. Hancock's constitutional rights. Mr. Hancock is therefore entitled to an award of punitive damages.

41.     Pursuant to 42 U.S.C. § 1988, Defendants are liable for Mr. Hancock's reasonable attorneys' fees and costs incurred in bringing this action.

**Exhibit O**

WHEREFORE, Mr. Hancock prays for judgment on Count 1 of actual damages, for punitive damages sufficient and necessary to punish Defendants and to deter others from like conduct; for attorney's fees, costs and disbursements as allowed under 42 U.S.C. § 1988; and for such other and further relief as the Court deems just and equitable.

Dated:  July 15, 2019                             Respectfully submitted,


                                                  */s/ Michael J. Cappo*
                                                  Charles C. Eblen, MO Bar #55166
                                                  Kerensa Cassis, MO Bar #67408
                                                  Michael J. Cappo, MO Bar #65823
                                                  Jordan A. Kane, MO Bar #71028
                                                  SHOOK, HARDY & BACON L.L.P.
                                                  2555 Grand Blvd.
                                                  Kansas City, MO 64108
                                                  Telephone:  816-474-6550
                                                  Facsimile:   816-421-5547
                                                  ceblen@shb.com
                                                  kcassis@shb.com
                                                  mcappo@shb.com
                                                  jkane@shb.com

                                                  **Attorneys for Plaintiffs**

6

4824-8542-4794

Case 6:22-cv-03093-MDH   Document 1-120   Filed 07/29/22   Page 179 of 195
Case 6:19-cv-03317-MDH   Document 1-120   Filed 07/15/19   Page 6 of 195

Exhibit O

Electronically Filed - Greene - June 28, 2022 - 01:16 PM

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 15, 2019, I electronically filed the above with the Clerk of the

Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of

record.

/s/ Michael J. Cappo
Attorney for Plaintiffs

7

4824-8542-4794

**Exhibit O**

# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

MICHAEL D. HANCOCK, PLAINTIFF, )
)
v. )     Case No. 6:18-cv-03170-MDH-P
)
JIM ARNOTT, ET AL., DEFENDANTS, )     Consolidated with Cases 18-4114 and
)     18-3212
ANTHONY T. PORTER, PLAINTIFF, )
)
v. )     Case No. 6:18-cv-04114-MDH-P
)
MASSIE, ET AL., DEFENDANTS, )
)
COURTNEY BLADE, PLAINTIFF, )
)
v. )     Case No.:  6:18-cv-03212-MDH-P
)
ADVANCED CORRECTIONAL )
HEALTHCARE, ET AL., DEFENDANTS. )

## ANTHONY T. PORTER'S SECOND AMENDED COMPLAINT

Plaintiff Anthony T. Porter, for his claims against Defendants Massie, Jason Wilkins, Advanced Correctional Healthcare, Jim Arnott, and Greene County, alleges as follows:

1.     Plaintiff Anthony Porter is a citizen of Missouri whose current address is unknown.

2.     Defendant Arnott is a citizen of Missouri, and at all times relevant to this action was the Sheriff of Greene County, Missouri. As Sheriff of Greene County, Missouri, Arnott set the rules, regulations, and policies of the Greene County Justice Center (the "Jail").

3.     Defendant Advanced Correctional Healthcare, Inc. is a citizen of Illinois and at all times relevant to this action contracted with the Jail to provide medical care and treatment to the inmates at that facility.

4823-3626-4858

Case 6:22-cv-03093-MDH-P Document 1-12 Filed 07/29/22 Page 181 of 195
Case 6:18-cv-03170-MDH-P Document 121 Filed 07/13/19 Page 1 of 5
Exhibit P

4.     Defendant Jason Wilkins is a citizen of Missouri and at all times relevant to this action was an employee of Defendant Advanced Correctional Healthcare.

5.     Defendant Massie is a citizen of Missouri and at all times relevant to this action was an employee of Defendant Advanced Correctional Healthcare.

6.     Defendant Greene County is a municipal corporation organized under the laws of the State of Missouri. During all times relevant to this action, acting through its Sheriff's Office, Greene County maintained and operated the Jail.

## JURISDICTION AND VENUE

7.     Mr. Porter has brought claims for the violation of his constitutional rights as provided by 42 U.S.C. § 1983. Consequently, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

8.     Pursuant to 28 U.S.C. § 1391, venue of this action properly lies in the United States District Court for the Western District of Missouri, Southern Division.

## ALLEGATIONS COMMON TO ALL COUNTS

9.     Mr. Porter hereby incorporates by reference allegations of Paragraphs 1 through 8 above as if set forth fully herein.

10.     While incarcerated at the Jail, Mr. Porter's medical care was under the direction of the Jail's physician, Defendant Wilkins. Defendant Wilkins purported to have the final decision on Mr. Porter's access to medical care.

11.     While incarcerated at the Jail, Defendant Massie, a nurse for Advanced Correctional Healthcare, worked under the supervision of Defendant Wilkins to respond to Mr. Porter's medical care requests.

12.     Mr. Porter, at all relevant times, was indigent.

4823-3626-4858

2

Case 6:22-cv-03093-MDH   Document 1-12   Filed 07/29/22   Page 182 of 195
Case 6:19-cv-03317-MDH   Document 1   Filed 07/15/19   Page 2 of 6

Exhibit P

Electronically Filed - Greene - June 28, 2022 - 01:16 PM

13.     Mr. Porter suffered from a large, infected cystic lesion on the roof of his mouth, so severe that it threatened to deteriorate the bone structure from the right orbital socket in his jaw down to his teeth, breaking his jaw.

14.     A physician diagnosed Mr. Porter's cyst as warranting surgery.

15.     On February 11, 2018, Mr. Porter presented to the Jail's health care office to be seen for his cyst.

16.     Defendant Massie refused to provide Mr. Porter medical treatment for his cyst because Mr. Porter would not re-sign a sick call form authorizing monetary deductions from his inmate account.

17.     Mr. Porter explained to Defendant Massie that he was indigent and unable to afford to pay for medical treatment for his cyst.

18.     Mr. Porter was seen by Defendant Wilkins on April 19, 2018.

19.     Because Mr. Porter could not pre-pay for treatment for his cyst, Defendants denied him such treatment, including a surgery for his cyst.

20.     Defendants promulgated and adhered to a policy, custom, or practice laid out in Section 6(C) of the Inmate Rules and Regulations, which states, in part: "If you require care outside of the facility, you must assume responsibility for payment of that care."

21.     Pursuant to Section 6, Defendants had a custom, policy, and practice of denying all inmates any outside medical care if inmates are unable to pre-pay for it.

22.     This policy, practice, or custom originates from Defendants' erroneous position that Missouri law does not require anyone but the prisoner to pre-pay for medical care.

23.     Defendants, in denying Mr. Porter medical care, applied this policy, custom, and practice laid out in Section 6 of the Inmate Rules and Regulations.

**Exhibit P**

24.     Mr. Porter presented his claim through the Jail's grievance procedure and was denied.

<div align="center">

**COUNT 1 – VIOLATION OF 42 U.S.C. § 1983:**
**CRUEL AND UNUSUAL PUNISHMENT (All Defendants)**

</div>

25.     Mr. Porter hereby incorporates by reference allegations of Paragraphs 1 through 24 above as if set forth fully herein.

26.     Mr. Porter suffered from an objectively serious medical need.

27.     Defendants actually knew about Mr. Porter's objectively serious medical need and deliberately disregarded that need by withholding necessary medical care for want of payment from an inmate who could not pay.

28.     It was the common practice, policy, custom, habit and accepted culture for Jail personnel to deny an inmate outside medical care if the inmate could not afford to pre-pay for it.

29.     A policy requiring inmates to prepay for medical services when a serious medical need exists violates the Eighth Amendment of the United States Constitution.

30.     Defendants applied this policy when denying Mr. Porter medical services.

31.     Defendants' denial of medical care constitutes deliberate indifference to Mr. Porter's serious medical needs.

32.     As a direct and proximate result of Defendants' actions, Mr. Porter was deprived of his constitutional right to be free from cruel and unusual punishment. This deprivation caused him, and continues to cause him, to suffer significant physical, mental, and emotional injuries, including worsening his infected cyst.

33.     At all times, Defendants were acting under color of state law.

34.     Defendants' actions were maliciously and recklessly indifferent to Mr. Porter's constitutional rights. Mr. Porter is therefore entitled to an award of punitive damages.

4823-3626-4858                                4

Case 6:22-cv-03093-MDH   Document 1-12   Filed 07/29/22   Page 184 of 195
Case 6:19-cv-03517-MDH   Document 1   Filed 07/23/19   Page 4 of 5

**Exhibit P**

Electronically Filed - Greene - June 28, 2022 - 01:16 PM

35.     Pursuant to 42 U.S.C. § 1988, Defendants are liable for Mr. Porter's reasonable attorneys' fees and costs incurred in bringing this action.

**WHEREFORE**, Mr. Porter prays for judgment on Count 1 of actual damages, for punitive damages sufficient and necessary to punish Defendants and to deter others from like conduct; for attorney's fees, costs and disbursements as allowed under 42 U.S.C. § 1988; and for such other and further relief as the Court deems just and equitable.

Dated:  July 15, 2019                                    Respectfully submitted,


                                                         */s/ Michael J. Cappo*
                                                         Charles C. Eblen, MO Bar #55166
                                                         Kerensa Cassis, MO Bar #67408
                                                         Michael J. Cappo, MO Bar #65823
                                                         Jordan A. Kane, MO Bar #71028
                                                         SHOOK, HARDY & BACON L.L.P.
                                                         2555 Grand Blvd.
                                                         Kansas City, MO 64108
                                                         Telephone:  816-474-6550
                                                         Facsimile:   816-421-5547
                                                         ceblen@shb.com
                                                         kcassis@shb.com
                                                         mcappo@shb.com
                                                         jkane@shb.com

                                                         ***Attorneys for Plaintiffs***

**Exhibit P**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 15, 2019, I electronically filed the above with the Clerk of the

Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of

record.

/s/ Michael J. Cappo
Attorney for Plaintiffs

4823-3626-4858

6

Case 6:22-cv-03093-MDH Document 1-121 Filed 07/29/22 Page 186 of 195
Case 6:19-cv-03170-MDH Document 121 Filed 07/15/19 Page 6 of 6

**Exhibit P**

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

MICHAEL D. HANCOCK, PLAINTIFF,      )
     )
v.      )     Case No. 6:18-cv-03170-MDH-P
     )
JIM ARNOTT, ET AL., DEFENDANTS,      )     Consolidated with Cases 18-4114 and
     )     18-3212
ANTHONY T. PORTER, PLAINTIFF,      )
     )
v.      )     Case No. 6:18-cv-04114-MDH-P
     )
MASSIE, ET AL., DEFENDANTS,      )
     )
COURTNEY BLADE, PLAINTIFF,      )
     )
v.      )     Case No.:  6:18-cv-03212-MDH-P
     )
ADVANCED CORRECTIONAL      )
HEALTHCARE, ET AL., DEFENDANTS.      )

## COURTNEY BLADE'S SECOND AMENDED COMPLAINT

Plaintiff Courtney Blade, for his claims against Jason Wilkins, Advanced Correctional Healthcare, Jim Arnott, and Greene County, alleges as follows:

1.     Plaintiff Courtney Blade is a citizen of Missouri who currently resides at Fulton Reception & Diagnostic Center1393 State Road O, Fulton, MO  65251.

2.     Defendant Arnott is a citizen of Missouri, and at all times relevant to this action was the Sheriff of Greene County, Missouri. As Sheriff of Greene County, Missouri, Arnott set the rules, regulations, and policies of the Greene County Justice Center (the "Jail").

3.     Defendant Advanced Correctional Healthcare, Inc. is a citizen of Illinois and at all times relevant to this action contracted with the Jail to provide medical care and treatment to the inmates at that facility.

4849-2061-1482

Case 6:22-cv-03093-MDH   Document 1-122   Filed 07/29/22   Page 187 of 195
Case 6:18-cv-03170-MDH   Document 122   Filed 04/23/19   Page 1 of 8

Exhibit Q

4.      Defendant Wilkins is a citizen of Missouri and at all times relevant to this action was an employee of Defendant Advanced Correctional Healthcare.

5.      Defendant Greene County is a municipal corporation organized under the laws of the State of Missouri. During all times relevant to this action, acting through its Sheriff's Office, Greene County maintained and operated the Jail.

## JURISDICTION AND VENUE

6.      Mr. Blade has brought claims for the violation of his constitutional rights as provided by 42 U.S.C. § 1983. Consequently, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

7.      Pursuant to 28 U.S.C. § 1391, venue of this action properly lies in the United States District Court for the Western District of Missouri, Southern Division.

## ALLEGATIONS COMMON TO ALL COUNTS

8.      Mr. Blade hereby incorporates by reference allegations of Paragraphs 1 through 7 above as if set forth fully herein.

9.      While incarcerated at the Jail, Mr. Blade's medical care was under the direction of the Jail's physician, Defendant Wilkins. Defendant Wilkins purported to have the final decision on Mr. Porter's access to medical care.

10.     Mr. Blade, at all relevant times, was indigent.

11.     While detained at the Jail, another inmate stabbed Mr. Blade in the eye, resulting in an eye injury that causes him to see black spots, floaters, and flashes of light.

12.     Mr. Blade sought treatment from Jail medical staff, including Defendant Wilkins, who sent him to an eye doctor at Optiland.

4849-2061-1482
2
Case 6:22-cv-03093-MDH Document 1-1 Filed 07/29/22 Page 188 of 195
Case 6:19-cv-03370-MDH Document 122 Filed 07/13/19 Page 2 of 5
Exhibit Q

Electronically Filed - Greene - June 28, 2022 - 01:16 PM

13.     The Optiland doctor referred Mr. Blade to an ophthalmologist if he continued to have symptoms, or his symptoms worsened.

14.     The ophthalmologist required pre-payment of a $250 pre-consultation fee to schedule an appointment for Mr. Blade.

15.     Because of his indigency, Mr. Blade could not personally pre-pay the $250 pre-consultation fee.

16.     The Jail follows a policy requiring inmates to pre-pay outside medical fees.

17.     Section 6(C) of the Greene County's Inmate Rules and Regulations states this policy: "If you require case outside of the facility, you must assume responsibility for payment of that care."

18.     Based on the Jail's policy requiring pre-payment of the fee, Defendants denied Mr. Blade access to an ophthalmologist.

<u>COUNT 1 – VIOLATION OF 42 U.S.C. § 1983:</u>
<u>CRUEL AND UNUSUAL PUNISHMENT (All Defendants)</u>

19.     Mr. Blade hereby incorporates by reference allegations of Paragraphs 1 through 18 above as if set forth fully herein.

20.     Mr. Blade suffered from an objectively serious medical need.

21.     Defendants actually knew about Mr. Blade's objectively serious medical need and deliberately disregarded that need by withholding necessary medical care for want of payment from an inmate who could not pay.

22.     It was the common practice, policy, custom, habit and accepted culture for Jail personnel to deny all inmates outside medical care if the inmates could not afford to pre-pay for it.

4849-2061-1482                                                3

Case 6:22-cv-03093-MDH   Document 1-1   Filed 07/29/22   Page 189 of 195
Case 6:19-cv-03317-MDH   Document 1-1   Filed 07/23/19   Page 3 of 5
Exhibit Q

23.     A policy requiring inmates to prepay for medical services when a serious medical need exists violates the Eighth Amendment of the United States Constitution.

24.     Defendants' denial of medical care constitutes deliberate indifference to Mr. Blade's serious medical needs.

25.     As a direct and proximate result of Defendants' actions, Mr. Blade was deprived of his constitutional right to be free from cruel and unusual punishment. This deprivation caused him, and continues to cause him, to suffer significant physical, mental, and emotional injuries.

26.     At all times, Defendants were acting under color of state law.

27.     Defendants' actions were maliciously and recklessly indifferent to Mr. Blade's constitutional rights. Mr. Porter is therefore entitled to an award of punitive damages.

28.     Pursuant to 42 U.S.C. § 1988, Defendants are liable for Mr. Blade's reasonable attorneys' fees and costs incurred in bringing this action.

**WHEREFORE**, Mr. Blade prays for judgment on Count 1 of actual damages, for punitive damages sufficient and necessary to punish Defendants and to deter others from like conduct; for attorney's fees, costs and disbursements as allowed under 42 U.S.C. § 1988; and for such other and further relief as the Court deems just and equitable.

Dated:  July 15, 2019                    Respectfully submitted,

                                                   */s/ Michael J. Cappo*
                                                   Charles C. Eblen, MO Bar #55166
                                                   Kerensa Cassis, MO Bar #67408
                                                   Michael J. Cappo, MO Bar #65823
                                                   Jordan A. Kane, MO Bar #71028
                                                   SHOOK, HARDY & BACON L.L.P.
                                                   2555 Grand Blvd.
                                                   Kansas City, MO 64108
                                                   Telephone:  816-474-6550
                                                   Facsimile:  816-421-5547

4849-2061-1482                                4

Case 6:22-cv-03093-MDH   Document 1-122   Filed 07/29/22   Page 190 of 195
Case 6:18-cv-03317-MDH   Document 1-122   Filed 07/15/19   Page 4 of 5

**Exhibit Q**

ceblen@shb.com
kcassis@shb.com
mcappo@shb.com
jkane@shb.com

***Attorneys for Plaintiffs***

4849-2061-1482
5
Case 6:22-cv-03193-MDH Document 1-1 Filed 07/29/22 Page 191 of 195
Case 6:19-cv-03370-MDH Document 122 Filed 07/15/19 Page 5 of 5
**Exhibit Q**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 15, 2019, I electronically filed the above with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

*/s/ Michael J. Cappo*
**Attorney for Plaintiffs**

4849-2061-1482

6

Case 6:22-cv-03093-MDH Document 1-122 Filed 07/29/22 Page 192 of 195
Case 6:19-cv-03317-MDH Document 122 Filed 07/15/19 Page 6 of 6

**Exhibit Q**



# IN THE 31ST JUDICIAL CIRCUIT, GREENE COUNTY, MISSOURI

| Judge or Division:<br>MICHAEL J CORDONNIER | Case Number: 2231-CC00636 |
|---|---|
| Plaintiff/Petitioner:<br>JIM ARNOTT IN THE CAPACITY AS SHERIFF OF GREENE COUNTY MO<br><div align="right">vs.</div> | Plaintiff's/Petitioner's Attorney/Address<br>DAMON SEAN PHILLIPS<br>KECK & PHILLIPS, LLC<br>3140 E. DIVISION<br>SPRINGFIELD, MO 65802 |
| Defendant/Respondent:<br>ADVANCED CORRECTIONAL HEALTHCARE INC | Court Address:<br>JUDICIAL COURTS FACILITY<br>1010 N BOONVILLE AVE<br>SPRINGFIELD, MO 65802 |
| Nature of Suit:<br>CC Breach of Contract | |

<div align="right">(Date File Stamp)</div>

## Summons in Civil Case

**The State of Missouri to:** ADVANCED CORRECTIONAL HEALTHCARE INC
**Alias:**

**RA CT CORPORATION SYSTEM**
**120 S CENTRAL AVE**
**CLAYTON, MO 63105**

*COURT SEAL OF*

*GREENE COUNTY*

**You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.**

| 06/28/2022 | /s/ Thomas R. Barr by ar |
|---|---|
| Date | Clerk |

Further Information:

### Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with _____, a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to: _____ (name) _____ (title).

☐ other: _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____ _____
Printed Name of Sheriff or Server | Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____
Date | Notary Public

| **Sheriff's Fees, if applicable** | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary Supplemental Surcharge | $_____10.00_____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | $_____ |

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

Case 6:22-cv-03193-MDH   Document 1-1   Filed 07/29/22   Page 193 of 195



Electronically Filed - Greene - July 25, 2022 - 03:58 PM

*Return*

## IN THE 31ST JUDICIAL CIRCUIT, GREENE COUNTY, MISSOURI

SB
7-28

| Judge or Division:<br>MICHAEL J CORDONNIER | Case Number: 2231-CC00636 |
|---|---|
| Plaintiff/Petitioner:<br>JIM ARNOTT IN THE CAPACITY AS SHERIFF OF GREENE COUNTY MO | Plaintiff's/Petitioner's Attorney/Address<br>DAMON SEAN PHILLIPS<br>KECK & PHILLIPS, LLC<br>3140 E. DIVISION<br>SPRINGFIELD, MO 65802 |
| vs. | |
| Defendant/Respondent:<br>ADVANCED CORRECTIONAL HEALTHCARE INC | Court Address:<br>JUDICIAL COURTS FACILITY<br>1010 N BOONVILLE AVE<br>SPRINGFIELD, MO 65802 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

## Summons in Civil Case

The State of Missouri to: ADVANCED CORRECTIONAL HEALTHCARE INC
Alias:

RA CT CORPORATION SYSTEM
120 S CENTRAL AVE
CLAYTON, MO 63105

**COURT SEAL OF**

**GREENE COUNTY**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

| 06/28/2022 | /s/ Thomas R. Barr by af |
|---|---|
| Date | Clerk |

Further Information:

## Sheriff's or Server's Return

**Note to serving officer**: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with _____, a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to: _____ (name) **INTAKE SPECIALIST** (title).

☑ other: **CT CORPORATION**

Served at **LCW – B. LOVE** (address)
in **St. Louis County** (County/City of St. Louis), MO, on **JUL 22 2022** (date) at **9 AM** (time).

_____ _____
Printed Name of Sheriff or Server | Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer.**

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____
Date | Notary Public

| Sheriff's Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary Supplemental Surcharge | $ 10.00 |
| Mileage | $_____ (____ miles @ $____ per mile) |
| Total | $_____ |

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

22-SMCC 00?1 7-2-2023

SJRC (07-21) SM30 (SMCC) *For Court Use Only:* Document ID # 22-SMCC-1342 1 of 1 (2231-CC00636)  Civil Procedure Form No. 1, SCR 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo



*Return*

# IN THE 31ST JUDICIAL CIRCUIT, GREENE COUNTY, MISSOURI

Electronically Filed - Greene - July 25, 2022 - 03:58 PM

*SB*
*7-28*

| Judge or Division:<br>MICHAEL J CORDONNIER | Case Number: 2231-CC00636 |
|---|---|
| Plaintiff/Petitioner:<br>JIM ARNOTT IN THE CAPACITY AS SHERIFF OF GREENE COUNTY MO<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>DAMON SEAN PHILLIPS<br>KECK & PHILLIPS, LLC<br>3140 E. DIVISION<br>SPRINGFIELD, MO 65802 |
| Defendant/Respondent:<br>ADVANCED CORRECTIONAL HEALTHCARE INC | Court Address:<br>JUDICIAL COURTS FACILITY<br>1010 N BOONVILLE AVE<br>SPRINGFIELD, MO 65802 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

## Summons in Civil Case

The State of Missouri to: **ADVANCED CORRECTIONAL HEALTHCARE INC**
Alias:

RA CT CORPORATION SYSTEM
120 S CENTRAL AVE
CLAYTON, MO 63105

**COURT SEAL OF**

**GREENE COUNTY**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

| 06/28/2022 | /s/ Thomas R. Barr by af |
|---|---|
| Date | Clerk |

Further Information:

### Sheriff's or Server's Return

**Note to serving officer**: Summons should be returned to the court within 30 days after the date of issue.
I certify that I have served the above Summons by: (check one)
☐ delivering a copy of the summons and petition to the defendant/respondent.
☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with _____, a person at least 18 years of age residing therein.
☐ (for service on a corporation) delivering a copy of the summons and petition to: _____ (name) **INTAKE SPECIALIST** (title).
☑ other: **CT CORPORATION**

Served at **LCW – B. LOVE** (address)
in **St. Louis County** (County/City of St. Louis), MO, on **JUL 22 2022** (date) at **9 A** (time).

_____          _____
Printed Name of Sheriff or Server                    Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer.**

*(Seal)*

Subscribed and sworn to before me on _____ (date).

My commission expires: _____          _____
                                              Date                                      Notary Public

| Sheriff's Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary Supplemental Surcharge | $ 10.00 |
| Mileage | $_____ (_____ miles @ $_____ per mile) |
| **Total** | $_____ |

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

SJRC (07-21) SM30 (SMCC) *For Court Use Only:* Document ID # 22-SMCC-1342 1 of 1 (2231-CC00636)    Civil Procedure Form No. 1, SCR 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo